UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | Case No. 2:24-cv-173 |
| Plaintiffs, | |
| | District Judge Matthew J. Kacsmaryk |
| v. | |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *et al.*, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND...................................................................................................................3

I.  STATUTORY BACKGROUND.................................................................................3

II.  THE 2021 TECHNICAL ASSISTANCE DOCUMENT......................................4

III.  THE 2024 GUIDANCE................................................................................................5

STANDARD OF REVIEW...................................................................................................7

ARGUMENT.........................................................................................................................7

I.  Plaintiffs' Claims Are Not Justiciable......................................................................7

    A.  Plaintiffs Lack Standing and Their Claims Are Unripe..............................7

    B.  The 2024 Guidance Is Not Final Agency Action.......................................14

II.  The 2024 Guidance Does Not Violate the APA.....................................................22

    A.  The 2024 Guidance Is Not Contrary to Law.............................................22

    B.  The EEOC Had Authority to Issue the Guidance....................................30

    C.  Plaintiffs' Other APA Claims Also Fail......................................................32

III.  The Court Should Reject Plaintiffs' Requests for Overbroad Relief.................34

    A.  Any Relief Should Be Limited to Parties That Have Established Standing..............34

    B.  Any Relief Should Be Limited to Any Invalid Portions of the Guidance...................37

CONCLUSION....................................................................................................................38

# TABLE OF AUTHORITIES

## CASES

*Adams v. City of Harahan,*
   95 F.4th 908 (5th Cir. 2024) ................................................................................................ 7

*Albemarle Paper Co. v. Moody,*
   422 U.S. 405 (1975) ....................................................................................................... 32

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ......................................................................................................... 7

*Arizona v. Biden,*
   40 F.4th 375 (6th Cir. 2022) ...................................................................................... 15, 36

*Ash v. Tyson Foods, Inc.,*
   546 U.S. 454 (2006) ....................................................................................................... 28

*AT&T Co. v. EEOC,*
   270 F.3d 973 (D.C. Cir. 2001) ...................................................................................... 16

*Bennett v. Spear,*
   520 U.S. 154 (1997) ....................................................................................................... 14

*Bostock v. Clayton County,*
   590 U.S. 644 (2020) ................................................................................................. *passim*

*Braidwood Management, Inc. v. Becerra,*
   104 F.4th 930 (5th Cir. 2024) ................................................................................... 35, 36

*Brown Express Inc. v. United States,*
   607 F.2d 695 (5th Cir. 1979) ........................................................................................ 30

*Cal. Cmtys. Against Toxics v. EPA,*
   934 F.3d 627 (D.C. Cir. 2019) ...................................................................................... 30

*Cargill v. Garland,*
   57 F.4th 447 (5th Cir. 2023) ..................................................................................... 34, 35

*Chandler v. Roudebush,*
   425 U.S. 840 (1976) ....................................................................................................... 29

*Choice Inc. of Tex. v. Greenstein,*
   691 F.3d 710 (5th Cir. 2012) ........................................................................................ 13

*Chrysler Corp. v. Brown,*
   441 U.S. 281 (1979) ....................................................................................................... 30

*Copeland v. Ga. Dep't of Corr.*,
 97 F.4th 766 (11th Cir. 2024) ..................................................................................... 19, 23, 37

*Cunningham v. Burlington Coat Factory Warehouse Corp.*,
 No. 1:18-cv-11266, 2024 WL 863236 (D.N.J. Feb. 29, 2024) ......................................... 18

*DHS v. New York*,
 140 S. Ct. 599 (2020) .................................................................................................... 37

*Doe v. City of Detroit*,
 3 F.4th 294 (6th Cir. 2021) ........................................................................................... 23

*Doe v. Triangle Doughnuts, LLC*,
 472 F. Supp. 3d 115 (E.D. Pa. 2020) ..................................................................... 19, 23, 27

*EEOC v. Boh Bros. Constr. Co.*,
 731 F.3d 444 (5th Cir. 2013) .................................................................................... *passim*

*EEOC v. SunDance Rehab. Corp.*,
 466 F.3d 490 (6th Cir. 2006) ......................................................................................... 32

*Eller v. Prince George's Cnty. Pub. Schs.*,
 580 F. Supp. 3d 154 (D. Md. 2022) ............................................................................... 23

*FDA v. All. for Hippocratic Med.*,
 602 U.S. 367 (2024) ........................................................................................................ 7

*Feller v. Brock*,
 802 F.2d 722 (4th Cir. 1986) ......................................................................................... 37

*Flight Training Int'l, Inc. v. FAA*,
 58 F.4th 234 (5th Cir. 2023) ..................................................................................... 31, 32

*Franciscan Alliance, Inc. v. Becerra*,
 47 F.4th 368 (5th Cir. 2022) ......................................................................................... 35

*Gardner v. CLC of Pascagoula, LLC*,
 915 F.3d 320 (5th Cir. 2019) ......................................................................................... 22

*Garrett v. Kohls Distrib. eFulfillment Ctr.*,
 No. 3:23-cv-2525, 2024 WL 3237184 (N.D. Tex. June 7, 2024), *report and recommendation
 adopted*, 2024 WL 3240656 (N.D. Tex. June 28, 2024) ............................................... 24, 37

*Gen. Elec. Co. v. Gilbert*,
 429 U.S. 125 (1976) ...................................................................................................... 32

*Gill v. Whitford*,
   585 U.S. 48 (2018) ...................................................................................................... 34

*Goings v. Lopinto*,
   No. 22-2549, 2023 WL 2709826 (E.D. La. Mar. 30, 2023) ...................................... 23

*Groff v. DeJoy*,
   600 U.S. 447 (2023) .................................................................................................... 32

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993) ................................................................................................ 28, 29

*Hecht Co. v. Bowles*,
   321 U.S. 321 (1944) ................................................................................................ 34, 35

*Hockman v. Westward Commc'ns*,
   407 F.3d 317 (5th Cir. 2004) ..................................................................................... 22

*In re Union Pacific R.R. Emp. Pracs. Litig.*,
   479 F.3d 936 (8th Cir. 2007) ..................................................................................... 32

*KH Outdoor, LLC v. Clay Cnty.*,
   482 F.3d 1299 (11th Cir. 2007) ................................................................................. 13

*Knutzen v. Eben Ezer Lutheran Hous. Ctr.*,
   815 F.2d 1343 (10th Cir. 1987) ................................................................................. 33

*Labrador v. Poe*,
   144 S. Ct. 921 (2024) (Mem.) .................................................................................... 36

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................... 7, 8, 11

*McConnell v. Fed. Election Comm'n*,
   540 U.S. 93 (2003) ...................................................................................................... 13

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ...................................................................................................... 4

*McMenemy v. City of Rochester*,
   241 F.3d 279 (2d Cir. 2001) ...................................................................................... 32

*Meritor Sav. Bank, FSB v. Vinson*,
   477 U.S. 57 (1986) ............................................................................................... 23, 32

*Metro. Sch. Dist. of Wayne Twp., Marion Cnty. v. Davila*,
   969 F.2d 485 (7th Cir. 1992) ..................................................................................... 30

iv

*Morton v. Mancari,*
  417 U.S. 535 (1974) ........................................................................................................29

*NAACP v. Tindell,*
  95 F.4th 212 (5th Cir. 2024) .............................................................................................8

*Nat'l Mining Ass'n v. McCarthy,*
  758 F.3d 243 (D.C. Cir. 2014) .........................................................................................22

*Newbury v. City of Windcrest,*
  991 F.3d 672 (5th Cir. 2021) ...........................................................................................23

*Nichols v. Azteca Rest. Enters., Inc.,*
  256 F.3d 864 (9th Cir. 2001) ...........................................................................................26

*Oncale v. Sundowner Offshore Servs., Inc.,*
  523 U.S. 75 (1998) ........................................................................... 24, 26, 28, 29

*Parker v. Strawser Constr., Inc.,*
  307 F. Supp. 3d 744 (S.D. Ohio 2018) ......................................................................23, 24

*Peoples Nat'l Bank v. Off. of Comptroller of Currency of the U.S.,*
  362 F.3d 333 (5th Cir. 2004) .....................................................................................14, 15

*Perez v. Mortg. Bankers Ass'n,*
  575 U.S. 92 (2015) ..........................................................................................................30

*Pros. & Patients for Customized Care v. Shalala,*
  56 F.3d 592 (5th Cir. 1995) .......................................................................................30, 31

*Rhea Lana, Inc. v. Dept. of Lab.,*
  824 F.3d 1023 (D.C. Cir. 2016) .......................................................................................16

*Roberts v. Glenn Indus. Grp., Inc.,*
  998 F.3d 111 (4th Cir. 2021) ...........................................................................................24

*Ryder Truck Lines, Inc. v. United States,*
  716 F.2d 1369 (11th Cir. 1983) ..................................................................................30, 31

*Shell Offshore Inc. v. Babbitt,*
  238 F.3d 622 (5th Cir. 2001) ...........................................................................................30

*Siddiqui v. AutoZone W., Inc.,*
  731 F. Supp. 2d 639 (N.D. Tex. 2010) .............................................................................22

*Skidmore v. Swift & Co.,*
  323 U.S. 134 (1944) ........................................................................................................32

*Smith v. City of Salem,*
    378 F.3d 566 (6th Cir. 2004) ................................................................................24

*Starbucks Corp. v. McKinney,*
    144 S. Ct. 1570 (2024) ........................................................................................35

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ............................................................................................10

*Sw. Elec. Power Co. v. EPA,*
    920 F.3d 999 (5th Cir. 2019) ..............................................................................38

*Syncor Int'l Corp. v. Shalala,*
    127 F.3d 90 (D.C. Cir. 1997) ..............................................................................20

*T.D.H. v. Kazi Foods of N.J., Inc.,*
    Civ. No. 5:23-cv-00634-JMG, 2023 WL 4567722 (E.D. Pa. July 17, 2023) ......23

*Tearney v. Nat'l Transp. Safety Bd.,*
    868 F.2d 1451 (5th Cir. 1989) ............................................................................33

*Texas v. EEOC,*
    633 F. Supp. 3d 824 (N.D. Tex. 2022) ..........................................................*passim*

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) ............................................................ 11, 16, 19, 20

*Texas v. EEOC,*
    No. 2:21-CV-194-Z, 2022 WL 22869778 (N.D. Tex. May 26, 2022) ............*passim*

*Trump v. Hawaii,*
    585 U.S. 667 (2018) ............................................................................................36

*Tudor v. Southeastern Oklahoma State University,*
    No. 15-cv-324, 2017 WL 4849118 (W.D. Okla. Oct. 26, 2017) ........................27

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
    578 U.S. 590 (2016) ...................................................................................... 14, 21

*United States v. AMC Ent., Inc.,*
    549 F.3d 760 (9th Cir. 2008) ..............................................................................37

*United States v. Johnson,*
    632 F.3d 912 (5th Cir. 2011) ..............................................................................34

*United States v. Texas,*
    599 U.S. 670 (2023) ....................................................................................... 7, 35

*Versace v. Starwood Hotels & Resorts Worldwide, Inc.,*
   No. 6:14-cv-1003-Orl-31KRS, 2015 WL 12820072 (M.D. Fla. Dec. 7, 2015) .................................9

*Wallace v. Performance Contractors, Inc.,*
   57 F.4th 209 (5th Cir. 2023) ...............................................................................................3

*Walters v. Holder,*
   No. 2:10-CV-76-KS-MTP, 2012 WL 3644816 (S.D. Miss. Aug. 23, 2012) .........................14

*Whole Woman's Health v. Jackson,*
   595 U.S. 30 (2021) .............................................................................................................8

## STATUTES

5 U.S.C. § 552 .......................................................................................................... 33, 34

5 U.S.C. § 553 ................................................................................................................30

5 U.S.C. § 704 ................................................................................................................14

5 U.S.C. § 706 .......................................................................................................... 34, 35

42 U.S.C. § 2000e .........................................................................................................29

42 U.S.C. § 2000e-2 .................................................................................................. 3, 22

42 U.S.C. § 2000e-5 .................................................................................................. 4, 16

42 U.S.C. § 2000e-16c ...................................................................................................16

## RULES

Fed. R. Civ. P. 56 ....................................................................................................... 7, 11

## FEDERAL REGULATIONS

29 C.F.R. §§ 1603.100–1603.306 ....................................................................................16

29 C.F.R. § 1695.2 .........................................................................................................15

29 C.F.R. § 1695.6 ..................................................................................................... 6, 34

Procedural Regulations for Issuing Guidance,
   85 Fed. Reg. 69,167 (Nov. 2, 2020) ..............................................................................15

Proposed Enforcement Guidance on Harassment in the Workplace,
   88 Fed. Reg. 67,750 (Oct. 2, 2023) ......................................................................... 6, 7, 34

**STATE REGULATIONS**

D.C. Mun. Regs. tit. 4, § 801.1 ................................................................................................12

D.C. Mun. Regs. tit. 4, § 804.1 ................................................................................................12

D.C. Mun. Regs. tit. 4, § 808.2 ................................................................................................12

**OTHER AUTHORITIES**

EEOC, *Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity*
    (June 15, 2021),
    https://www.eeoc.gov/laws/guidance/protections-against-employment-discrimination-
    based-sexual-orientation-or-gender ................................................................................. 4, 5, 8

EEOC Guidance,
    http://www.eeoc.gov/eeoc-guidance ..........................................................................................32

## INTRODUCTION

In April 2024, the Equal Employment Opportunity Commission ("EEOC" or the "Commission") issued the *Enforcement Guidance on Harassment in the Workplace* ("Guidance" or "Harassment Guidance"), ECF No. 31 (App. 19), a 189-page resource document that discusses the basic provisions of a harassment claim under the federal equal employment opportunity laws the EEOC administers.  The Guidance summarizes the relevant standards applicable to harassment claims arising under Title VII of the Civil Rights Act and other statutes, with citations to relevant authority.  As such, it covers myriad topics that might arise in connection with such a claim, and provides examples in order to demonstrate how the EEOC and courts analyze whether harassment is based on a protected status, when that harassment may rise to a sufficiently severe or pervasive level to affect employment, and the circumstances in which an employer may be held liable depending on the particular facts and circumstances at hand, among other issues.  As the Guidance itself makes plain, it is not a legally operative document.  It creates no legal obligations and does not bind the public or EEOC staff to a specific outcome in any given charge.

Plaintiffs the State of Texas and the Heritage Foundation ("Heritage") apparently take no issue with the majority of the Guidance.  The small portion of the Guidance that Plaintiffs challenge expresses the EEOC's view, consistent with relevant case law cited therein, that Title VII's prohibition against sex discrimination extends to claims of unlawful harassment based on transgender status.  On Plaintiffs' view, the Guidance is no different than a Technical Assistance document this Court vacated in a 2022 opinion.  That challenge, however, rests on a fundamental misunderstanding of what the Guidance says.  The challenged portion of the Guidance does not state that any specific employment practice related to dress codes, pronouns, or sex-separated bathrooms is *per se* unlawful under Title VII, which differentiates it from this Court's analysis of the Technical Assistance document.  Rather, the Guidance merely summarizes the types of conduct courts have found may contribute to a hostile work environment in particular circumstances, which may create Title VII liability when other factors are met.

1

Plaintiffs' motion for summary judgment should be denied, and Defendants' cross-motion for summary judgment should be granted.  As a threshold matter, Plaintiffs lack standing to bring a pre-enforcement challenge to the Guidance, and their claim is unripe.  Plaintiffs fail to establish that the Guidance causes them any injury because the Guidance does not require or prohibit any specific conduct.  Plaintiffs have not established that they maintain employment policies that would give rise to liability under the standards summarized in the Guidance.  Plaintiffs also do not establish that the Guidance imposes any implementation costs, and the Guidance does not conflict with any Texas law that Plaintiffs invoke in their effort to establish a sovereign injury.  Moreover, Plaintiffs' claims are unripe, because they have identified only purported fears of hypothetical federal government enforcement against them in the future.  As the Guidance makes explicit, any assessment of a gender identity harassment charge is necessarily fact-specific, and therefore any charge against Plaintiffs would depend on facts that have not materialized (and may never materialize).  Even if they had standing, Plaintiffs' claims are not justiciable because the Guidance is not final agency action under the Administrative Procedure Act ("APA").

Even if Plaintiffs' claims could proceed, they fail on the merits.  First, the Guidance is a correct statement of the law.  It explains that harassing conduct based on an employee's gender identity may contribute to a hostile work environment based on sex under Title VII if other factors are met.  Second, the Guidance was well within the EEOC's authority.  It is at most an interpretive rule that is consistent with the EEOC's long-recognized authority to issue guidance expressing its views on Title VII.  Because the challenged portion of the Guidance is merely a summary of the agency's view of Title VII, supported by the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020) and other relevant case law, Plaintiffs' arguments that the document is arbitrary and capricious and required publication in the Federal Register necessarily fail.  Summary judgment should be granted to the Defendants.

2

In the event that the Court disagrees, however, Plaintiffs do not establish that they are entitled to the expansive relief they seek. Rather, consistent with traditional equitable principles and Fifth Circuit precedent, any relief should be limited in scope to any party that has established standing and to any portion of the Guidance that the Court concludes is unlawful.

<div align="center">BACKGROUND</div>

## I.    STATUTORY BACKGROUND

Title VII of the Civil Rights Act of 1964 prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Harassment based on sex may give rise to Title VII liability. A plaintiff seeking to establish such must prove either that acceptance or rejection of the harassment resulted in a tangible employment action or that the harassment created a hostile work environment. *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 220–21 (5th Cir. 2023). To prevail on a hostile work environment claim, plaintiffs must prove not only that they were subjected to harassment, but also that "the harassment was based on a protected characteristic" and "affected a term, condition, or privilege of employment." *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc) (cleaned up). "To affect a term, condition, or privilege of employment, the harassing conduct must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (cleaned up). Courts in this circuit "use an objective 'reasonable person' standard to evaluate severity and pervasiveness." *Id.* (citation omitted). As those tests suggest, hostile work environment claims "depend[] on the totality of circumstances" and require a fact-specific analysis. *Id.* And even then, an employer's liability depends on the status of the harasser and, if the harasser was a co-worker or other third party, whether the employer "was negligent in controlling working conditions" or, if the harasser was a supervisor, whether the employer "exercised reasonable care to prevent and correct any harassing behavior" and whether the plaintiff "unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Id.* at 452 (citation omitted).

<div align="center">3</div>

The EEOC is tasked with implementing Title VII.  Individuals who believe their rights have been violated under Title VII must first file a Charge of Discrimination with the EEOC within a statutorily defined time from the alleged unlawful practice. 42 U.S.C. § 2000e-5(b).  The EEOC notifies the employer of the charge within ten days, investigates the charge—which may include soliciting a position statement from the employer—and then determines whether "reasonable cause" exists to believe discrimination occurred.  *Id.*  If the EEOC does not find "reasonable cause" or determines that a defense applies, the charge is dismissed, and the employee may file suit within 90 days of receiving a Notice of Right to Sue.  *Id.* at § 2000e-5(b), (f)(1).  If reasonable causes exists, the EEOC will attempt to conciliate the charge; if conciliation fails, the EEOC will either file suit against the employer or inform the charging party they may bring suit.  The process is generally the same for State employers, except, if conciliation fails, the EEOC refers the matter to the Department of Justice ("DOJ") to make its own determination whether to file suit or issue a notice of right to sue.  A civil action filed by the EEOC, a charging party, or the DOJ is a *de novo* proceeding, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 799 (1973), and any relief due the aggrieved person can be awarded only by the court.

## II.    THE 2021 TECHNICAL ASSISTANCE DOCUMENT

In 2021, the EEOC published a ten-page Technical Assistance document that "briefly explain[ed] what the *Bostock* decision means for LGBTQ+ workers (and all covered workers) and for employers across the country."  EEOC, *Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity* 2 (June 15, 2021), https://www.eeoc.gov/laws/guidance/protections-against-employment-discrimination-based-sexual-orientation-or-gender    ("Technical    Assistance document").  As relevant here, the Technical Assistance document stated: "May a covered employer require a transgender employee to dress in accordance with the employee's sex assigned at birth? No"; "[I]f an employer has separate bathrooms, locker rooms, or showers for men and women, all men (including transgender men) should be allowed to use the men's facilities and all women (including

transgender women) should be allowed to use the women's facilities"; and "Could use of pronouns or names that are inconsistent with an individual's gender identity be considered harassment?  Yes, in certain circumstances."  *Id.* at 6–7.

Texas challenged the Technical Assistance document in this Court.  *See Texas v. EEOC*, No. 2:21-CV-194-Z (N.D. Tex.).  This Court concluded that Texas had standing to challenge the Guidance; that the Guidance was final agency action because it "use[d] mandatory language" and "create[d] safe harbors"; and that the substance of the Technical Assistance document was inconsistent with *Bostock*, although it was not arbitrary and capricious.  *Texas v. EEOC*, No. 2:21-CV-194-Z, 2022 WL 22869778, at *5–6, *8–12 (N.D. Tex. May 26, 2022); *Texas v. EEOC*, 633 F. Supp. 3d 824, 829–38 (N.D. Tex. 2022).  Accordingly, the Court declared the Technical Assistance document unlawful and set it aside universally.  *Texas*, 633 F. Supp. 3d at 845–47.

## III.    THE 2024 GUIDANCE

The Guidance is a 189-page document that "addresses how harassment based on race, color, religion, sex, national origin, age, disability, or genetic information is defined under EEOC-enforced statutes and the analysis for determining whether employer liability is established."  App. 19.  It is designed to "communicate[ ] the Commission's position on important legal issues," but is not a "survey of all legal principles that might be appropriate in a particular case."  App. 20, 26.  Instead, it focuses on "the three components of a harassment claim" under EEOC-enforced statutes: (1) whether the harassing conduct was based on an individual's legally protected characteristic; (2) whether the harassment resulted in discrimination with respect to a term, condition, or privilege of employment; and (3) whether there is a basis for holding the employer liable for the conduct.  App. 26.

The Guidance is akin to a legal hornbook.  It "presents the overarching legal standards that are applied to particular circumstances in evaluating whether the EEO laws have been violated and the employer is liable."  App. 113.  Its contents "do not have the force and effect of law, are not meant

to bind the public in any way, and do not obviate the need for the EEOC and its staff to consider the facts of each case and applicable legal principles when exercising their enforcement discretion." App. 26. The EEOC was clear that it would not "prejudge the outcome of a specific set of facts presented in a charge filed with the EEOC." *Id.*

Plaintiffs' challenge here is limited to a portion of one subsection of the Guidance that explains that harassment based on an individual's gender identity is sex-based harassment. *See* Pls.' Mem. in Supp. of Mot. for Summ. J. at 1, ECF No. 30 ("Br."). That discussion is presented in a section of the Guidance that describes "conduct that can, but does not necessarily always, constitute or contribute to unlawful harassment." App. 27. "[W]hether specific harassing conduct violates the law," the Guidance explains, "must be assessed on a case-by-case basis" to determine if all elements of a harassment claim are satisfied. *Id.* The challenged portion of the Guidance cites the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020), to explain that "[s]ex-based discrimination under Title VII includes employment discrimination based on sexual orientation or gender identity." App. 35. The Guidance goes on to explain that, while *Bostock* was itself limited to "allegations of discriminatory discharge," other "courts have readily found post *Bostock* that claims of harassment based on one's sexual orientation or gender identity are cognizable under Title VII." App. 128 (citing cases). It then provides examples of "harassing conduct" that courts have found may, in certain circumstances, contribute to unlawful harassment, including among other examples "harassing conduct because an individual does not present in a manner that would stereotypically be associated with that person's sex," "repeated and intentional . . . misgendering," and "the denial of access to a bathroom or other sex segregated facility consistent with the individual's gender identity." App. 35. Each of those examples is supported by citation to a Title VII case in which the court cited that conduct in connection with its larger analysis of a plaintiff's harassment claim. *See* App. 129–30.

Consistent with its internal procedures for issuance of significant guidance documents, the EEOC adopted the Guidance after notice and comment. App. 108–09; *see* 29 C.F.R. § 1695.6; Proposed Enforcement Guidance on Harassment in the Workplace, 88 Fed. Reg. 67,750 (Oct. 2,

2023).  As did the final Guidance, that notice explained that the "contents of the final guidance document will not have the force and effect of law and are not meant to bind the public in any way." 88 Fed. Reg. at 67,751.  Rather, the EEOC explained its intent that the final document would "provide clarity to the public regarding Commission policies and existing requirements under the law."  *Id.*

## STANDARD OF REVIEW

When the record establishes "that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law," summary judgment is appropriate.  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

I.    **Plaintiffs' Claims Are Not Justiciable**

A.    **Plaintiffs Lack Standing and Their Claims Are Unripe**

As the Supreme Court has recently emphasized, Article III standing is "a bedrock constitutional requirement," "not merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit which a party desires to have adjudicated."  *United States v. Texas*, 599 U.S. 670, 675 (2023) (citation omitted).  "For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff . . . must have a 'personal stake' in the dispute."  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (citation omitted). This foundational requirement applies even when a plaintiff's "legal objection is accompanied by a strong moral, ideological, or policy objection."  *Id.* at 381.  "[T]he standing requirement [thus] implements 'the Framers' concept of the proper—and properly limited—role of the courts in a democratic society,'" whereby "courts do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'"  *Id.* at 379–80 (citations omitted).

"Standing requires a plaintiff to satisfy three basic elements: injury in fact, causation, and redressability."  *Adams v. City of Harahan*, 95 F.4th 908, 912 (5th Cir. 2024) (citing *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560–61 (1992)), *cert. denied sub nom. Adams v. Harahan, LA*, No. 24-102, 2024 WL 4427225 (U.S. Oct. 7, 2024) (Mem.). "The burden of establishing standing always rests with plaintiffs." *NAACP v. Tindell*, 95 F.4th 212, 216 (5th Cir. 2024). At the summary judgment stage, plaintiffs must provide evidence to support their claim of standing. *Lujan*, 504 U.S. at 561. Standing is particularly difficult to establish in a pre-enforcement challenge like this one. There is no "unqualified right to pre-enforcement review." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021). Instead, many statutory and constitutional rights "are as a practical matter asserted typically as defenses," not in "pre-enforcement cases." *Id.* at 49–50.

Applying these standards here, Plaintiffs fail to establish that they face any injury-in-fact that is traceable to the Guidance. Plaintiffs argue that they have established standing to challenge the Guidance for the same reasons this Court held that Texas had standing to challenge the Technical Assistance document in *Texas v. EEOC*. *See* Br. at 8. But that contention overlooks significant, material differences between the Technical Assistance document and the Guidance. In particular, this Court concluded that Texas had Article III standing to challenge the Technical Assistance document because, the Court determined, the challenged guidance "proscribed" Texas's "present and intended future conduct" of maintaining "workplace policies that enforce[d] sex-specific dress codes, sex-segregated bathrooms, and pronoun usage based on biological sex." *Texas*, 2022 WL 22869778, at *10, *13. This Court relied on the Technical Assistance Document's "mandatory language" to reach that conclusion. *Id.* at *5. The Technical Assistance document stated definitively: "May a covered employer require a transgender employee to dress in accordance with the employee's sex assigned at birth? No"; "[I]f an employer has separate bathrooms, locker rooms, or showers for men and women, all men (including transgender men) should be allowed to use the men's facilities and all women (including transgender women) should be allowed to use the women's facilities"; and "Could use of pronouns or names that are inconsistent with an individual's gender identity be considered harassment? Yes, in certain circumstances." Technical Assistance document at 6–7; *see Texas*, 2022 WL 22869778, at *5.

8

By contrast, and as further explained below, the 2024 Guidance does not purport to "command[], require[], order[], [or] dictate" any particular conduct by employers. *Texas*, 2022 WL 22869778, at *5. Rather, the Guidance explains at the outset that "harassment (or harassing conduct) is only covered by federal [equal employment opportunity] laws if it is based on one (or more) of the individual's characteristics that are protected by these laws." App. 27. But "[n]ot all harassing conduct violates the law, even if it is because of a legally protected characteristic." *Id.* Rather, "whether specific harassing conduct violates the law must be assessed on a case-by-case basis." *Id.*

As noted, the limited portions of the Guidance that Plaintiffs challenge appear in the section addressing eight protected characteristics that may give rise to a harassment claim under Title VII: race; color; national origin; religion; sex; age; disability; and genetic information. *See* Br. at 5–7. Within the subsection on sex-based harassment, the Guidance states:

> Harassing conduct based on sexual orientation or gender identity includes epithets regarding sexual orientation or gender identity; physical assault due to sexual orientation or gender identity; outing (disclosure of an individual's sexual orientation or gender identity without permission); **harassing conduct because an individual does not present in a manner that would stereotypically be associated with that person's sex; repeated and intentional use of a name or pronoun inconsistent with the individual's known gender identity (misgendering); or the denial of access to a bathroom or other sex segregated facility consistent with the individual's gender identity**.

App. 35 (emphasis added and footnotes omitted). For each enumerated example, the Guidance cites one or more cases holding that such conduct could support a finding that the plaintiff was harassed based on a protected characteristic (sex)—though not necessarily that the plaintiff had established a *prima facie* harassment case, much less an entitlement to relief. The cases cited in the Guidance further underscore that none of the conduct described automatically gives rise to a meritorious harassment claim. For example, in explaining that repeated misgendering can be a form of sex-based harassment, the Guidance cites *Versace v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 6:14-cv-1003-Orl-31KRS, 2015 WL 12820072, at *7 (M.D. Fla. Dec. 7, 2015), and notes that the case "consider[ed] alleged

9

misgendering to support the plaintiff's hostile environment claim, but f[ound] the alleged incidents to be insufficiently frequent or severe to constitute a violation."  App. 130.

In sum, there is no basis for Plaintiffs' contention that the Guidance interprets any conduct—including sex-specific bathroom policies, sex-specific dress codes, or misgendering of transgender employees—as a *per se* Title VII violation.  Because the Guidance does not proscribe any conduct, Plaintiffs cannot establish that they face any injury-in-fact traceable to the Guidance.  *Cf. Texas*, 2022 WL 22869778, at *9 ("[A] plaintiff can articulate pre-enforcement standing when it can show 'an intention to engage in a course of conduct arguably affected with a constitutional interest, *but proscribed by a statute*, and there exists a credible threat of prosecution thereunder.'" (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)) (emphasis added)).

Moreover, Plaintiffs also fail to establish Article III standing for the separate, independent reason that they have not shown that they engage in any conduct that conflicts with the legal principles summarized in the Guidance.  In their brief, Plaintiffs assert that "Texas has employment policies that are not consistent with the 2024 Guidance's bathroom, dress code, and pronoun requirements."  Br. at 33 (citing Decl. of Sid Miller, ECF No. 31 (App. 210–12) ("Miller Decl.")).  But their cited declaration belies that claim—even setting aside that the Guidance does not establish any "requirements" with respect to these issues, as explained above.  Plaintiffs' declaration states that the Texas Department of Agriculture has a policy of "evaluat[ing] on a case-by-case basis" "[w]hether an employee's manner of dress is unprofessional or inappropriate."  Miller Decl. ¶ 6.  The Department "formalized" its standards in a "Dress Code and Grooming Policy" it adopted on April 13, 2023, *id.* ¶ 7, Exh. A, but the case-by-case method of applying this policy, *id.* ¶ 6, renders it speculative whether the Policy, as applied, conflicts with anything in the Guidance.  Likewise, regarding bathroom use, the declaration states that "[a]ny complaint regarding restroom usage would be evaluated on a case-by-case basis."  *Id.* ¶ 8.  And, similarly, "[a]ny workplace conflicts over pronoun usage would be handled on a case-by-case basis."  *Id.* ¶ 9.  At most, the declarant speculated that he "would consider" an employee's conduct "to be a violation of [the agency's dress code] standards" if the employee "dressed

as a member of the opposite sex"; "would reject" any request by an employee "to use the restrooms designated for the opposite sex"; and "would reject" any request by an employee "to require other employees to use pronouns based on gender identity." *Id.* ¶¶ 6, 8, 9. But the declarant cited no State law or policy that would require those results. Indeed, to suggest otherwise would be inconsistent with the State's professed policy of applying case-by-case consideration to such requests. And, notably, the declarant cites no instance in which the application of its case-by-case standards has resulted in disciplinary action against any employee for conduct related to the portions of the Guidance challenged by the Plaintiffs.[1]

Thus, even if the Guidance established *per se* requirements with respect to bathrooms, dress codes, or pronoun use that employers must satisfy to comply with Title VII—which it does not— Plaintiffs have not established that Texas's employment policies conflict with that requirement. This case accordingly is distinguishable from *Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019), on which Plaintiffs attempt to rely. *See* Br. at 9–10. There, the Fifth Circuit found standing to consider a pre-enforcement challenge to EEOC guidance with respect to the use of criminal history in hiring. *Texas*, 933 F.3d at 437–38. The court of appeals held that Texas faced a credible threat of enforcement because various State agencies "*categorically* exclude[d] all convicted felons" or "*categorically* exclude[d] applicants convicted of specified felonies" from employment, including as a matter of State law. *Id.* at 439; *see id.* at 446–47. By contrast, as explained above, Texas avers that employment decisions relevant to the issues in this case are left to case-by-case, discretionary consideration.

---

[1]    Defendants recognize that in *Texas v. EEOC*, this Court credited for purposes of the EEOC's motion to dismiss Texas's allegations that it "*ha[d] created* . . . workplace policies that enforce sex-specific dress codes, sex-segregated bathrooms, and pronoun usage based on biological sex." 2022 WL 22869778, at *13 (emphasis added); *see* Compl. ¶¶ 30-32, *Texas v. EEOC*, No. 2:21-cv-00194-Z (N.D. Tex. Sept. 20, 2021), ECF No. 1. However, on a motion for summary judgment, "the plaintiff can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" establishing Article III standing. *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)). Here, Texas has merely alleged a conflict between its employment policies and the Guidance—but it has not proven that any such conflict exists, as it must to satisfy the summary judgment standard.

Stated differently, standing in *Texas v. EEOC* was predicated on a clear conflict between what the Fifth Circuit concluded was inflexible agency guidance and inflexible Texas law with respect to employment eligibility. Here, by contrast, there is no conflict between the Guidance and any legal or policy requirement that Texas has cited with respect to its treatment of transgender employees, both of which explicitly require "case-by-case" consideration of all relevant facts. App. 27; Miller Decl. ¶¶ 6, 8, 9.

Heritage likewise fails to establish any conflict between its employment policies and the challenged Guidance. With respect to attire, Plaintiffs' declarant avers that "Heritage has a dress code that requires employees to 'come to work in professional dress, consistent with the mission, culture, business functions, and purpose of Heritage,' and historically employees have dressed in a manner traditionally befitting their biological sex." Decl. of Eric Korsvall ¶ 9, ECF No. 31 (App. 217) ("Korsvall Decl."). But Heritage cites no evidence that a transgender employee would violate the dress code by wearing attire traditionally associated with his or her gender identity. Likewise, Heritage cites no evidence of any policy that would prohibit a transgender employee from using a restroom consistent with his or her gender identity or from using pronouns consistent with his or her gender identity. *See generally id.* That may be because Heritage is located in Washington, D.C., where District law separately prohibits employers from "denying access to restrooms and other gender specific facilities that are consistent with the employee's gender identity or expression"; prohibits employers from "requir[ing] individuals to dress or groom themselves in a manner inconsistent with their sex or their gender identity or expression"; and provides that "[d]eliberately misusing an individual's preferred name form of address or gender-related pronoun" "may constitute evidence of unlawful harassment and hostile environment," depending on "the totality of the circumstances." D.C. Mun. Regs. tit. 4, §§ 801.1(a), 804.1, 808.2(a); *see* Korsvall Decl. ¶ 10 ("Heritage's headquarters is in downtown Washington, D.C."). Even assuming Heritage's policies conflict with the Guidance in the way they argue, they still could not enforce that policy for the independent reason that it would violate DC law. Any injury to Heritage would not be traceable to the Guidance or redressable through this

action because a judgment in their favor would net them nothing. *See McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 229 (2003) (holding that a plaintiff lacked standing when a favorable ruling "would not remedy the . . . alleged injury" because the "limitations imposed by" a separate, unchallenged provision "would remain unchanged"), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010); *KH Outdoor, LLC v. Clay Cnty.*, 482 F.3d 1299, 1304 (11th Cir. 2007).

For similar reasons, Plaintiffs also fail to establish that they have incurred or will incur any implementation costs traceable to the Guidance. Plaintiffs contend that they would need to spend time developing training materials and procedures "to reflect the 2024 Guidance's policy changes," Br. at 32. But, as explained, the Guidance does not mandate any policy changes. Rather, the challenged portions of the Guidance summarize forms of conduct that courts have held can support a claim that a plaintiff was harassed on the basis of sex. *See* App. 35, 130–31. To the extent Plaintiffs think it necessary or appropriate to update their training materials and procedures in light of those judicial decisions (or, in the case of Heritage, the law of the District of Columbia), any associated costs flow from the decisions (or laws) themselves, not from the publication of a document correctly summarizing the decisions.

Relatedly, Plaintiffs' argument that the Guidance invades Texas's sovereign interests is mistaken. *See* Br. at 32–33. Because the Guidance imposes no new legal obligations on any employers (public or private), it imposes no new legal obligations on States in their capacity as employers, sovereign or otherwise.

Finally, the Court lacks jurisdiction over Plaintiffs' claims because they are unripe. A "case is not ripe if further factual development is required" or if the "issue presents purely legal questions" but the plaintiff has not shown "hardship." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (citations omitted). Because the Guidance makes clear that any sex-based harassment claim requires case-by-case consideration of the totality of the circumstances, the outcome of any enforcement action that might apply the legal principles set forth in the Guidance would depend on facts not before this Court. *See, e.g.*, *Boh Bros.*, 731 F.3d at 460 (noting that an inquiry into whether "a

13

reasonable person in the plaintiff's position would find" an instance or pattern of conduct "severely hostile or abusive" for purposes of a Title VII harassment claim "is necessarily fact-specific" (citation omitted)).    Again, the challenged Guidance is materially distinct from the Technical Assistance document.  This Court held that Texas's challenge to the Technical Assistance document was ripe because that document "[m]ade Plaintiff's policies unlawful." *Texas*, 2022 WL 22869778, at *13.  By contrast, as explained above, the Harassment Guidance does not render any particular conduct on the part of an employer *per se* unlawful, much less any conduct in which Plaintiffs prove they have engaged. In sum, because the record currently before the Court does not permit the "fact-specific analysis" necessary to resolve a Title VII harassment claim, including under the precedents summarized in the Guidance, Plaintiffs' claims are "unripe."  *Walters v. Holder*, No. 2:10-CV-76-KS-MTP, 2012 WL 3644816, at *7 (S.D. Miss. Aug. 23, 2012).   For all of these reasons, the Court lacks jurisdiction over Plaintiffs' claims.

### B.        The 2024 Guidance Is Not Final Agency Action

The APA gives federal courts jurisdiction to review final agency action, which is agency action that is (1) "the consummation of the agency's decisionmaking process" and that (2) also determines "rights or obligations." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations omitted); *see also U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 596–600 (2016).  An agency action that "does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action" is not a final agency action for the purposes of 5 U.S.C. § 704.  *Peoples Nat'l Bank v. Off. of Comptroller of Currency of the U.S.*, 362 F.3d 333, 337 (5th Cir. 2004) (citation omitted). And "[i]f there is no 'final agency action,' a federal court lacks subject matter jurisdiction." *Id.* at 336 (citation omitted).  Here, the Guidance is not final agency action because it does not impose legal consequences and is, indeed, non-binding on Plaintiffs or anyone else.

Nothing about the Guidance itself imposes legal consequences on Texas, Heritage, or any other party.  Start with the language of the Guidance itself.  The Harassment Guidance imposes no rule of law; it merely explains "existing requirements under the law."  App. 20.  It is not "meant to

bind the public in any way" and does not limit staff "enforcement discretion," which must be applied "on a case-by-case basis." App. 26. It specifically states that "[n]othing in this document should be understood to prejudge the outcome of a specific set of facts presented in a charge filed with the EEOC." *Id.*; *see Arizona v. Biden*, 40 F.4th 375, 388 (6th Cir. 2022) (finding agency guidance that "leaves the exercise of prosecutorial discretion to [agency staff] judgment" was likely unreviewable (citation omitted)). Further, it reiterates that EEOC enforcement staff must make a case-specific assessment to determine "whether specific harassing conduct violates the law." App. 27. Nor does the Guidance purport to establish comprehensive standards of liability. Indeed, it does not "survey . . . all legal principles that might be appropriate in a particular case." App. 26. Likewise, the Guidance does not discuss all potential defenses that may be raised in response to a harassment claim, and notes that the same should be considered on a case-by-case basis. *Id.*

The process by which the Guidance was issued is also consistent with the EEOC's view that it is non-binding. The Guidance was promulgated through procedures designed to "better ensure that guidance will be treated as non-binding." Procedural Regulations for Issuing Guidance, 85 Fed. Reg. 69,167, 69,167 (Nov. 2, 2020); *see* 29 C.F.R. § 1695.2 (requiring EEOC guidance to include prominent disclaimers and avoid using language implying that guidance documents are binding).[2] The Federal Register notice seeking public comment on the proposed Guidance similarly made clear to interested parties that its contents were not establishing new legal requirements but rather attempting to aid in public clarity about existing requirements imposed by Title VII itself. 88 Fed. Reg. at 67,751.

Any legal consequence related to a harassment claim would come from Title VII or other statute itself, not the Guidance. If the EEOC were to investigate a charge or bring an enforcement action against a private employer, or the DOJ were to bring an enforcement action against Texas, they would be doing so for alleged violations of Title VII directly, not any provision of the 2024

---

[2]    The Court's prior decision involved a Technical Assistance document issued through other procedures. *See Texas*, 633 F. Supp. 3d at 843.

Harassment Guidance.[3]  The challenged guidance "create[s] no new legal obligations beyond those the [statute] already imposed." *Rhea Lana, Inc. v. Dept. of Lab.*, 824 F.3d 1023, 1028 (D.C. Cir. 2016). And it "has force only to the extent the agency can persuade a court to the same conclusion." *AT&T Co. v. EEOC*, 270 F.3d 973, 976 (D.C. Cir. 2001). Because the Guidance leaves ample room for EEOC staff to evaluate conduct on a case-by-case basis applying a Title VII analysis, it does not "tell[] EEOC staff and all employers what sort of policy is unlawful" or otherwise necessarily "commit the administrative agency to a specific course of action," *Texas*, 933 F.3d at 445 (citation omitted). It is therefore not reviewable final agency action.

Plaintiffs' assertion that the Guidance imposes legal consequences reflects a misunderstanding of its scope. Plaintiffs repeatedly assert that the challenged portions of the Guidance "require[] employers to provide bathroom, dress code, and pronoun accommodations" based on gender identity, and that an employer who fails to do so "creates a hostile work environment with harassment that discriminates based on sex." Br. at 1; *see also id.* at 5 (contending that the Guidance "reimposed similar dress code, bathroom, and pronoun accommodation policies as the 2021 Guidance"); *id.* at 7 (contending that the Guidance requires employers to create exceptions to "sex-specific dress code[s] . . . to avoid liability"); *id.* at 14 (asserting that the Guidance "states that an employer unlawfully 'discriminates' on the basis of sex if it adheres to sex-specific bathroom, dress, or pronoun policies"). That is not what the Guidance says. As discussed above, the Guidance nowhere declares that any actions by an employer automatically are unlawful, nor does it state that such actions, without more,

---

[3]    While the EEOC investigates charges against State respondents, Title VII provides that the EEOC cannot file suit against a State but must refer such charges to the DOJ to determine whether to bring a civil action. *See* 42 U.S.C. § 2000e-5(f)(1). Under the Government Employee Rights Act of 1991 ("GERA"), the EEOC also has jurisdiction to administratively adjudicate, subject to judicial review, claims brought by individuals involving certain State elected officials' personal staff, policymaking staff, and immediate advisors. 42 U.S.C. § 2000e-16c(a). In GERA cases, the matter is brought by the individual, and the EEOC (through an Administrative Law Judge with review by the Commission) adjudicates the claim. *See generally* 29 C.F.R. §§ 1603.100–1603.306

automatically create Title VII liability for sex harassment.[4]  Rather, the Guidance addresses potential employer liability for claims of *harassment*.

Correctly interpreted, the portions of the Guidance Plaintiffs challenge merely reflect that certain types of conduct directed at employees because of their gender identity may, depending on the circumstances, constitute evidence in support of a hostile work environment claim.  Indeed, the portion of the Guidance that addresses gender identity—Section II.A.5.c—falls within the portion of the Guidance identifying "the legally protected characteristics covered by the federal [equal employment opportunity] laws enforced by the EEOC."  App. 27.  That portion of the Guidance explains that such conduct "can, *but does not necessarily always*, constitute or contribute to unlawful harassment, including a hostile work environment."  *Id.* (emphasis added).  The Guidance further explains that not "all harassing conduct violates the law, even if it is because of a legally protected characteristic."  *Id.*  The statements in Section II, therefore, do not bind anyone to the view that the specific examples therein establish liability under Title VII because "whether specific harassing conduct violates the law must be assessed on a case-by-case basis."  The specific examples do not establish liability unless a charge establishes that the workplace harassment was so severe or pervasive that it affected a term, condition, or privilege of employment and there is a basis for holding the employer liable.  *Id.* ("Section II does not address whether such conduct reaches the point of creating a hostile work environment.").  Because Section II only addresses when potentially harassing conduct is based on a protected basis—and does not address these other required elements—it cannot establish the *per se* rule of liability for failure to provide pronoun, dress code, or bathroom accommodations that Plaintiffs claim it does.

---

[4]    In fact, in its only express statement on that issue, the Guidance simply states that "denial of access to a bathroom consistent with one's gender identity may be a discriminatory action in its own right and should be evaluated accordingly."  App. 131.  A statement that a certain policy *may* be discriminatory is not conclusive as to the EEOC's view as to whether it *is* violative of Title VII in all circumstances.  On the contrary, the fact that the EEOC felt the need to raise such a possibility itself demonstrates that the remainder of the Guidance does not say that such policies necessarily violate Title VII, as Plaintiffs contend.

In arguing to the contrary, Plaintiffs assert that the Guidance "gives mandatory commands" and "provides definitive examples of factual scenarios that would create liability for harassing conduct based on gender identity." Br. at 11–12 (citing App. 35–36 and Examples 14 & 15). Those examples, however, are merely explanations of when "[h]arassing conduct" is "based on" an employee's gender identity. App. 35. The Guidance "does not address whether" the conduct set forth in those examples "reaches the point of creating a hostile work environment" and is therefore unlawful. App. 27.[5] Notably, Plaintiffs do not contend that the remainder of the Guidance or the dozens of examples addressing, for example, race-based harassment or employer liability determine any rights or obligations.

Texas cites Example 46 to argue that the Guidance requires employers to provide bathroom, pronoun, and dress code "accommodations." Br. at 6. But that example does not express—much less bind the EEOC to—any view that an employer's failure to permit employees to use bathrooms, dress, and adopt pronouns in accordance with their gender identities is always unlawful harassment under Title VII. Example 46 is situated within a discussion of "some significant aspects of context that can be relevant in determining whether harassment was sufficiently severe or pervasive to create a hostile work environment," and the Guidance makes clear that "[o]ther considerations also may be

---

[5] Example 14 addresses harassment based on sexual orientation and therefore the substance of that example appears to be outside the scope of Plaintiffs' challenge to the Guidance, which is focused on their perception that the Guidance "requires employers to provide bathroom, dress code, and pronoun accommodations" based on gender identity. Br. at 1. As the 2024 Harassment Guidance explains, Example 15 was "adapted from the facts in *Cunningham v. Burlington Coat Factory Warehouse Corp.*, No. 1:18-cv-11266, 2024 WL 863236 (D.N.J. Feb. 29, 2024)." App. 131. The district court in *Cunningham* denied a private employer's motion for summary judgment on a Title VII hostile work environment claim based on testimony that the plaintiff had been "misgendered between thirty and forty percent of the time," had been "asked by a coworker if she was born a man" and "was instructed . . . to wear pants as opposed to skirts, while other employees were permitted to wear dresses and skirts." 2024 WL 863236, at *6. Example 15 does not include facts regarding the use of bathrooms.

relevant in evaluating harassment in light of the totality of the circumstances." App. 61. In other words, further fact-specific analysis on a case-by-case basis is required.[6]

For all these reasons, the Guidance under review here differs markedly from the Technical Assistance document this Court concluded was final agency action in a prior case. *See Texas*, 2022 WL 22869778, at *2–6. There, the Court concluded that the document used "mandatory language" concluding that specific employer practices related to dress codes and bathroom usage were not permitted. *Id.* at *5.[7] For the reasons explained, the Guidance at issue here does not do that.

Nor does the Guidance bind EEOC staff to any legal position. *See Texas*, 933 F.3d at 443. Plaintiffs argue that the Guidance is intended to be used "as a resource" for employers, employees, EEOC staff, and courts considering "harassment claims." App. 26; *see* Br. at 11. But the fact that agency staff may refer to the Guidance in exercising their duty to make a case-specific assessment does not make it a binding source of legal consequences. If anything, it only confirms that the Guidance is just what it purports to be: a general resource to aid staff that does not "obviate the need for the EEOC and its staff to consider the facts of each case and applicable legal principles when exercising

---

[6]    Example 46 was "adapted from the facts in *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115 (E.D. Pa. 2020)." App. 163. That court denied a motion to dismiss a Title VII hostile work environment claim where the plaintiff alleged that she had been "misgendered" and "prevented from using the women's bathroom, had her duties changed so as to be kept out of the view of customers, was asked probing questions about her anatomy and gender identity, was subject to a stricter dress code than other female and cisgender employees, and was ultimately terminated." *Doe*, 472 F. Supp. 3d at 129; *see also Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 779 (11th Cir. 2024) (holding that a reasonable jury could conclude that calling the plaintiff, a transgender man, "ma'am," "it," and "that" and intentionally and repeatedly using incorrect pronouns over a facility-wide radio system, along with other harassment, constituted unlawful harassment based on sex). Example 46 does not include facts with regard to dress codes or bathroom use.

[7]    This Court's earlier decision also cited as an example of "mandatory language" a statement that the use of pronouns or names that are inconsistent with an individual's gender identity could in some circumstances constitute harassment. *Texas*, 2022 WL 22869778, at *5. The Guidance here uses different language and includes a fuller explanation of the required elements that must be shown before an employer may be held liable for a hostile work environment. The inclusion of those additional elements in the Guidance makes it even clearer that misgendering alone is not always a Title VII violation, as Plaintiffs here suggest.

19

their enforcement discretion." App. 26; *see Texas*, 933 F.3d at 442 (citing *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997)).

The Guidance here thus differs from the EEOC action at issue in the Fifth Circuit's decision in *Texas v. EEOC*, 933 F.3d at 443–46. The EEOC in that case did "not dispute that the Guidance" was binding on "EEOC staff," *id.* at 443, which is not the case here, *see* App. 26. The document at issue there, moreover, told "EEOC staff" that specific employment practices were inherently "unlawful," forbade "staff from considering certain evidence . . . when deciding whether an employer has satisfied Title VII's requirements," and "direct[ed] their decisions about which employers to refer for enforcement actions." *Texas*, 933 F.3d at 443. The challenged portions of the Harassment Guidance at issue here, in contrast, do not "broadly condemn[]" any specific employment practice without further analysis. *Id.* Those challenged portions merely explain that some types of conduct may in appropriate circumstances be considered as part of the analysis in determining whether harassment is based on sex. Because those portions of the Guidance do not mandate any finding with respect to any particular conduct or in any specific case, the Guidance leaves ample "room for EEOC staff *not* to issue referrals to the Attorney General" or *not* to find reasonable cause following the investigation of a charge. *Id.* For example, in any particular case, the investigator might conclude that the challenged conduct might not be sufficiently severe or pervasive to constitute a hostile work environment, or that the employee did not find the conduct subjectively offensive, or there is not a sufficient basis for holding the employer liable. Further, even if all those elements were met, a reasonable cause determination was issued, and conciliation failed, EEOC staff or DOJ would still have further discretion to issue a right-to-sue notice to the aggrieved individual or file a civil action.

For the same reason, Plaintiffs are also wrong to argue that the Guidance creates "norms or safe harbors" by which employers can avoid enforcement or referral. Br. at 12. The Guidance does not say that EEOC staff must pursue enforcement of employers who lack any particular policies related to bathrooms, dress codes, or pronouns, nor does it say that employers could avoid liability

for an otherwise hostile work environment merely because it had such a policy.[8]  Simply put, the Guidance does not require EEOC staff to pursue an employer because it maintains "sex-specific bathroom and dress policies" or policies related to pronoun usage, *id.* at 9, and Plaintiffs point to no language of the Guidance that requires employers to adopt such policies.

Plaintiffs' reference to the Supreme Court's decision in *Hawkes* is similarly inapt.  Br. at 13–14.  In that case, determinations by the Army Corps of Engineers triggered a regulation generally binding the Corps to those determinations for five years.  *Hawkes,* 578 U.S. at 593.  They also bound the Federal Government "in any subsequent Federal action or litigation concerning that final determination."  *Id.* at 598.  The Guidance, in contrast, takes no position on any specific employer's practices, and no separate regulation binds the EEOC to any view expressed in the Guidance in subsequent enforcement actions.  For example, a decision by an EEOC investigator that the harassment alleged in a specific charge was not severe or pervasive would not create immunity for the same employer in a different charge because harassment cases are, by their nature, fact specific, and even if the EEOC found no reasonable cause, an individual plaintiff could still bring a lawsuit.  Nor does the Guidance preclude EEOC staff from exercising discretion not to pursue enforcement even when a charge credibly asserts that an employee was subject to extensive and intentional misgendering or was prohibited from complying with a dress code or using a bathroom consistent with that employee's gender identity.  Moreover, any later enforcement action would be based on Title VII, not the Guidance.  And, for the same reasons, the Guidance does not bind DOJ.  Indeed, Plaintiffs do not even contend that DOJ is bound by the Guidance.  Br. at 13 (arguing only that DOJ has "never disavowed an intention to pursue enforcement of EEOC referrals pursuant to the 2024 Guidance").

None of Plaintiffs' remaining characterizations of the Guidance establish that legal consequences flow from it.  *See* Br. at 4.  That an "employer may be liable for a hostile workplace

---

[8]    While the Guidance explains that an effective anti-harassment policy can factor into whether an affirmative defense applies, it also states that "even the best anti-harassment policy . . . will not necessarily establish that the employer has exercised reasonable care to prevent harassment."  App. 85.

created by its customers" is not a novel construction adopted by the Guidance, but a long-standing principle of Title VII.  *Siddiqui v. AutoZone W., Inc.*, 731 F. Supp. 2d 639, 647 n.11 (N.D. Tex. 2010); *see also Gardner v. CLC of Pascagoula, LLC*, 915 F.3d 320, 322 (5th Cir. 2019) (observing that "nonemployees can be the source of the harassment" in a hostile work environment claim if the plaintiff can "show that the employer knew or should have known about the hostile work environment yet allowed it to persist"); App. 78 & nn.246–50 (collecting cases in which courts have held that employers may be liable for acts of harassment committed against employees by non-employees).  And while the Guidance cites caselaw establishing an affirmative defense to a hostile work environment claim based on an employer's exercise of reasonable care to prevent and correct harassment, it notes that "Federal EEO law does not specify particular steps an employer must take to establish that it exercised reasonable care."  App. 84; *see Hockman v. Westward Commc'ns*, 407 F.3d 317, 329 (5th Cir. 2004) (stating that "[w]hat constitutes prompt remedial action depends on the facts of the case").  Because Texas has not established that the 2024 Harassment Guidance has any "actual legal effect," this Court lacks jurisdiction to review it under the APA.  *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014).

## II.    The 2024 Guidance Does Not Violate the APA

### A.    The 2024 Guidance Is Not Contrary to Law

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  In *Bostock*, the Supreme Court construed this provision to prohibit discrimination against employees for being gay or transgender, because for an employer to discriminate against an employee on those bases "the employer must intentionally discriminate against individual men and women in part because of sex."  590 U.S. at 662; *see also id.* at 660 (explaining that an "employee's sex plays an unmistakable and impermissible role" when an employer "intentionally penalizes a person identified

as male at birth for traits *or actions* that it tolerates in an employee identified as female at birth." (emphasis added))

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). In the four years since the *Bostock* decision, various courts have recognized that a plaintiff may state a claim for sex discrimination under Title VII by alleging sufficiently severe or pervasive harassment based on the plaintiff's sexual orientation or gender identity. *See, e.g.*, *Doe v. City of Detroit*, 3 F.4th 294, 300 n.1 (6th Cir. 2021) ("Harassment on the basis of transgender identity is sex discrimination under Title VII because 'it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex.'" (quoting *Bostock*, 590 U.S. at 660)); *Goings v. Lopinto*, No. 22-2549, 2023 WL 2709826, at *5 (E.D. La. Mar. 30, 2023) (holding that plaintiff adequately pleaded that the basis of the harassment by the defendant was his perceived sexual orientation); *cf. Newbury v. City of Windcrest*, 991 F.3d 672, 677 (5th Cir. 2021) (observing that *Bostock*'s clarification that Title VII prohibits sexual orientation and gender identity discrimination did not "alter[] the preexisting legal standard for sexual harassment."). Several courts, including one in this district, have also concluded that allegations of repeated and intentional misgendering, and requirements to comply with sex-specific dress codes or use sex-separated bathroom facilities that do not align with the plaintiff's gender identity may support a hostile work environment claim assuming the other required elements are met. *See, e.g.*, *Copeland*, 97 F.4th at 771–72, 779 (citing misgendering allegations); *T.D.H. v. Kazi Foods of N.J., Inc.*, Civ. No. 5:23-cv-00634-JMG, 2023 WL 4567722, at *9–10 (E.D. Pa. July 17, 2023) (citing questions about "preferred pronouns in front of customers and employees despite having allegedly already known them" as supporting hostile work environment claim); *Eller v. Prince George's Cnty. Pub. Schs.*, 580 F. Supp. 3d 154, 172–73 (D. Md. 2022); *Doe*, 472 F. Supp. 3d at 129–30 (citing fact that plaintiff was misgendered, "prevented from using the women's bathroom," and "was subject to a stricter dress code" among other factors to conclude plaintiff had sufficiently pleaded a hostile work environment claim); *Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d

744, 748 (S.D. Ohio 2018); *cf. Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 121 (4th Cir. 2021) ("[T]he Supreme Court's holding in *Bostock* makes clear that a plaintiff may prove that same-sex harassment is based on sex where the plaintiff was perceived as not conforming to traditional male stereotypes."); *Smith v. City of Salem*, 378 F.3d 566, 571–75 (6th Cir. 2004) ("Sex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior"); *Garrett v. Kohls Distrib. eFulfillment Ctr.*, No. 3:23-cv-2525, 2024 WL 3237184, at *4, *6 (N.D. Tex. June 7, 2024) (concluding that allegations that an employees' coworkers "fail[ed] to use correct pronouns," that the employee felt uncomfortable "in either bathroom," and that the employee was subjected to derogatory comments were sufficient to state a *prima facie* claim that adverse employment action was based on sex discrimination), *report and recommendation adopted*, 2024 WL 3240656 (N.D. Tex. June 28, 2024).

The challenged portions of the Guidance correctly reflect the holdings of these cases. Plaintiffs may disagree with those courts' conclusions, but they concede (as they must) that cases cited in the Guidance identified factors that could support a finding of harassment. *See* Br. at 25–26. Plaintiffs, however, ignore that the Guidance reflects the legal principles laid out in those cases, principles that are consistent with the well-settled legal standard that dictates when harassment based on sex can create liability under Title VII. That same standard has been upheld by the Supreme Court and applied in this Circuit. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998); *Boh Bros.*, 731 F.3d at 453.

The Guidance does not purport to require specific employment practices; rather it expressly acknowledges that "whether specific harassing conduct violates the law must be assessed on a case-by-case basis" in accordance with these well-settled legal standards. App. 27. Contrary to Plaintiffs' claim, neither the Guidance nor the cases it relies on state that Title VII requires specific "accommodations" based on sex related to dress codes, pronouns, or bathrooms. Br. at 17–22. Rather, the challenged portion of the Guidance merely conveys, with citation to appropriate cases, that courts may consider conduct such as repeated and intentional misgendering, forcing an employee

to dress inconsistently from their gender identity, and requiring employees use sex-separated bathroom facilities that do not align with their gender identity are among the constellation of factors that may support a finding that harassment was so severe or pervasive so as to alter the conditions of employment.

Plaintiffs' contrary interpretation of the Guidance again reflects a misreading of what it says. Plaintiffs contend that the Guidance "claims that 'the Supreme Court's reasoning in the [*Bostock*] decision . . . logically extends' to other employment activities, like bathroom and pronoun policies." Br. at 15 (quoting App. 128). The cited language, however, does not suggest *Bostock* extends to specific employment activities that were not at issue in that case. In fact, the cited portion of the Guidance says that *Bostock*'s reasoning about discriminatory discharge "logically extends to *claims of harassment* that change the terms, conditions, or privileges of employment." App. 128 (emphasis added). Plaintiffs' citation of several cases concluding that certain sex-specific policies do not "rise to the level of discrimination," Br. at 15 (citation omitted), are consistent with the Guidance, which requires a fact specific analysis for each case, rather than deciding that certain conduct would always or never be harassment. Plaintiffs similarly assert that the "Guidance did not address discrimination based on sexual orientation or gender identity as aspects of sex discrimination, as did *Bostock*." Br. at 19. But that is also incorrect. The portion of the Guidance discussing sexual orientation and gender identity is a subsection of the Guidance discussing sex discrimination. App. 32, 35. As the Guidance notes, "Sex-based discrimination under Title VII includes employment discrimination based on sexual orientation or gender identity." App. 35.

These misinterpretations of the Guidance lead Plaintiffs to incorrectly assert that the Guidance requires specific accommodations for certain employees. The Guidance does not require accommodations based on sex, including gender identity, any more than Title VII's prohibition of harassment requires accommodations in connection with any other protected characteristic, including sex. No one would argue that under a hostile-work environment theory a man is provided an "accommodation" because his co-workers abstain from calling him insufficiently masculine, yet those

25

types of verbal attacks may be considered in assessing whether a male employee has established sufficiently severe or pervasive harassment. *See Oncale*, 523 U.S. at 77. A transgender employee similarly receives no "accommodation" when they are not subjected to harassment because they are transgender.

Indeed, Plaintiffs cannot dispute that sexual harassment claims may include harassment based on failure to adhere to sex stereotypes. *See e.g., Boh Bros.*, 731 F.3d at 449, 453, 457, 461 (explaining that plaintiff presented evidence that male employee suffered "sufficiently severe or pervasive" sex-based harassment where he was repeatedly called "princess" by a supervisor who perceived him as "not a manly-enough man"); *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 873–74 (9th Cir. 2001) (finding "sufficiently severe" harassment where a supervisor and coworkers called a male employee "she," "her," and a "female whore" because he "did not conform to their gender-based stereotypes"). They point to no principled reason for why transgender people should be treated any differently. Under Plaintiffs' reasoning, if a hospital had a policy of referring to all male nurses with the title "Ms." because they work in a "woman's job," Title VII could not prohibit that policy because the choice of what title to use is "volitional." Br. at 18. Even if there was a "perfect correlation" between the use of the title "Ms." and the female gender, under Plaintiffs' reasoning, that still would not be enough for this misgendering of male nurses to violate Title VII. Br. at 18–19. The male nurse in such a work environment would not be requesting an "accommodation," *id.* at 19, if he complained about being misgendered and neither are transgender people who complain about misgendering—they are just asking their employer to remedy harassment.

The Guidance is consistent with this Court's decision that the EEOC's prior Technical Assistance document was contrary to law for the same reason. In determining that *Bostock*'s holding was limited to discrimination based on status, the Court acknowledged that a Title VII complainant could rely on harassment directed at associated conduct to make out a claim of status-based discrimination. *Texas*, 633 F. Supp. 3d at 835–36. As this Court noted, "the Fifth Circuit held evidence

26

of harassment arising out of a plaintiff's failure to conform to sex-stereotypes 'can certainly be *evidence* that gender played a part.'" *Id.* (quoting *Boh Bros.*, 731 F.3d at 454).

Plaintiffs also wrongly assert that discrimination based on gender identity should not be encompassed by Title VII's prohibition on discrimination based on sex because some "transgender persons" may "make no attempt to socially transition," Br. at 18. This argument misses the point and is directly contrary to *Bostock*. As the Supreme Court explained, regardless of any social transition, "sex is necessarily a but-for *cause*" of discrimination on the basis of sexual orientation or gender identity "because it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." *Bostock*, 590 U.S. at 660-61; *id.* at 669 ("[D]iscrimination based on . . . transgender status necessarily entails discrimination based on sex.").

Plaintiffs' analysis of the cases referenced in the Guidance underscores that the agency's interpretation of Title VII is well founded. For example, Plaintiffs note that in *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115 (E.D. Pa. 2020), the court held that "the plaintiff's alleged pattern of harassment stated a claim for a hostile work environment under Title VII" where "misgendering and bathroom use were among the many allegations of harassment." Br. at 25 (citation omitted). Similarly, Plaintiffs acknowledge that the Court in *Tudor v. Southeastern Oklahoma State University*, No. 15-cv-324, 2017 WL 4849118 (W.D. Okla. Oct. 26, 2017), *aff'd*, 13 F.4th 1019 (10th Cir. 2021), cited "restrictions on bathroom use and extensive misgendering among multiple factors by which it determined a jury could find harassment." Br. at 26 (citation omitted). That the jury determined that the plaintiff failed to prove his allegations in that specific case, *id.*, does not undermine the court's conclusion that the claim was legally sufficient. Plaintiffs' acknowledgement that these courts concluded that the specific actions at issue in this case can in appropriate contexts contribute to a hostile work environment aligns with the challenged portion of the Guidance. App. 128. And those cases are inconsistent with Plaintiffs' position that such actions can *never* contribute to a hostile work environment claim. In any

event, Plaintiffs simply ignore the many additional Title VII cases cited in the Guidance and that have been decided since its publication. *See* App. 128, 130.[9]

In contrast with the cases cited by the EEOC, none of Plaintiffs' cases support their argument that the EEOC may *never* consider repeated and intentional misgendering, requirements to comply with sex-specific dress codes, and requirements to use sex-separated bathrooms inconsistent with an employee's gender identity, in analyzing a harassment claim. *See* Br. at 14–26. Plaintiffs' request for such a *per se* rule is flatly inconsistent with the Supreme Court's instruction that "the objective severity of harassment should be judged . . . considering 'all the circumstances.'" *Oncale*, 523 U.S. at 81 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). That "inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Id.* Harassing conduct that is severe or pervasive in one context might not be so in another. *Id.* ("A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field—even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office."); *cf. Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (per curiam) (explaining "context, inflection, tone of voice, local custom, and historical usage" are relevant in assessing evidence of discriminatory intent). Determining the "real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships" that cannot be reduced to the bright-line rule Plaintiffs seek. *Oncale*, 523 U.S. at 82.

As these cases establish, Plaintiffs' argument that specific conduct "cannot constitute harassing behavior" when it is not "inherently discriminatory" is simply incorrect. Br. at 25. Whether that

---

[9]     Plaintiffs also cite a recent EEOC civil enforcement complaint filed in federal district court as an example of overreach. Br. at 9. The EEOC alleged in that complaint that an employer subjected a class of transgender employees to pervasive sexual harassment including repeatedly subjecting the transgender employees to misgendering, graphic sexual comments, unequal access to bathrooms, intrusive questions from supervisors about their genitalia and sexual activity, and other degrading conduct based on gender identity. *See generally* Compl., *EEOC v. Starboard Grp., Inc.*, No. 3:24-cv-2260 (S.D. Ill. Oct. 1, 2024). Nothing in the complaint cites or relies on the Guidance challenged here.

conduct is harassing will depend on the circumstances presented. *Oncale*, 523 U.S. at 82–83; *Harris*, 510 U.S. at 23; App. 27 (noting that the term "harassing conduct" as used in the Guidance refers to "conduct that can, but does not necessarily always, constitute or contribute to unlawful harassment").

Plaintiffs also criticize the EEOC for citing its federal section administrative appeal opinions addressing the provision of Title VII that applies to federal employees. *See* Br. at 25. This Court has already concluded that it was not arbitrary and capricious for the EEOC to rely on those opinions and that they may be cited as persuasive authority in court. *Texas*, 633 F. Supp. 3d at 838, 836. Defendants acknowledge that this Court concluded that the federal sector authorities cited in the Guidance in interpreting Title VII's provision that applies to State and private employers were unpersuasive in connection with the Technical Assistance document. *Id.* (noting that "the Court cannot assume these provisions should be interpreted synonymously"). Defendants respectfully disagree with that conclusion, as the substantive provisions of Title VII do not vary when the complainant is a federal employee. 42 U.S.C. § 2000e(k) (defining the terms "because of sex" and "on the basis of sex" identically); *Chandler v. Roudebush*, 425 U.S. 840, 841 (1976) (stating that Congress intended to extend to "[a]ggrieved [federal] employees or applicants . . . the full rights available in the courts as are granted to individuals in the private sector under title VII" (citation omitted)); *Morton v. Mancari*, 417 U.S. 535, 547 (1974) ("[i]n general, it may be said that the substantive anti-discrimination law embraced in Title VII was carried over and applied to the Federal Government"). Even were the Court to adhere to its prior analysis, however, the EEOC cited many additional State- and private-employer cases to support its analysis. *See* App. 128, 130. Plaintiffs offer no support for their requested order declaring that EEOC decisions "are not applicable" to State or private employers or for an injunction prohibiting the EEOC from relying on them even as persuasive authority. *See* Proposed Order at 2–3, ECF No. 30-1.

Because the Guidance is not contrary to law, the Court should grant Defendants' summary judgment on Count 1 of Plaintiffs' Complaint.

### B.    The EEOC Had Authority to Issue the Guidance

Plaintiffs contend that the Guidance exceeds the EEOC's limited rulemaking power under Title VII because it is a substantive rule.  *See* Compl. ¶¶ 171–79 (Count 2).  It is not.  At most, the Guidance is an interpretive rule within the EEOC's authority because it lacks "the force and effect of law."  *See Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 634–35 (D.C. Cir. 2019) (noting that the "finality analysis is distinct from the test for whether a rule is legislative").

"Legislative" or "substantive" rules are defined as agency actions which have the "force and effect of law."  *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302–03 (1979)).  Such rules are distinct from "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," which are exempt from notice and comment procedures.  5 U.S.C. § 553(b)(A).  "[T]he critical feature of interpretive rules is that they are 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'"  *Perez*, 575 U.S. at 97 (citation omitted); *see also Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 628 (5th Cir. 2001) ("[I]nterpretive rules are statements as to what the administrative officer thinks the statute or regulation means." (quoting *Brown Express Inc. v. United States*, 607 F.2d 695, 700 (5th Cir. 1979)).

The Fifth Circuit has stated that, to distinguish "substantive rules from nonsubstantive rules," the primary issue is whether the rule constitutes a "binding norm," by creating a "binding effect on agency discretion or severely restrict[ing] it."  *See Pros. & Patients for Customized Care v. Shalala*, 56 F.3d 592, 595 (5th Cir. 1995).  In examining whether a rule is sufficiently binding to qualify as legislative, "the starting point is 'the agency's characterization of the rule,'" which is afforded "deference."  *Id.* at 596 (quoting *Metro. Sch. Dist. of Wayne Twp., Marion Cnty. v. Davila*, 969 F.2d 485, 489 (7th Cir. 1992)).  Then, in examining the text of the rule at issue, "[t]he key inquiry . . . is the extent to which the challenged policy leaves the agency free to exercise its discretion to follow or not follow that general policy in an individual case."  *Id.* (quoting *Ryder Truck Lines, Inc. v. United States*, 716 F.2d 1369, 1377 (11th Cir. 1983)).  "As long as the agency remains free to consider the individual facts in the various

30

cases that arise, then the agency action in question has not established a binding norm." *Id.* at 596–97 (quoting *Ryder Truck Lines*, 716 F.2d at 1377).

Under this test, the Guidance does not qualify as a substantive rule. The Guidance does not itself impose any rights or obligations, but rather explains the EEOC's "position on important legal issues" arising under Title VII. App. 20. To the extent the challenged statements in the Guidance Plaintiffs challenge are consistent with employees' rights or employers' obligations under anti-discrimination laws within the EEOC's jurisdiction, those rights and obligations are created by the underlying statutes, not the Guidance itself. And for the reasons already explained, the Guidance expressly requires EEOC staff to consider whether the specific facts of a charge meet the standards for liability imposed by Title VII and relevant precedent, regardless of the Guidance. The Guidance is, therefore, non-binding.

Even if the Court were to conclude that the Guidance is binding in some sense on the agency itself, the Guidance would still qualify as a permissible interpretive rule within the EEOC's authority. Plaintiffs argue that the Guidance must be a substantive rule because it "binds agency staff and the public because of its mandatory language," Br. at 29 (citation omitted), but this "argument misapplies the proper legal standard," *Flight Training Int'l, Inc. v. FAA*, 58 F.4th 234, 242 (5th Cir. 2023). The Fifth Circuit has "reject[ed] the proposition that a rule cannot be interpretive if it limits discretion or uses binding language." *Id.* Indeed, mandatory language may be appropriate in an interpretive rule that "explain[s] what an agency thinks a statute or regulation actually says." *Id.* "If the law is mandatory, then it is natural for an agency's restatement of the law to speak in mandatory terms as well." *Id.*

That is exactly the case here. The Guidance informs the public "of existing requirements under the law." App. 20. As explained above, the Guidance does not itself mandate anything. The Guidance "presents a legal analysis of standards for harassment and employer liability applicable to claims of harassment under the equal employment opportunity . . . statutes enforced by the Commission." App. 25. And it cites relevant precedent for each legal assertion Plaintiffs here

challenge. That language does not suggest that the Commission was promulgating a document with independent legal force such that it becomes a substantive, legislative rule. Such rules are created "only when the agency seeks to *make substantive law*" pursuant to "the agency's congressionally-delegated powers" to do so, which the Commission here does not claim. *Flight Training Int'l*, 58 F.4th at 241 n.5 (explaining that legislative "rules bind courts, not because they are entitled to deference, but because they actually *are* law").

The Guidance, moreover, fits squarely within the EEOC's long history of issuing guidance explaining its views on Title VII and the other statutes within its jurisdiction. *See, e.g.*, *Meritor Sav. Bank*, 477 U.S. at 64–65 (citing "EEOC issued Guidelines" on Title VII issue Supreme Court had yet to opine); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 430–31 (1975) *cf. Groff v. DeJoy*, 600 U.S. 447, 471 (2023) (discussing EEOC guidance with approval); EEOC Guidance, http://www.eeoc.gov/eeoc-guidance (including numerous documents informing the public regarding EEOC's processes and established rights and responsibilities under the laws it enforces). To be sure, "Congress, in enacting Title VII, did not confer upon the EEOC authority to promulgate rules or regulations pursuant to that Title." *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141 (1976). Yet courts have never questioned the EEOC's authority to issue its non-binding views interpreting Title VII. Though such guidance documents are "entitled to consideration," *id.*, courts routinely recognize that they lack the force of law, *see EEOC v. SunDance Rehab. Corp.*, 466 F.3d 490, 500 (6th Cir. 2006); *In re Union Pacific R.R. Emp. Pracs. Litig.*, 479 F.3d 936, 943 (8th Cir. 2007); *McMenemy v. City of Rochester*, 241 F.3d 279, 284 (2d Cir. 2001); *see Gen Elec. Co.*, 429 U.S. at 141 (noting that "interpretative rulings such as the EEOC guidelines" are eligible only for deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

### C.    Plaintiffs' Other APA Claims Also Fail

Because the Guidance is not a legislative rule, Plaintiffs' other APA claims necessarily fail. In Count 3, Plaintiffs argue that the Guidance is arbitrary and capricious because, in their view, it did not adequately account for safety, implementation, or federalism concerns. *See* Compl. ¶¶ 180–81; Br. at 26–29. Those arguments are misplaced as, again, the Guidance merely summarizes existing

harassment law and does not "attempt to . . . impose new legal obligations on employers with respect to any aspect of workplace harassment law, including gender identity discrimination." App. 110. To the extent Plaintiffs have safety, implementation, or federalism concerns about the legal positions cited in the Guidance, those concerns stem from the underlying judicial decisions, not the Guidance.

The final version of the Guidance also need not have been published in the Federal Register. *See* Compl. ¶¶ 187–89 (Count 4); Br. at 29–30 (citing 5 U.S.C. § 552(a)(1)(D)). The "courts have consistently required that agencies publish their rules and policy statements only if they constitute a change from the existing law, policy or practice." *Knutzen v. Eben Ezer Lutheran Hous. Ctr.*, 815 F.2d 1343, 1351 (10th Cir. 1987). The Guidance here does not reflect a change in policy; it is merely a non-comprehensive resource that describes (with citations) how Title VII has been interpreted and applied with respect to elements of a hostile work environment claim, and that conveys the Commission's position on those issues. *See* App. 110–12. The "proposed guidance did not attempt to—nor does the final guidance attempt to—impose new legal obligations on employers with respect to any aspect of workplace harassment law, including gender identity discrimination." App. 110. The final version therefore need not have been published in the Federal Register.

Even assuming the Guidance were subject to a publication requirement, Plaintiffs do not justify their assertion that the Guidance itself is unlawful as a result. The Freedom of Information Act supplies its own remedy when a "matter required to be published in the Federal Register" is "not so published." 5 U.S.C. § 552(a)(1). In such a circumstance, "a person may not in any manner be required to resort to, or be adversely affected by," the matter "[e]xcept to the extent that a person has actual and timely notice of the terms thereof." *Id.* For all the reasons previously explained, the Guidance cannot "adversely affect[]" any person because it is merely explanatory of legal duties imposed by Title VII. But even if the Court were to disagree with that, the statute plainly contemplates circumstances in which a rule may be applied even though it did not meet a publication requirement. *See Tearney v. Nat'l Transp. Safety Bd.*, 868 F.2d 1451, 1454 (5th Cir. 1989) (explaining that a rule was "enforceable against" pilots "despite any failure of publication of the rule in the *Federal Register*"

because they had "actual notice of [the] rule").  Although the APA did not require it, the Commission submitted the proposed Guidance to notice and comment by publishing a notice in the Federal Register pursuant to its internal regulations governing the promulgation of guidance documents.  88 Fed. Reg. 67,750; *see* 29 C.F.R. § 1695.6.  Texas submitted a comment.  *See* Br. at 5; App. 3.  Plaintiffs cannot, therefore, seriously contend that they lack "actual and timely notice of the terms" of the Guidance.  5 U.S.C. § 552(a)(1); *see also United States v. Johnson*, 632 F.3d 912, 933 (5th Cir. 2011) (finding agency's adoption of rule without notice and comment constituted harmless error).

## III.    The Court Should Reject Plaintiffs' Requests for Overbroad Relief

For the foregoing reasons, Plaintiffs' claims lack merit, and the Court should grant Defendants' motion for summary judgment and dismiss Plaintiffs' claims.  But if the Court concludes that Plaintiffs prevail on any of their claims, the Court should tailor any relief appropriately.  Under Article III, a court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it." *Gill v. Whitford*, 585 U.S. 48, 72 (2018).  Accordingly, the Fifth Circuit has recently emphasized that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," including where the plaintiff prevails on an APA claim.  *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (quoting *Gill*, 585 U.S. at 73), *cert. granted*, 144 S. Ct. 374 (2023) (Mem.), and *aff'd*, 602 U.S. 406 (2024).  Consistent with these principles, if the Court concludes that Plaintiffs have prevailed on any of their claims, it should limit relief—whether pursuant to the APA, the Declaratory Judgment Act, or equitable authority to grant injunctive relief—to any party that has established standing and to any portions of the Guidance the Court concludes are invalid.

### A.    Any Relief Should Be Limited to Parties That Have Established Standing

Plaintiffs do not argue that universal relief is necessary to redress their alleged injuries.  To the extent they suggest that relief pursuant to Section 706 of the APA must always extend beyond the parties, *see* Br. at 30–31 (citing 5 U.S.C. § 706), they are mistaken.  It is well established that Congress's authorization for courts to issue a remedy "hardly suggests an absolute duty" to grant such relief

"under any and all circumstances." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). Rather, a statutory remedial provision should be construed consistent with "the traditions of equity practice," "[t]he essence" of which reflects "the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." *Id.* The Supreme Court recently reinforced this principle of interpretation, instructing that, "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024). And the Court explained in *Starbucks* that even seemingly mandatory statutory language—such as a directive "that an injunction 'shall be granted' if" certain conditions are met—will not "supplant the traditional equitable principles" governing relief. *Id.* at 1577. "[S]uch an abrupt departure from traditional equity practice" as requiring relief no matter the equities would require "plain[er]" language than that. *Id.*

Accordingly, when Congress provided in the APA that "[t]he reviewing court shall . . . hold unlawful and set aside [unlawful] agency action," 5 U.S.C. § 706(2), it did not compel courts to abandon "the bedrock practice of case-by-case judgments with respect to the parties in each case." *United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring in the judgment). Plaintiffs' cited cases are not to the contrary. *See* Br. at 30–31. *Cargill*, in particular, forecloses any argument that any substantive APA violation automatically warrants universal relief. There, the *en banc* Fifth Circuit held that an agency rule exceeded the agency's statutory authority and remanded the case to the district court to "determine what remedy—injunctive, declarative, or otherwise—is appropriate to effectuate that judgment," including "a more limited remedy" than universal vacatur. *Cargill*, 57 F.4th at 450, 472. If universal vacatur were the automatic remedy for any substantive APA violation, then remand would have been improper. In *Franciscan Alliance, Inc. v. Becerra*, the Fifth Circuit stated in dicta that "[v]acatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation." 47 F.4th 368, 374–75 (5th Cir. 2022). But the court of appeals subsequently held squarely in *Cargill* that APA relief may operate only as to the parties. Finally, in *Braidwood Management, Inc. v. Becerra*, the court of appeals again addressed the scope of APA relief in dicta and acknowledged that the *Cargill* court had

35

remanded to district court for briefing on the appropriate scope of any relief under the APA. 104 F.4th 930, 952 n.102 (5th Cir. 2024), *petition for cert. filed*, No. 24-475 (U.S. Oct. 30, 2024). As noted, plaintiffs' insistence that automatic, universal relief is required for violations of Section 706 cannot be squared with *Cargill*, even for substantive violations. Thus, taken together, these cases stand for the proposition that in an APA case—no less than any other case—a court should grant relief no broader in scope than necessary to vindicate the particular injuries at issue.

In this action, equitable principles counsel strongly in favor of limiting relief to any Plaintiff that has established standing. The practical problems associated with overbroad, universal relief—whether in the form of a nationwide injunction or universal vacatur—are by now well known. Such overbroad remedies "circumvent normal judicial processes," including the requirements of joinder or class certification to "seek relief for a larger group of persons." *Labrador v. Poe*, 144 S. Ct. 921, 927 (2024) (Mem.) (Gorsuch, J., concurring). They "effectively transform[] a limited dispute between a small number of parties . . . into a far more consequential referendum on the law's every provision as applied to anyone." *Id.* Moreover, overbroad remedies "take a toll on the federal court system" as a whole, by "preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Trump v. Hawaii*, 585 U.S. 667, 713 (2018) (Thomas J., concurring); *see also Arizona*, 40 F.4th at 396 (Sutton, C.J., concurring) (noting that universal remedies "short-circuit the decisionmaking benefits of having different courts weigh in on vexing questions of law and allowing the best ideas to percolate to the top"). Thus, even to the extent that such remedies are permissible, courts "would be wise to take heed" of the problems they create and to "return to a more piecemeal and deliberative judicial process." *Labrador*, 144 S. Ct. at 927–28 (Gorsuch, J., concurring).

Universal relief would be particularly harmful here, because it would forestall meaningful review in a separate challenge to the Guidance that currently is pending in another court, depriving any decision in that case of practical effect. *See Tennessee v. EEOC*, No. 3:24-cv-00224 (E.D. Tenn.). It likewise would disincentivize any other actions that may be filed with respect to the Guidance. By

contrast, properly limited relief allows percolation of "competing views" to continue, which in turn "aids th[e] [Supreme] Court's own decisionmaking process." *DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring). This Court should not effectively "freeze[] the debate" over the Guidance's validity "for all lower court judges" by invalidating it universally, notwithstanding that "[r]easonable jurists may sometimes reach different outcomes on the merits of tough questions." *Arizona*, 40 F.4th at 396 (Sutton, C.J., concurring).

Plaintiffs' request for a declaration that sex harassment under Title VII can *never* include claims regarding misgendering, dress codes, or bathroom use is contradicted by the very cases cited in the Guidance and in this brief. Those cases demonstrate that different jurists *have* reached different conclusions on the issues in this case. And at least one court of appeals has held that harassment against a transgender individual includes some of the conduct that is the subject of Plaintiffs' challenge in this case. *See Copeland*, 97 F.4th at 779. "Principles of comity require that, once a sister circuit has spoken to an issue, that pronouncement is the law of that geographical area." *United States v. AMC Ent., Inc.*, 549 F.3d 760, 773 (9th Cir. 2008); *see also Feller v. Brock*, 802 F.2d 722, 728 (4th Cir. 1986) (district court abused discretion in issuing injunction that frustrated "underlying policy of judicial administration which counsels against the creation of conflicts" between courts). Moreover, one judge in the Northern District of Texas has found that a case involving harassment of a transgender employee that included misgendering could make out a prima facie case of harassment under Title VII. *See Garrett*, 2024 WL 3237184, at *4, *6. Accordingly, any relief involving Title VII itself would be inappropriate.

### B.     Any Relief Should Be Limited to Any Invalid Portions of the Guidance

Any relief also should be limited to any portion or portions of the Guidance that the Court concludes are unlawful. As noted, the Guidance is a 189-page document that addresses harassment based on race, color, religion, sex, national origin, age, disability, or genetic information and the standards for determining whether a defendant is liable for violating the statutes that the EEOC

administers.  Plaintiffs challenge only a few phrases of the Guidance, namely its statements (with citations to supporting case law) that harassing conduct, which may or may not give rise to a Title VII violation depending on the totality of circumstances, may include: "harassing conduct because an individual does not present in a manner that would stereotypically be associated with that person's sex; repeated and intentional use of a name or pronoun inconsistent with the individual's known gender identity (misgendering); or the denial of access to a bathroom or other sex-segregated facility consistent with the individual's gender identity."  App. 35 (footnotes omitted).  If the Court grants any relief, it should be limited in scope to any challenged statement or example in the Guidance that the Court concludes is unlawful.  *See, e.g.*, *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1033 (5th Cir. 2019) (vacating only "the portions of the final rule" that the court decided were unlawful).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be denied, and Defendants' Cross-Motion for Summary Judgment should be granted.

Dated: November 13, 2024                    Respectfully submitted,

<div style="margin-left: 40%;">

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*/s/ Jacob S. Siler*
JACOB S. SILER (DC Bar No. 1003383)
TAISA M. GOODNATURE (NY Bar No. 5859137)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, D.C. 20005
Telephone: (202) 343-4556
Facsimile: (202) 616-8460
E-mail: Jacob.S.Siler@usdoj.gov

*Counsel for Defendants*

</div>