IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS and THE HERITAGE FOUNDATION, *Plaintiffs*, <br><br> v. <br><br> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; CHARLOTTE A. BURROWS, in her official capacity as Chair of the Equal Employment Opportunity Commission; MERRICK B. GARLAND, in his official capacity as Attorney General of the United States, <br><br> *Defendants*. | Case No. 2:24-cv-173-Z |

**UNOPPOSED MOTION FOR LEAVE TO FILE BRIEF OF AMICI CURIAE THE NATIONAL WOMEN'S LAW CENTER AND FIFTEEN NONPROFIT ORGANIZATIONS ADVOCATING FOR GENDER JUSTICE IN SUPPORT OF DEFENDANTS' OPPOSITION TO SUMMARY JUDGMENT AND FOR LEAVE TO PROCEED WITHOUT LOCAL COUNSEL**

Pursuant to Local Civil Rule 7.2(b), proposed amici curiae move for leave to file the attached amicus brief in support of Defendants' opposition to summary judgment. Amici also request leave to proceed without local counsel pursuant to Local Civil Rule 83.10(a). Counsel for Defendants represented that they consent to these motions, and counsel for Plaintiffs represented that they do not oppose either motion.

**INTERESTS AND IDENTITY OF AMICI CURIAE**

Amici The National Women's Law Center ("NWLC") and fifteen nonprofit organizations advocate for workers' rights, gender justice, and robust enforcement of anti-discrimination and labor laws. Amici routinely participate in cases before federal district and appellate courts to

advance the rights and protections of women, girls, and LGBTQI+ people. A listing of amici curiae is attached as Appendix A.

## ARGUMENT

NWLC and the other amici routinely participate in cases before federal district and appellate courts to advance the rights and protections of women and girls and LGBTQI+ people. The relief Plaintiffs seek in this case would undermine efforts to prevent and address widespread workplace discrimination faced by transgender and nonbinary individuals across the nation—discrimination that causes direct and devastating harm to these workers. Amici thus submit this motion for leave to file an amicus brief in support of Defendants in their opposition to Plaintiffs' shortsighted request, which puts transgender and nonbinary employees at heightened risk of workplace harassment.

Whether to grant a motion for leave to participate as amicus curiae is within the Court's discretion. *Richardson v. Flores*, 979 F.3d 1102, 1106 (5th Cir. 2020); *see also, e.g.*, *United States v. Gozes-Wagner*, 977 F.3d 323, 345 (5th Cir. 2020) (noting court's "broad discretion" to consider "amici's additional arguments"). In deciding whether to grant leave, courts generally consider whether "the proffered information is timely and useful or otherwise necessary to the administration of justice." *United States* ex rel. *Long v. GSD & M Idea City LLC*, No. 11-cv1154, 2014 WL 11321670, at *4 (N.D. Tex. Aug. 8, 2014) (quoting *Does 1-7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735, 739 n.2 (W.D. Tex. 2007)).

The Court should grant amici's motion for leave because the proposed brief is timely and useful. The brief is timely because it is filed "no later than 7 days after the principal brief of the party being supported is filed." Fed. R. App. P. 29(a)(6). It is also filed prior to the deadline for the Plaintiffs' reply brief and, as noted above, the Plaintiffs have indicated that they do not oppose its filing.

The proposed brief is also useful because it presents a perspective not addressed in the parties' briefs on the harm of enjoining the EEOC's Enforcement Guidance on Harassment in the Workplace ("Harassment Guidance"), ECF No. 31 (App. 19). The proposed brief explains the various forms that harassment based on gender identity can take, including intentional misgendering, use of slurs and derogatory language, physical and sexual assault and threats thereof, and denial of access to restrooms. It also presents evidence illustrating the physical, mental, and financial toll this harassment takes on transgender and nonbinary workers. The proposed brief offers a unique perspective on the importance of the Harassment Guidance and the dire consequences that could result from the Plaintiffs' request.

Additionally, amici respectfully request relief from the requirement of local counsel in Local Civil Rule 83.10(a). Amici are not seeking party status or to participate in arguments or hearings before the Court, and therefore will not need to appear in person in this case. Finding local counsel with a residence or principal office located within fifty miles of the courthouse in this division and clearing that counsel through each amicus's retention process has not been possible. This Court has previously granted motions for leave to proceed without local counsel in similar circumstances. *See, e.g.*, *Texas v. United States*, No. 16-cv-54, 2016 WL 9307614 (N.D. Tex. July 28, 2016) (O'Connor, J.); *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 2:22-cv-00223-Z, ECF No. 101 at 1 (N.D. Tex. Feb. 13, 2023) (Kacsmaryk, J.) (granting motions for leave to file amicus briefs, to waive local counsel requirements, and to appear *pro hac vice*). Accordingly, amici respectfully request leave to proceed without local counsel so that they may offer their expertise and perspective to the Court.

## CONCLUSION

For the foregoing reasons, amici respectfully ask this Court to grant their motion for leave to file a brief in this case and to proceed without local counsel.

Dated: November 20, 2024

Respectfully submitted,

/s/*Elizabeth E. Theran*
Elizabeth E. Theran*†
MA Bar No. 650563
Katherine Sandson*
DC Bar No. 90023114
Rachel Smith*
DC Bar No. 90010647
VT Bar No. 5903
NATIONAL WOMEN'S LAW CENTER
1350 I Street NW, Suite 700
Washington, DC 20005
T: (202) 588-5180
F: (202) 588-5185
etheran@nwlc.org

*  *pro hac vice* pending
†  Not admitted in DC; admitted to practice law in New York and Massachusetts, currently working under the supervision of a DC-barred attorney

*Attorneys for Amici Curiae*

## CERTIFICATE OF CONFERENCE (LOCAL RULE 7.1)

I certify that counsel for the proposed amici have conferred via email with counsel for Plaintiffs and counsel for Defendants about the relief sought by this motion. Counsel for Plaintiffs did not oppose the requested relief, and counsel for Defendants consented.

> /s/*Elizabeth E. Theran*
> Elizabeth E. Theran*†
> MA Bar No. 650563
> NATIONAL WOMEN'S LAW CENTER
> 1350 I Street NW, Suite 700
> Washington, DC 20005
> T: (202) 588-5180
> F: (202) 588-5185
> etheran@nwlc.org
>
> * pro hac vice pending
> † Not admitted in DC; admitted to practice law in New York and Massachusetts, currently working under the supervision of a DC-barred attorney.

## CERTIFICATE OF SERVICE

I certify that on November 20, 2024, a true and accurate copy of the foregoing motion was filed electronically via CM/ECF and served on all counsel of record.

> /s/*Elizabeth E. Theran*
> Elizabeth E. Theran*†
> MA Bar No. 650563
> NATIONAL WOMEN'S LAW CENTER
> 1350 I Street NW, Suite 700
> Washington, DC 20005
> T: (202) 588-5180
> F: (202) 588-5185
> etheran@nwlc.org
>
> * pro hac vice pending
> † Not admitted in DC; admitted to practice law in New York and Massachusetts, currently working under the supervision of a DC-barred attorney.

# APPENDIX A: LIST OF AMICI

**National Women's Law Center:** Amicus curiae The National Women's Law Center ("NWLC") is a non-profit legal advocacy organization that fights for gender justice—in the courts, in public policy, and in our society—working across the issues that are central to the lives of women and girls, especially women of color, LGBTQI+ people, and low-income women and families. Since its founding in 1972, NWLC has worked to advance educational opportunities, workplace justice, health and reproductive rights, and income security. This work has included participating in numerous cases before all levels of federal and state courts to ensure that rights and opportunities are not restricted based on sex. Given that discrimination based on transgender status is necessarily linked to harmful sex stereotypes, NWLC has a particular interest in ensuring that discrimination against LGBTQI+ individuals, including against transgender and nonbinary individuals, is not perpetuated in the name of women's rights.

**Actors' Equity Association:** Actors' Equity Association ("Equity"), a labor organization that represents live theatrical actors and stage managers, is devoted to protecting live theatre as an essential component of a thriving civil society and the basis of its members' livelihoods. Since l913, Equity has fought to win its members a dignified workplace at the theatre, from pay guarantees and pension and welfare benefits to the rules governing auditions. With more than 51,000 members across the nation, Equity is among the oldest and largest labor unions in the performing arts in America. Broadway tours of America's favorite musicals come to every major market in the United States. Equity members live and work in every state in the United States and many members travel frequently throughout the country for work. Preserving protections for transgender and non-binary workers is critical to the ability of Equity's diverse membership to work in live theatre throughout the country.

**Advocates for Transgender Equality Education Fund:** Advocates for Transgender Equality Education Fund ("A4TE") is a nonprofit organization dedicated to advocating for the rights of transgender and nonbinary individuals across the United States. A4TE, through its predecessor organizations National Center for Transgender Equality (NCTE) and Transgender Legal Defense and Education Fund (TLDEF), has appeared as amici in cases regarding transgender rights in a wide range of state and federal courts at all levels. A4TE seeks to achieve full lived equality for the transgender and nonbinary community through impact litigation, policy advocacy, and education. A4TE's efforts focus on critical areas such as employment, healthcare, housing, conditions of confinement, education, identity documents, and public accommodations.

**American Civil Liberties Union:** The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with more than three million members dedicated to defending the principles of liberty and equality embodied in the Constitution and the civil rights laws. As an organization that advocates for First Amendment liberties as well as equal rights for LGBTQ+ people, the ACLU has a strong interest in protecting those individuals from on-the-job harassment and abuse, and has appeared as counsel-of-record or amici in many cases involving the application of nondiscrimination protections to transgender and LGBQ people, including as counsel for Aimee Stephens in *Bostock v. Clayton County*, 590 U.S. 644 (2020).

**American Federation of State, County and Municipal Employees, AFL-CIO:** Amicus American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME") advocates for fairness in the workplace, excellence in public services and freedom and opportunity for all working families. We are a membership association and labor union of 1.4 million members who serve in hundreds of occupations across the nation—from nurses and

EMTs, to corrections officers, childcare providers, sanitation workers and more—providing the vital services that make America happen.

**Equal Rights Advocates:** Equal Rights Advocates (ERA) is a national non-profit civil rights advocacy organization dedicated to protecting and expanding economic and educational access and opportunities for women and girls.  Since its founding in 1974, ERA has sought to end gender discrimination and advance equal opportunity for all by litigating high-impact and historically significant cases, engaging in policy reform and legislative advocacy campaigns, conducting community education and outreach, and providing free legal assistance to individuals experiencing unfair treatment at work or in school through our national Advice & Counseling program. ERA has filed hundreds of suits and appeared as amicus curiae in numerous cases to defend and enforce civil rights in state and federal courts, including before the United States Supreme Court.  ERA views discrimination against transgender people – particularly harassment and exclusionary policies justified by the very sex stereotypes that have held women back in the workplace and elsewhere – as a pernicious and legally impermissible form of sex discrimination that is harmful to the transgender community, to women, and to our society at large.

**Lambda Legal Defense and Education Fund, Inc.:** For 50 years, Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal") has striven to ensure that courts recognize and enforce the employment protections LGBTQ workers have under existing federal and state law. Of special relevance here, Lambda Legal was not only an amicus curiae in *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020), it also successfully represented the plaintiff-appellant in *Hively v. Ivy Tech Community College of Indiana*, 853 F.3d 339 (7th Cir. 2017) (en banc), and argued as amicus curiae in both *Zarda v. Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018) (en banc), aff'd sub nom. *Bostock*, 590 U.S. 644 (2020), and *Wittmer v. Phillips,* 66 Co.,

915 F.3d 328 (5th Cir. 2019). Most recently, Lambda Legal served as counsel for a transgender teacher asserting employment sex discrimination claims under Title VII of the Civil Rights Act of 1964. *See Eller v. Prince George's Cnty. Pub. Schs.*, 580 F. Supp. 3d 154 (D. Md. 2022). Thus, the issues before the Court are of acute concern to Lambda Legal and the community it represents, who stand to be directly affected by the Court's ruling.

**LatinoJustice PRLDEF:** For more than fifty years, LatinoJustice PRLDEF ("LatinoJustice"), a national civil rights organization, has championed the civil rights of Latinos in the workplace, litigating sexual harassment and other employment discrimination cases. LatinoJustice regularly engages in impact litigation, representing Latinx and other communities in areas including economic justice, immigrant rights, and voting rights. LatinoJustice has worked to eliminate barriers that disproportionately burden women and their economic security.

**Legal Momentum, the Women's Legal Defense and Education Fund:** Legal Momentum, the Women's Legal Defense and Education Fund, is a national non-profit civil rights organization that for over 50 years has used the power of the law to define and defend the rights of girls and women. Legal Momentum has worked for decades to ensure that all employees are treated fairly in the workplace, regardless of their gender, or sexual orientation. Legal Momentum has litigated cutting-edge gender-based employment discrimination cases, including *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and has participated as amicus curiae on leading cases in this area, including *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), *Oncale v. Sundowner Offshore Services*, Inc., 523 U.S. 75 (1998), and *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

**National Center for Law and Economic Justice:** The National Center for Law and Economic Justice (NCLEJ) advances economic justice for low-income families, individuals and

communities across the country through impact litigation, policy advocacy and support of grassroots organizing. NCLEJ works to build systems that provide economic security and full participation in society for all, including the ability of workers to be free from discrimination and retaliation. NCLEJ litigates extensively in state and federal courts to secure the rights of low-wage workers, including under Title VII of the Civil Rights Act, and represents workers in front of city and federal agencies in workplace anti-discrimination complaints.

**National Council of Jewish Women:** National Council of Jewish Women (NCJW) is a grassroots organization of 210,000 advocates who turn progressive ideals into action. Inspired by Jewish values, NCJW strives for social justice by improving the quality of life for women, children, and families and by safeguarding individual rights and freedoms. NCJW's Principles state that "Equal rights and equitable opportunities for all people must be guaranteed, and all forms of discrimination must be eliminated" and in our Resolutions, we resolve to work for "The inclusion and acceptance of all individuals no matter their gender self-identification." Consistent with our Principles, Resolutions, and longstanding commitment to ending workplace harassment and affirming equal rights for LGBTQ+ individuals, NCJW joins this brief.

**The National Employment Lawyers Association and the National Institute for Workers' Rights:** The National Employment Lawyers Association ("NELA") is the largest professional membership organization in the country comprising lawyers who represent workers in labor, employment and civil rights disputes. Founded in 1985, NELA advances employee rights and serves lawyers who advocate for equality and justice in the American workplace. NELA and its 69 circuit, state, and local affiliates have a membership of over 4,000 attorneys who are committed to working on behalf of those who have been illegally treated in the workplace. This membership includes residents of Texas who would be adversely impacted by a

ruling against Plaintiffs-Appellants. NELA's members litigate daily in every circuit, affording NELA a unique perspective on how the principles announced by the courts in employment cases actually play out on the ground. NELA strives to protect the rights of its members' clients and regularly supports precedent-setting litigation affecting the rights of individuals in the workplace. The mission of the National Institute for Workers' Rights ("the Institute") is to advance workers' rights through research, thought leadership, and education for policymakers, advocates, and the public. The Institute aspires to a future in which all workers are treated with dignity and respect; workplaces are equitable, diverse, and inclusive; and the wellbeing of workers is a priority in business practices. As the nation's employee rights advocacy think tank, the Institute influences the broad, macro conversations that shape employment law.

**National Employment Law Project**: The National Employment Law Project ("NELP") is a national non-profit with over 50 years of experience advocating for the employment and labor rights of low-wage and unemployed workers. NELP seeks to ensure that all employees, and especially the most vulnerable ones, receive access to good jobs and the full protection of labor and employment laws. NELP's community-based partners, including worker centers, unions, and other worker-support organizations in communities across the 50 states, have seen the kinds of impacts raised in this case, and would be harmed if the Court rules against the EEOC in this case. NELP has litigated and participated as amicus curiae in countless cases in federal circuit and state courts and the U.S. Supreme Court addressing the importance of compliance with workplace protections.

**National Network to End Domestic Violence**: The National Network to End Domestic Violence (NNEDV) represents the 56 U.S. state and territorial coalitions against domestic violence. NNEDV is dedicated to creating a social, political, and economic environment in

which domestic violence no longer exists. NNEDV works to make domestic violence a national priority, change the way society responds to domestic violence, and strengthen domestic violence advocacy at every level. NNEDV was instrumental in the passage and implementation of the Violence Against Women Act. NNEDV has a strong interest in upholding protections against discrimination based on gender identity and sexual orientation, as these protections can allow people of all genders to earn a living and receive protection and support when dealing with abuse.

**The National Partnership for Women & Families**: The National Partnership for Women & Families is a nonprofit, nonpartisan advocacy group that has over 50 years of experience in combating barriers to equity and opportunity for women. The National Partnership works for a just and equitable society in which all women and families can live with dignity, respect, and security; every person has the opportunity to achieve their potential; and no person is held back by discrimination or bias. Our organization has a long history of combating workplace harassment, including successfully litigating *Barnes v. Costle*, the first sexual harassment case in the country; contributing amicus briefs in *Meritor Savings Bank v. Vinson*, the landmark Supreme Court case recognizing sexual harassment as sex discrimination; and testifying before the Senate on the issue of sexual harassment. As a result of this history, we have a strong understanding of the history, details and legislative intent informing the law and are deeply invested in ensuring that the promise of the law is comprehensively enforced. In line with our mission and expertise, the National Partnership believes that fair labor and employment practices, like the Equal Employment Opportunity Commission's April 2024 Enforcement Guidance on Harassment in the Workplace, are critical to women's ability to succeed and thrive in our economy and to building an economy that benefits workers, businesses and the nation as a

whole. This is particularly true for women of color, disabled women, LGBTQI+ people, and women living at the intersection of multiple identities more broadly.

**Service Employees International Union**: Amicus Curiae Service Employees International Union (SEIU) is a labor organization representing approximately two million working people in the United States, Canada, and Puerto Rico in healthcare, property services, and public services. SEIU is committed to the fair and equal treatment of all workers, including LGBTQI+ individuals. SEIU strives to ensure that all workers are protected from discrimination because of sex, including discrimination based on gender identity. SEIU members rely on Title VII to enforce their rights to a safe workplace free of discrimination, and therefore have a strong interest in ensuring that EEOC guidance protects all workers from workplace harassment.