**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

STATE OF TEXAS and
THE HERITAGE FOUNDATION,

  *Plaintiffs*,

v.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION; CHARLOTTE A. BURROWS,
in her official capacity as Chairman of the Equal
Employment Opportunity Commission;
MERRICK B. GARLAND, in his official capacity
as Attorney General of the United States,

  *Defendants.*

No. 2:24-cv-173-Z

---

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

---

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. ii

Table of Authorities ............................................................................................................ iii

Introduction ..........................................................................................................................1

Argument ..............................................................................................................................2

I.    Plaintiffs' Challenge to the 2024 Guidance is Justiciable. ........................................2

    A.    Plaintiffs have standing to challenge the 2024 Guidance. ................................2

    B.    Plaintiffs' claims are ripe.................................................................................7

    C.    The 2024 Guidance is final agency action........................................................8

II.   The 2024 Guidance Is Contrary to Law. .................................................................12

    A.    The 2024 Guidance contravenes Title VII. ....................................................12

    B.    The 2024 Guidance is a substantive, or legislative, rule. ...............................16

III.  The 2024 Guidance is Arbitrary and Capricious. ....................................................17

IV.   The 2024 Guidance Was Not Published in the Federal Register. ............................18

V.    The Court Should Vacate the 2024 Guidance and Issue Declaratory and Injunctive Relief...

    ...............................................................................................................................19

    A.    APA vacatur of a rule is not party- or subject-specific. ..................................20

    B.    Plaintiffs' requested injunction is already tailored. .......................................22

Conclusion ..........................................................................................................................23

Certificate of Service...........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Sch. Bd. of St. Johns Cnty.*,
   3 F. 4th 1299 (11th Cir. 2021) (Pryor, C.J., dissenting), *rev'd by Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791(11th Cir. 2022) (en banc) ................................................. 15

*Arthur Young & Co. v. Sutherland*,
   631 A.2d 354 (D.C. 1993) ....................................................................................................6

*Bennett v. Spear*,
   520 U.S. 154 (1997) .............................................................................................................8

*Bostock v. Clayton County*,
   590 U.S. 644 (2020)..............................................................................12, 13, 14, 15, 16

*Braidwood Mgmt., Inc. v. EEOC*,
   70 F.4th 914 (5th Cir. 2023)............................................................................ 2, 4, 7, 16

*Cath. Benefits Ass'n v. Burrows*,
   No. 1:24-CV-00142, 2024 WL 4315021 (D.N.D. Sept. 23, 2024) ...................................... 4, 11

*Copeland v. Ga. Dep't of Corr.*,
   97 F.4th 766 (11th Cir. 2024) .............................................................................................12

*EEOC v. Boh Bros. Constr. Co.*,
   731 F.3d 444 (5th Cir. 2013)..............................................................................................13

*EEOC v. Catastrophe Mgmt. Solutions*,
   852 F.3d 1018 (11th Cir. 2016) ..........................................................................................14

*Eller v. Prince George's County Public Schools*,
   580 F. Supp. 3d 154 (D. Md. 2022) ...................................................................................13

*Flight Training Int'l, Inc. v. FAA*,
   58 F.4th 234 (5th Cir. 2023) ..........................................................................................16, 17

*Florida v. HHS*,
   No. 8:24-cv-1080, 2024 WL 3537510 (M.D. Fla. July 3, 2024) (Jung, J.)..................................8

*Florida v. Weinberger*,
   492 F.2d 488 (5th Cir. 1974) .................................................................................................8

*Franciscan Alliance, Inc. v. Becerra,*
    47 F.4th 368 (5th Cir. 2022) ....................................................................................4

*Frozen Food Express v. United States,*
    351 U.S. 40 (1956) .................................................................................................10

*Jefferson v. Sewon Am., Inc.,*
    891 F.3d 911 (11th Cir. 2018) ....................................................................13, 14, 15

*Khodra Env't, Inc. v. Blakey,*
    376 F.3d 187 (3d Cir. 2004)......................................................................................7

*Lange v. Houston Cnty., Georgia,*
    101 F.4th 793 (11th Cir.), *reh'g en banc granted, opinion vacated,* 110 F.4th 1254
    (11th Cir. 2024) .....................................................................................................13

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .................................................................................................2

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare,*
    781 F.3d 182 (5th Cir. 2015) .....................................................................................5

*Nat'l Council for Adoption v. Blinken,*
    4 F.4th 106 (D.C. Cir. 2021) ...................................................................................17

*Neese v. Becerra,*
    No. 2:21-cv-163, 2022 WL 1265925 (N.D. Tex. Apr. 26, 2022) (Kacsmaryk, J.).....................9

*Opulent Life Church v. City of Holly Springs, Miss.,*
    697 F.3d 279 (5th Cir. 2012) .....................................................................................8

*POET Biorefining, LLC v. EPA,*
    970 F.3d 392 (D.C. Cir. 2020) .................................................................................17

*Tennessee v. Dep't of Educ.,*
    104 F.4th 577 (6th Cir. 2024)..............................................................................3, 10

*Tennessee v. U.S. Dep't of Educ.,*
    615 F. Supp. 3d 807 (E.D. Tenn. 2022) .....................................................................9

*Texas v. Becerra,*
    623 F. Supp. 3d 696 (N.D. Tex. 2022), *aff'd,* 89 F.4th 529 (5th Cir. 2024)........................4, 16

*Texas v. Cardona,*
    No. 4:23-CV-00604-0, 2024 WL 3658767 (N.D. Tex. Aug. 5, 2024)
    (O'Connor, J.).......................................................................................................17

*Texas v. EEOC,*
    633 F. Supp. 3d 824 (N.D. Tex. 2022) .......................................................... 1, 11, 16

*Texas v. EEOC,*
    827 F.3d 372 (5th Cir. 2016), *opinion withdrawn on reh'g,* 838 F.3d 511 (5th Cir.
    2016) .............................................................................................................9

*Texas v. EEOC,*
    827 F.3d at 385–86 .................................................................................... 11

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019)..........................................................2, 6, 9, 10, 11

*Texas v. EEOC,*
    No. 2:21-cv-00194, ECF No. 65-1 (N.D. Tex.)............................................6

*Texas v. EEOC,*
    No. 2:21-cv-194 (N.D. Tex. July 29, 2022), ECF No. 67 ...................... 13

*Texas v. EEOC,*
    No. 2:21-CV-194-Z, 2022 WL 22869778 (N.D. Tex. May 26, 2022)
    (Kacsmaryk, J.) .......................................................................4, 6, 9, 11

*U.S. Army Corps of Engineers v. Hawkes Co.,*
    578 U.S. 590 (2016)................................................................................8

*U.S. Telecom Ass'n v. FCC,*
    825 F.3d 674 (D.C. Cir. 2016).................................................................7

**Other Authorities**

29 C.F.R. §1695.2 ...................................................................................... 11

13A Wright & Miller, *Federal Practice & Procedure* § 3531.5 n.96 (3d ed.)........................................6

## INTRODUCTION

In 2022, this Court vacated EEOC's 2021 Guidance requiring employers to provide bathroom, dress code, and pronoun accommodations for employees whose gender identity differed from their sex. *See Texas v. EEOC*, 633 F. Supp. 3d 824 (N.D. Tex. 2022). EEOC then re-adopted a nearly identical policy in the 2024 Guidance but now tries to evade a second round of judicial review by insisting its new action merely lays out a non-binding framework, supposedly depriving Plaintiffs of standing and final agency action. For example, EEOC included a boilerplate note that the actions described in the 2024 Guidance "can, but do[] not necessarily always, constitute or contribute to unlawful harassment." App. 27. But EEOC tried similar maneuvers for the 2021 Guidance, insisting it likewise was not binding and did not impose any consequences—yet this Court correctly rejected those assertions and vacated the Guidance. The Court should do the same here.

The 2024 Guidance "communicates the [EEOC's] position" on three "important legal issues." App. 20. First, the 2024 Guidance announces that so-called "misgendering" (in reality, "sexing" or "nongendering" by disregarding completely the contested concept of gender identity) a transgender-identifying employee is "include[d]" as "[h]arrassing conduct." App. 35; *see also* App. 64. Second, the 2024 Guidance announces that "denial of access to a bathroom" that corresponds to a trans-identifying employee's gender identity is also "[h]arrasing conduct." App. 35. Third, the 2024 Guidance announces that instructing transgender-identifying employees to wear clothes that correspond to their biological sex can be "harassing conduct" that is "based on gender identity." App. 35–36.

All three EEOC positions mean that Plaintiffs must, at the very least, incur regulatory costs from reviewing and updating their workplace manuals and investigating potential Title VII violations based on scenarios covered in the 2024 Guidance. Further, the 2024 Guidance directly conflicts with Texas's longstanding employment policies, meaning the State faces markedly increased liability and regulatory risk under Title VII because of the 2024 Guidance.

These effects are more than enough to establish Plaintiffs' standing and demonstrate that the 2024 Guidance is final agency action. The 2024 Guidance also binds EEOC staff and creates safe harbors for employers, which are independent bases for finding final agency action.

On the merits, the 2024 Guidance cannot be squared with this Court's prior holding on the 2021 Guidance, which EEOC barely even acknowledges. The 2024 Guidance should be vacated and set aside as both contrary to law and arbitrary and capricious, and the Court should issue permanent injunctive relief to prevent similar actions in the future.

## ARGUMENT

I. **PLAINTIFFS' CHALLENGE TO THE 2024 GUIDANCE IS JUSTICIABLE.**

### A. Plaintiffs have standing to challenge the 2024 Guidance.

"[T]here is ordinarily little question" that the "object of the action … at issue" is injured by the agency's action, or "that a judgment" setting aside "the action will address" that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). This is one of those cases. Both Texas and Heritage are directly regulated by the 2024 Guidance because of their number of employees, and EEOC never claims otherwise. *See* ECF No. 30 at 8–9.[1]

Texas expressly imposes sex-specific bathroom, dress, and pronoun policies, which the 2024 Guidance declares will subject employers to liability. ECF No. 30 at 9. And EEOC has already shown that it will bring enforcement actions against employers who rely on similar policies. *Id.* This establishes an obvious "cognizable injury" that provides standing for a "pre-enforcement challenge." *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 924–25 (5th Cir. 2023).

Plaintiffs are also harmed from the extra regulatory costs incurred by having to evaluate and update their existing employment manuals to reflect the various examples and rules dictated by the 2024 Guidance, as well as investigate alleged Title VII violations based on that Guidance. Those regulatory burdens further establish a concrete harm sufficient to confer standing on both Plaintiffs. *See Texas v. EEOC*, 933 F.3d 433, 446–47 (5th Cir. 2019).

---

[1] Page number references to docket materials refer to the number appearing at the bottom of the page, not the ECF-stamped PageID number at the top.

EEOC resists these obvious conclusions by insisting the 2024 Guidance's boilerplate disclaimers mean it does not actually forbid any of the Plaintiffs' proposed conduct or require them to review or update their employment manuals or policies, nor even face investigations for potential violations based on the 2024 Guidance. As EEOC sees it, the 2024 Guidance lacks "mandatory language" that definitively prohibits Plaintiffs' policies or actions, and instead instructs that conduct should ultimately be assessed "on a case-by-case basis." ECF No. 35 at 8–9. On EEOC's reading, "none of the conduct described" in the 2024 Guidance "automatically gives rise to a meritorious harassment claim." *Id.* at 9. And for that reason, EEOC claims that the 2024 Guidance cannot cause any injury. *See id.* at 10.

But Texas's "fear" that the 2024 Guidance forbids its bathroom, dress, and pronoun polices "comes directly from the text of the" 2024 Guidance itself. *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 588 (6th Cir. 2024). The 2024 Guidance unambiguously states that harassing conduct "*includes*" denying access to gender-identity-aligned bathrooms or refusing to use preferred pronouns. App. 35 (emphasis added). And the 2024 Guidance announces that telling an employee to wear sex-specific clothes to work "*is*" harassing conduct. App. 36 (emphasis added).

Similarly, the 2024 Guidance's Example 46 squarely announces that repeated use of biologically correct pronouns creates "an objectively hostile work environment" that creates liability. App. 64–65. As the 2024 Guidance explains, to create an "objectively hostile work environment," harassing conduct needs to be "severe *or* pervasive." App. 56. Because Texas adheres to workplace policies that will result in repeatedly denying accommodations to transgender-identifying employees, that will almost inevitably result in "pervasive" conduct considered by EEOC to be "harassing." This will lead to increased liability and investigations, obvious concrete harms sufficient to confer standing.

As EEOC acknowledges (ECF No. 35 at 19 n.7), the 2021 Guidance likewise included language that the ultimate finding of unlawful conduct would turn on "certain circumstances" and that actions "[c]ould" (rather than "would") be unlawful—yet those acknowledgments were still insufficient to avoid this Court's determination that the 2021 Guidance imposed concrete harm.

*Texas v. EEOC*, No. 2:21-CV-194-Z, 2022 WL 22869778, at *5 (N.D. Tex. May 26, 2022) (Kacsmaryk, J.).

Other courts have rejected the attempt of an agency to use its "case-by-case" enforcement approach to deny standing to challenge a rule. *See, e.g., Cath. Benefits Ass'n v. Burrows*, No. 1:24-CV-00142, 2024 WL 4315021, at *4 (D.N.D. Sept. 23, 2024) ("EEOC's reliance on its case-by-case standard [instead] constitutes 'a concession that it may' seek enforcement.") (citing *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022)). Indeed, the Fifth Circuit refused to allow EEOC to wriggle out from a pre-enforcement suit against future attempts to apply gender-identity requirements on an employer. *See Braidwood Mgmt, Inc.*, 70 F.4th at 927–29 (finding credible threat of enforcement in the face of EEOC protests that any enforcement action would turn on case-specific facts). "The main problem with the EEOC's hanging its hat on that argument is that the agency refuses to provide a single additional fact that would be required to adjudicate the present action." *Id.* at 929; *see also id.* at 931 ("The EEOC's near talismanic mantra that 'further factual development' would 'significantly advance' this court's ability to resolve plaintiffs' claims would be more compelling if the EEOC gave an example of factual development that would be helpful to the court. Yet nowhere in its briefs does the EEOC give specifics, and for good reason—no more factual detail is required to resolve the claims that Braidwood and Bear Creek present in this posture."). "[N]o further factual investigation is required to determine whether, for example," Title VII requires dress code, pronoun, or dress code accommodations based on gender identity. *Id.* at 931.

It changes nothing that a few statements in the 2024 Guidance declare that some workplace conduct is merely "harassing conduct"—which can "contribute to unlawful harassment" without "necessarily" constituting unlawful *harassment* standing alone. App. 27. Plaintiffs' argument on the merits is that Title VII *never* contemplates gender-identity accommodation requirements, and the Court is required to accept that on the merits when determining standing. *See Texas v. Becerra*, 623 F. Supp. 3d 696, 710 (N.D. Tex. 2022), *aff'd*, 89 F.4th 529 (5th Cir. 2024) ("when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his

or her legal claim.") (quoting *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015)). Under that view, the 2024 Guidance still imposes harms because Plaintiffs must review and change their manuals or policies to reflect the 2024 Guidance to include a factor that is irrelevant under Title VII, and this unlawful expansion of Title VII factors also exposes Texas in particular to additional liability risk. ECF No. 30 at 9–10.[2]

Switching gears, EEOC asserts that Plaintiffs' policies are not actually their policies. First, EEOC points to a remark in the Declaration of Texas Agriculture Commissioner Sid Miller that the Texas Department of Agriculture evaluates bathroom, dress code, and pronoun issues "case-by-case." EEOC claims that this shows there is little daylight between Texas's policies and the 2024 Guidance. ECF No. 35 at 10–12. But EEOC leaves out key parts of the Miller Declaration. When it comes to bathroom usage, Commissioner Miller says definitively that "[i]f any employee wanted to use the restrooms designated for the opposite sex, I would reject such a request." App. 211. Turning to dress code issues, Commissioner Miller explains that "[i]f any employee dressed as a member of the opposite sex, I would consider such conduct to be a violation of these standards." *Id.* And as to pronouns, Commissioner Miller avers that "[i]f any employee wanted the Department to require other employees to use pronouns based on gender identity, I would reject such a request." App. 211–12. These are definitive statements. Thus, Commissioner Miller is correct when he says the "2024 Guidance conflicts with" his Department's "workplace policies." App. 211. The Texas Department of Agriculture does not permit bathroom, dress code, or pronoun accommodations for transgender-identifying employees, while the 2024 Guidance says that approach entails harassing conduct and contributes to liability. That is a clear conflict that gives rise to standing.

---

[2] Defendants' *amici* unintentionally prove Plaintiffs' point by arguing that vacating and enjoining the 2024 Guidance "would cause serious, long-lasting harm to workers" and "create widespread confusion about the scope of employers' obligations and workers' protections under Title VII [and] undermine the EEOC's efforts to prevent and address workplace harassment." ECF No. 36-1 at 5, 21. That assertion is difficult to square with EEOC's insistence that the 2024 Guidance itself has no legal effects nor imposes any requirements or burdens.

Indeed, in the challenge to the 2021 Guidance, Commissioner Miller's declaration contained the same language about evaluating situations "case-by-case," *see Texas v. EEOC,* No. 2:21-cv-00194, ECF No. 65-1 at 2–3 (N.D. Tex.), yet this Court did not hesitate to find that Texas had standing, *Texas*, 2022 WL 22869778, at *5.

EEOC next disputes Texas's sovereign injury (*i.e.*, by imposing substantial pressure on Texas to change its laws), *see* ECF No. 30 at 10, but EEOC's sole point of disagreement is its argument that the 2024 Guidance imposes "no new legal obligations," ECF No. 35 at 13. That premise is incorrect as Plaintiffs have explained, and thus Texas also has standing based on its sovereign injuries. "The [2024] Guidance, not Title VII, condemns Texas's [bathroom, dress code, and pronoun] policies, and it, not Title VII, pressures Texas to change its laws and policies or risk referral to the Attorney General by EEOC." *Texas v. EEOC*, 933 F.3d at 448.

EEOC next claims that Heritage lacks standing because it is headquartered in Washington, D.C., which allegedly separately requires accommodations based on gender identity as a matter of local law. ECF No. 35 at 12–13. As explained above, Heritage has standing because it still must incur regulatory costs to review and revise its workplace manuals to reflect the bevy of examples in the 2024 Guidance. Moreover, there is no evidence of enforcement actions or guidance construing D.C.'s regulations, but D.C. courts "often look[] to cases construing Title VII" to "aid [them] in construing the D.C. Human Rights Act," *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 n.17 (D.C. 1993), and thus the interpretation of D.C.'s anti-discrimination regulations very well may turn on the validity of the 2024 Guidance, making it all the more clear that Heritage suffers an injury from that Guidance.

Even if the 2024 Guidance and D.C.'s regulations perfectly mirrored each other, however, Heritage still has standing. When faced with two obstacles to a desired action, "Article III does not require that the plaintiff first remove the state-law obstacle before achieving standing to challenge the federal-law obstacle." 13A Wright & Miller, *Federal Practice & Procedure* § 3531.5 n.96 (3d ed.). If it were otherwise, plaintiffs would be caught in a Catch-22, unable to challenge either regime without first successfully challenging the other. As then-Judge Alito explained, when a litigant

faces "two, independent regulatory obstacles that can only be attacked in separate proceedings," a litigant has standing to challenge one of those regulations at a time. *Khodra Env't, Inc. v. Blakey*, 376 F.3d 187, 194 (3d Cir. 2004). Thus, Heritage can challenge a harmful application of federal law in this lawsuit, regardless of whether it is regulated by D.C. or has separately challenged D.C.'s regulations.

EEOC's invocation of *McConnell v. FEC* also falls short. *See* ECF No. 35 at 13. In that case, as relevant here, the plaintiffs alleged that the combination of two federal statutory provisions harmed them, but Congress denied the court jurisdiction over one of the two provisions. 540 U.S. 93, 228–29 (2003). Thus, the court lacked jurisdiction to address the alleged injury altogether. *Id.* But Heritage is not alleging that a *combination* of Title VII and D.C. regulations harms Heritage. Heritage's allegation is simpler: Heritage is harmed by the "challenged application of [Title VII]," and if Heritage prevails here, it would have relief from that EEOC-specific harm. *Khodra Env't, Inc.*, 376 F.3d at 194.

### B. Plaintiffs' claims are ripe.

EEOC also claims that this lawsuit is unripe. ECF No. 35 at 13. "Unsurprisingly, there is a fair amount of overlap between Article III standing requirements and the ripeness analysis," so Plaintiffs' claims are ripe for the same reasons they have standing. *Braidwood Mgmt., Inc.*, 70 F.4th at 930. Indeed, "[i]t remains unclear whether [courts] can reject a claim as unripe once plaintiffs have established Article III standing." *Id.* at 930 n.28.

EEOC relies again on its misreading of the 2024 Guidance, claiming that because it instructs that conduct will sometimes be assessed on a "case-by-case basis," more factual development is necessary before this Court can consider Plaintiffs' arguments. ECF No. 35 at 13–14. But "an agency rule, unlike a statute, is typically reviewable without waiting for enforcement." *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 739 (D.C. Cir. 2016).

And, as explained above, Plaintiffs' argument is that an employer's decision not to provide bathroom, pronoun, or dress code accommodations based on gender identity should *never* contribute to a finding of liability under Title VII; it is simply an irrelevant factor. Whether

Plaintiffs are right about that is a question that is "purely legal in nature" and turns solely on whether EEOC has "erroneously interpreted the [Title VII] proscription against discrimination on the basis of sex." *Florida v. HHS*, No. 8:24-cv-1080, 2024 WL 3537510, at *6 (M.D. Fla. July 3, 2024) (Jung, J.) (rejecting same argument by HHS that a case was unripe because the regulation allegedly imposed only a framework for future determinations of transgender discrimination).

"The lines are drawn, the positions taken, and the matter is ripe for judicial review." *Florida v. Weinberger*, 492 F.2d 488, 493 (5th Cir. 1974); *see also Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 287 88 (5th Cir. 2012) (facial attack on a regulation raises "purely legal" question and is therefore ripe). Because the 2024 Guidance forces "Plaintiffs to choose between forgoing ostensibly legal [workplace] policies and practices or risking private lawsuits," it imposes "sufficient hardship" to ensure immediate review. *Florida*, 2024 WL 3537510, at *7. Plaintiffs "need not assume such risks while waiting for [Defendants] to 'drop the hammer' in order to have their day in court." *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 600 (2016). Thus, this case satisfies the ripeness test and can be heard now.

### C. The 2024 Guidance is final agency action.

Agency action is "final" for the purposes of judicial review if two conditions are met: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). EEOC does not dispute that the first prong is satisfied, but it does contend that the 2024 Guidance does not cause legal consequences. Continuing its theme, EEOC contends the 2024 Guidance has no legal effects, despite going through notice-and-comment rulemaking, because it supposedly "does not bind the public or EEOC staff to a specific outcome in any given charge." ECF No. 35 at 1. The Court should reject EEOC's attempt to evade review.

EEOC claims that generic, boilerplate statements—for example, "[n]othing in this document should be understood to prejudge the outcome of a specific set of facts," or promising

to evaluate on a "case-by-case basis"—ensure the 2024 Guidance has no "legal consequences." ECF No. 35 at 14–15. But a "guidance document can constitute a final agency action even if the document contains boilerplate denying its legal effect." *Neese v. Becerra*, No. 2:21-cv-163, 2022 WL 1265925, at *9 (N.D. Tex. Apr. 26, 2022) (Kacsmaryk, J.). Rather than self-serving labels affixed by the agency itself, courts look for whether the guidance articulates a "settled agency position." *Id.*  As discussed above, the 2024 Guidance resolves EEOC's position: an employer requiring all employees to use restrooms, clothes, and pronouns that correspond with their sex is "harassing conduct."

Just as with standing, it is irrelevant that not all "harassing conduct" is *per se* unlawful harassment. *Contra* ECF No. 35 at 17–19. For finality purposes, the 2024 Guidance must be assessed through a "pragmatic" lens. *Texas v. EEOC*, 933 F.3d at 441. In terms of practical effect, the 2024 Guidance announces EEOC's view that longstanding and widespread workplace policies are "harassing," suggesting they will often subject an employer to liability. If it were otherwise, there would have been no point in issuing the 2024 Guidance in the first place. Thus, "in practical effect," the 2024 Guidance "requires employers to comply with its stated positions to avoid liability," confirming that it has legal consequences. *Tennessee v. U.S. Dep't of Educ.*, 615 F. Supp. 3d 807, 833 (E.D. Tenn. 2022).

In other words, the 2024 Guidance is final agency action because, as a practical matter, it "broadly condemns the employment practices that Plaintiff and its agencies implement, leaving no wriggle room for EEOC to issue referrals to the Attorney General." *Texas v. EEOC*, 2022 WL 22869778, at *5. "[T]he [2024 Guidance] does not simply repeat the relevant provisions of Title VII. Instead, the [2024 Guidance] purports to interpret authoritatively [Title VII's requirements]. This court has always considered such a distinction important when deciding whether agency action is 'final' under the APA." *Texas v. EEOC*, 827 F.3d 372, 385–86 (5th Cir. 2016), *opinion withdrawn on reh'g*, 838 F.3d 511 (5th Cir. 2016).

The 2024 Guidance also has legal consequences because it defines the scope of safe harbors for employers. For example, it states how they can avoid committing "harassing conduct [that] is

based on a protected basis." ECF No. 30 at 17. EEOC nonetheless disputes this point, claiming that the 2024 Guidance never rules out a particular enforcement action. ECF No. 35 at 20–21. But it need not do so to be reviewable. The 2024 Guidance is "binding as a practical matter because private parties can rely on them as a norm or safe harbor by which to shape their actions," *Texas v. EEOC*, 933 F.3d at 444 (cleaned up), and certainly tells employers "how to avoid liability, thereby creating legal consequences." *Tennessee*, 104 F.4th at 599. And the 2024 Guidance is littered with "examples" that "are intended as a basis" for employers to "order and arrange their affairs." *Id.* at 599–600 (quoting *Frozen Food Express v. United States*, 351 U.S. 40, 44 (1956)). As a practical matter, therefore, the 2024 Guidance sets the course for employers. It makes no difference whether these safe harbors are framed in the negative ("don't do this, or you will be liable") or affirmative ("do this, and you will avoid liability"). *See Texas v. EEOC*, 933 F.3d at 442 (discussing "affirmative" versus "negative" jurisdictional determinations as safe harbors). What matters is that it provides a basis "by which [employers] shape their actions." *Id.* at 444. That makes it reviewable.[3]

Independently making the 2024 Guidance final agency action is its binding effect on agency staff. *Contra* ECF No. 35 at 19–20. For one thing, the 2024 Guidance "supersedes and replaces" five prior guidance documents, confirming it provides new directions to staff. *Tennessee*, 104 F.4th at 599 (cleaned up); *see* App.19–20. Moreover, the 2024 Guidance does not merely set enforcement "priorities" for staff; it instructs them on how to define "a form of sex discrimination prohibited by federal law." *Tennessee*, 104 F.4th at 599 (cleaned up); *see EEOC*, 933 F.3d at 445 (concluding guidance is final agency action when it "tells EEOC staff and all employers what sort of policy is

---

[3] Defendants' *amici* unintentionally prove Plaintiffs' point about safe harbors by insisting the 2024 Guidance "protects workers' rights" by providing "employers" and "agency staff enforcing Title VII's protections" with "detailed explanations and examples of the variously legally protected characteristics under federal equal employment opportunity law." ECF No. 36-1 at 5–6; *see also* ECF No. 41-1 at 5 (different *amici* arguing the 2024 Guidance "helps small businesses ensure that they are complying with their obligations under federal workplace civil-rights laws"); *id.* at 9 n.16 (calling the 2024 Guidance a "regulation" that will "even the playing field").

lawful"). Perhaps for those reasons, one court has already rejected EEOC's arguments that the 2024 Guidance is "non-binding." *Cath. Benefits Ass'n*, 2024 WL 4315021, at *7. How could EEOC staff reject the 2024 Guidance's provisions, which the agency states are "existing *requirements* under the law," App. 20 (emphasis added), and "communicates *the Commission's position* on important legal issues," App.020 (emphasis added)?  The 2024 Guidance at the very least "binds EEOC staff to an analytical method in conducting Title VII investigations," which is enough for final agency action. *Texas v. EEOC*, 933 F.3d at 443. As this Court previously explained:

> Defendants argue the [2021] Guidance "exhibits none of the attributes that the Fifth Circuit found dispositive of final agency action in *Texas v. EEOC*," claiming the [2021] Guidance "does not indicate in *any* manner how EEOC staff must assess potential sex discrimination on the basis of sexual orientation or gender identity." ECF No. 12 at 26. But Defendants "can't have their cake and eat it too": if the [2021] Guidance states existing requirements of law and "established legal positions," how could EEOC investigators and staff not consider them *binding*?

*Texas v. EEOC,* 2022 WL 22869778, at *5.

Finally, EEOC cites the regulatory notice-and-comment process through which the 2024 Guidance was promulgated as evidence that it is not binding. ECF No. 35 at 15 (citing 29 C.F.R. §1695.2). But that process instead confirms that the 2024 Guidance is final agency action. That process is reserved for any "guidance document" that "sets forth the Commission's position on a legal principle for the first time or changes the Commission's legal position on any issue." *Id*. at §1695.2(d). Actions of that sort are final agency action because they do not merely "repeat" statutory requirements and adopt new legal positions. *Texas v. EEOC*, 827 F.3d at 385–86.

\*       \*       \*

In EEOC's telling, it went through a lengthy notice-and-comment process to produce a lengthy document that quite literally does nothing. In light of the text of the 2024 Guidance itself, the practical effects of that guidance, and EEOC's prior attempts to expand Title VII beyond its statutory requirements on these very same bases, the Court should hold that Plaintiffs' challenge is justiciable.

II.    THE 2024 GUIDANCE IS CONTRARY TO LAW.

A.  The 2024 Guidance contravenes Title VII.

The 2024 Guidance makes clear that an employer engages in "harassing conduct" if it adheres to sex-specific bathroom, dress, or pronoun policies without accommodating transgender employees. This conclusion contravenes the text of Title VII. *See* ECF No. 30 at 18–25. Nothing in *Bostock* supports the 2024 Guidance's interpretation. *See id.* at 14–16. And this Court has already agreed that Title VII does not require employers to provide transgender-identifying employees with bathroom, dress code, or pronoun accommodations. EEOC offers nothing new that should lead this Court to change its mind.

*First*, EEOC points to a smattering of post-*Bostock* cases. ECF No. 35 at 23–24. But most of those cases do not even involve facts relevant to the challenged aspects of the 2024 Guidance. For instance, *Goings v. Lopinto* involves a police officer who was harassed because of his sexual-orientation status, but says nothing about whether a transgender-identifying employee must be permitted to access the bathroom of the opposite sex, wear clothes of the opposite sex, or be called by the opposite sex's pronouns. 2023 WL 2709826, at *5 (E.D. La. Mar. 30, 2023).

The only Fifth Circuit decision cited, *Newbury v. City of Windcrest*, is even less helpful to EEOC. 991 F.3d 672 (5th Cir. 2021). There, a female police officer claimed that another female police officer was rude to her and treated her worse than their male colleagues. *Id.* at 676. After explaining that *Bostock* "in no way altered the preexisting legal standard for sexual harassment," the Court affirmed the grant of summary judgment to the employer. *Id.* at 677. Likewise, the only Northern District of Texas citation comes up short, too. In *Garrett v. Kohls Distrb. eFullfilment Center*, the Magistrate Judge recommended denying an employer's motion to dismiss because of "derogatory remarks implicating a protected status" had been alleged. 2024 WL 3237184, at *5 (June 7, 2024). While the employee claimed purportedly incorrect pronoun usage among a host of other allegations, the court never mentioned pronoun usage as a reason for its ruling. *See id.* at *6.

Most fundamentally here, when EEOC did cite cases that relate to accommodations for transgender-identifying employees, they were non-binding, out-of-circuit cases. *See, e.g., Copeland*

*v. Ga. Dep't of Corr.*, 97 F.4th 766 (11th Cir. 2024)[4]; *Eller v. Prince George's County Public Schools*, 580 F. Supp. 3d 154 (D. Md. 2022). Of course, this Court's decision holding the 2021 Guidance unlawful should be the touchstone here—even if EEOC failed to even mention it in the 2024 Guidance.

EEOC also notes that "sexual harassment claims may include harassment based on failure to adhere to sex stereotypes" and argues this should extend to bathrooms, dress codes, and pronouns. ECF No. 35 at 26. But EEOC made this same argument and even cited some of the same cases in its briefing to this Court about the 2021 Guidance, which the Court nonetheless held unlawful. *See* Defs.' Opp. to Pls.' Cross-Mot. for Summary Judgment, and Reply in Support of Defs.' Mot. for Summary Judgment, *Texas v. EEOC*, No. 2:21-cv-194 (N.D. Tex. July 29, 2022), ECF No. 67 at 6 (EEOC arguing that "Title VII's prohibition on sex stereotyping further underscores how prohibited discrimination occurs where an employer punishes an employee for engaging in conduct which is not typically associated with a given sex.") (citing *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444 (5th Cir. 2013), which EEOC also cites here, *see* ECF No. 35 at 26).

*Second*, EEOC claims that the 2024 Guidance's disclaimers distinguish it from the 2021 Guidance and help it escape this Court's prior ruling. ECF No. 35 at 24–27. As EEOC sees it, the 2024 Guidance says only that refusing to allow employees to use bathrooms, wear clothes, or be called pronouns that correspond to their gender identity can be considered "among a constellation of factors that may support a finding" of unlawful harassment. *Id.* at 25. This fails for the same reasons identified above for why Plaintiffs have standing and why there is final agency action.

Looking at neighboring provisions of Title VII shows that EEOC is misguided. Recall that *Bostock* said that disparate impact claims were not reached by that ruling. *See Bostock v. Clayton County*, 590 U.S. 644, 660–61 (2020). In *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 926 (11th Cir. 2018), a black employee alleged that her employer engaged in racial discrimination when it denied

---

[4] EEOC also omits that the Eleventh Circuit recently granted en banc rehearing to vacate a panel decision that held an employer violated Title VII by excluding coverage for sex-change operations from employee healthcare plans. *Lange v. Houston Cnty., Georgia*, 101 F.4th 793, 796 (11th Cir.), *reh'g en banc granted, opinion vacated,* 110 F.4th 1254 (11th Cir. 2024).

her a transfer and later terminated her for violating the chain of command because that concept was part of Korean culture (and implicitly, foreign to black culture). *Jefferson*, 891 F.3d at 916. The employee alleged that she was unlawfully discriminated against by way of disparate treatment, 42 U.S.C. § 2000e-2(a)(1)—again, the same provision at issue in *Bostock*—and a claim of disparate impact under a separate provision of Title VII, 42 U.S.C. § 2000e-2(a)(2).

The Eleventh Circuit rejected the disparate treatment claim because "'an employer's neutral policy' that has 'adverse consequences, without more, is not sufficient to state a claim for disparate treatment.'" *Jefferson*, 891 F.3d at 926 (quoting *EEOC v. Catastrophe Mgmt. Solutions*, 852 F.3d 1018, 1026 (11th Cir. 2016)) (a case relied on by Plaintiffs here; *see* ECF 30 at 18). The court saw "nothing inherently discriminatory about a policy that requires employees to respect corporate hierarchy, and [courts] are not in the business of determining, without more, whether facially legitimate company practices are subtly linked to ethnic or racial groups." *Id.* Similarly, workplace policies that have sex-separated dress codes and bathrooms, and allow pronoun usage to be based on sex (rather than some gender-neutral "they" for every individual) do not classify based on gender identity (instead, disregarding that concept altogether) and courts should not attempt to tie certain traits or behaviors as associated with particular gender identities.

The *Jefferson* court also rejected the disparate impact claim. Such claims are based on a different provision of Title VII (section 2000e-2(a)(2)) than the one in *Bostock* (section 2000e-2(a)(1)). Section 2000e-2(a)(2), however, "in contrast with section 2000e-2(a)(1), applies not to discrete decisions made by an employer directed at an individual employee, but to categorical policies that have a discriminatory purpose or effect." *Jefferson*, 891 F.3d at 923. The court examined the textual differences between the two provisions:

> Section 2000e-2(a)(1) forbids an employer from discriminating against individual employees, such as by "fail[ing] or refus[ing] to hire or ... discharg[ing] *any individual*" or by "discriminat[ing] against *any individual* with respect to *his* compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1) (emphases added).

> In contrast, section 2000e-2(a)(2) takes aim at discriminatory policies of general application when it prohibits an employer from "limit[ing], segregat[ing], or classify[ing] his *employees* or *applicants* for employment in any way which would deprive or tend to deprive any individual of employment opportunities." *Id.* § 2000e- 2(a)(2) (emphases added). Although both provisions have the same *object* of curing discrimination in the workplace, they target different *mechanisms* of discrimination.

*Id.* (emphases in original); *see also id.* (discussing Supreme Court precedent on this issue).

Because "section 2000e-2(a)(1) covers individual decisions, such as the alleged decision not to transfer Jefferson on the basis of her race and national origin, and section 2000e-2(a)(2) covers policies of general applicability," the employee's claim could "proceed under only section 2000e-2(a)(1)." *Id*. at 923–24.

Plaintiffs have explained how the workplace policies targeted by the EEOC in its 2024 Guidance are generally applicable policies that classify based on sex—not gender identity. ECF No. 30 at 22–25. And EEOC concedes the legality—even post-*Bostock*—of sex-specific workplace policies. Instead, EEOC here mandates how employers "limit, segregate, or classify [their] employees," 42 U.S.C. § 2000e-2(a)(2)—that is, how an employer determines which employees are men and which are women. But "the mere act of determining an individual's sex, suing the same rubric for both sexes, does not treat anyone differently based on sex." *Adams v. Sch. Bd. of St. Johns Cnty.*, 3 F. 4th 1299, 1326 (11th Cir. 2021) (Pryor, C.J., dissenting), *rev'd by Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791(11th Cir. 2022) (en banc). "Separating bathrooms by sex treats people differently on the basis of sex … [but] the mere act of determining an individual's sex, using the same rubric for both sexes, does not treat anyone differently on the basis of sex." *Id*. at 1325–26. That determination ("classify[ing] [their] employees," 42 U.S.C. § 2000e-2(a)(2))—whether in determining bathroom usage, which pronouns to use, or which dress code applies to a given employee—therefore cannot violate the provision at issue in *Bostock*: section 2000e-2(a)(1). Because what EEOC's action addresses is subject to section 2000e-2(a)(2) and its disparate-impact provisions, it exceeds the bounds of what *Bostock* addressed.

**B. The 2024 Guidance is a substantive, or legislative, rule.**

EEOC lacks authority to issue substantive rules. Because the 2024 Guidance imposes new obligations on employers and binds EEOC staff, it is a substantive rule and therefore unlawful. *See* ECF No. 30 at 29; *Texas*, 633 F. Supp. 3d at 841–42.

EEOC acknowledges it is limited to issuing only procedural rules but disputes that the 2024 Guidance is substantive, arguing again it is not binding. ECF No. 35 at 31. But for the reasons already explained, the 2024 Guidance imposes substantive legal obligations, announces EEOC's new approach to these issues after rescinding several previous guidance documents, binds agency staff, and creates safe harbors. It is substantive.

Taking a different tack, EEOC argues that even if the 2024 Guidance is binding, it is merely an interpretive rule, rather than a substantive one. ECF No. 35 at 31–32. An interpretive rule, EEOC emphasizes, can speak in mandatory, binding terms when the law being interpreted "speak[s] in mandatory terms as well." *Flight Training Int'l, Inc. v. FAA*, 58 F.4th 234, 242 (5th Cir. 2023). In other words, EEOC says that to the extent the 2024 Guidance is mandatory in the context of transgender accommodations, that is only because Title VII itself is mandatory. EEOC raised this theory in Texas's lawsuit over the 2021 Guidance, *see Texas v. EEOC*, 2:21-cv-194, ECF No. 57 at 2 (referring to 2021 Guidance as "paradigmatic interpretive rules"), yet this Court still granted summary judgment to Texas, *see Texas*, 633 F. Supp. 3d at 840.

In any event, EEOC's understanding of Title VII is wrong, and thus the 2024 Guidance is not interpretive but rather makes substantive changes beyond what Title VII itself states. *See Texas v. Becerra*, 623 F.Supp.3d 696, 734–35 (N.D. Tex. 2022) (Hendrix, J.) (finding the agency action to be an invalid substantive rule under the analogous notice-and-comment requirements of the Medicare Act, because it "goes beyond the statute [in its requirements] … even though the statute is silent on this issue"); *cf. Braidwood Mgmt., Inc.*, 70 F.4th at 921 ("*Bostock* is delphic, with a nebulous description of the scope of its ruling … the Court declined to expound on … how [it] would 'address bathrooms, locker rooms, or anything else of the kind.'").

This Court must "consider whether the challenged rule" merely interprets—or rather "*changes*"—the "text of" the statute it "professes to interpret." *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 407 (D.C. Cir. 2020). The 2024 Guidance constitutes a substantive rule because no statutory authority "compels or logically justifies" its provisions. *Nat'l Council for Adoption v. Blinken*, 4 F.4th 106, 113 (D.C. Cir. 2021).

Moreover, an interpretive rule "clarifies, rather than creates, law." *Flight Training Int'l, Inc.*, 58 F.4th at 240. And interpretive rules "advise the public of the agency's construction of the *statutes* and *rules* which it administers," not judicial opinions of which it is aware. *Texas v. Cardona*, No. 4:23-CV-00604-O, 2024 WL 3658767, at *44 (N.D. Tex. Aug. 5, 2024) (O'Connor, J.). By contrast, "[t]he hallmark of a legislative rule is that it 'modifies or adds to a legal norm.'" *Flight Training Int'l, Inc.*, 58 F.4th at 241.

The 2024 Guidance—like the 2021 Guidance—contravenes the text of Title VII and thus cannot be said to "comport" with that statute. Rather, the 2024 Guidance is *substantively* changing Title VII's meaning, as already determined by this Court. That makes it a substantive rule.

\*    \*    \*

Because the 2024 Guidance contravenes Title VII and was issued without statutory authority, the Court should declare the 2024 Guidance unlawful, vacate it, and enjoin Defendants from implementing it.

## III.    THE 2024 GUIDANCE IS ARBITRARY AND CAPRICIOUS.

The 2024 Guidance is unlawful for another reason: it failed to address the important issues of women's safety, the difficulty of implementing EEOC's scheme, and federalism concerns. The failure to consider those important issues, which were raised in comments at the EEOC, makes the 2024 Guidance arbitrary and capricious. *See* ECF No. 30 at 26–29.

EEOC does not dispute that it failed to consider these factors. Instead, it claims that the 2024 Guidance cannot be arbitrary and capricious because it "does not attempt to impose new legal obligations on employers with respect to any aspect of workplace harassment law." ECF

No. 35 at 33. But that is just an attempt to repackage the final-agency-action issue into an excuse for why EEOC never addressed important comments. EEOC went through the notice-and-comment process and now claims it could ignore important comments, but that is the opposite of what the APA says: "An agency must consider and respond to significant comments received during the period for public comment." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015); *see also Mexican Gulf Fishing Co. v. United States Dep't of Com.*, 60 F.4th 956, 972 (5th Cir. 2023) ("[T]he requirement for an agency to respond to significant issues raised by public comments would be utterly toothless if it could ignore comments like those presented here"). That requirement applies to interpretive rules, too, even absent any notice-and-comment requirement. *See Mock v. Garland*, 75 F.4th 563, 579 n.38 (5th Cir. 2023) (stating "the [Final] Rule could have still been … challenged as arbitrary and capricious …, [because] [a]s the Supreme Court made clear in *Perez* [ 575 U.S. 92 (2015)] the public is not without recourse even if an agency attempts to 'skirt' the strictures of notice and comment with an interpretive rule"); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Env't Prot. Agency*, 846 F.3d 492, 522 (2d Cir. 2017) ("[I]f an interpretive rule was promulgated in a procedurally defective manner, it will be set aside").

In any event, EEOC is wrong because, as explained above, the 2024 Guidance *does* impose legal obligations: "Title VII—as interpreted in *Bostock*—does not require" accommodations for transgender-identifying employees, *Texas*, 633 F. Supp. 3d at 840, and thus imposing those requirements does impose new legal obligations on employers. Accordingly, the 2024 Guidance is arbitrary and capricious.

## IV.    THE 2024 GUIDANCE WAS NOT PUBLISHED IN THE FEDERAL REGISTER.

EEOC violated the Freedom of Information Act (FOIA) by failing to publish the 2024 Guidance in the Federal Register. ECF No. 30 at 29–30. Even were it not a substantive rule, "FOIA's publication requirement also applies to 'statements of general policy or interpretations of general applicability formulated and adopted by the agency.'" *Texas v. EEOC*, 633 F. Supp. 3d at 842 (quoting 5 U.S.C. § 552(a)(1)(D)).

EEOC explains that the 2024 Guidance was adopted through the process of 29 C.F.R. §1695.6. ECF No. 35 at 6. That provision is for "significant guidance document[s]." 29 C.F.R. §1695.6(a). "Guidance document" is defined as "any statement of Commission policy or interpretation concerning a statute, regulation, or technical matter within its jurisdiction that is intended to have general applicability and future effect." *Id.* §1695.2(a). So the 2024 Guidance also meets the definition of agency actions required to be published in the Federal Register: a "statement of general policy or interpretations of general applicability formulated and adopted by the agency." U.S.C. § 552(a)(1)(D). Its failure to do so dooms the 2023 Guidance.

EEOC claims that this failure should not result in any relief because Plaintiffs had notice of the 2024 Guidance despite the lack of publication. EEOC claims that FOIA denies relief to any party with notice: "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." 5 U.S.C. § 552(a). But that language simply ensures that a regulated party cannot face enforcement of a rule that was not properly published, unless the party had actual notice of the rule. It does not disable a regulated party from challenging a regulation as unlawful under the APA for being promulgated "without observance of procedure required by law," including the requirement to publish in the Federal Register. 5 U.S.C. § 706(2)(D). The one case cited by EEOC, *Tearney v. NTSB*, explains that an enforcement action can be brought against regulated parties with adequate notice, but it said nothing about an APA challenge. 868 F.2d 1451, 1454 (5th Cir. 1989).

## V.    THE COURT SHOULD VACATE THE 2024 GUIDANCE AND ISSUE DECLARATORY AND INJUNCTIVE RELIEF.

EEOC tries to muddy the scope of relief by conflating all forms of relief ("whether pursuant to the APA, the Declaratory Judgment Act, or equitable authority to grant injunctive relief," ECF No. 35 at 34) and contends the same scope must apply to them all. But that is not correct. As demonstrated next, vacatur under the APA is necessarily nationwide, not party-specific, and Plaintiffs' injunctive relief is already appropriately tailored.

### A. APA vacatur of a rule is not party- or subject-specific.

EEOC contends that any APA vacatur of the 2024 Guidance should be limited to Plaintiffs. ECF No. 35 at 34–36. But that is not the law in this Circuit: "Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation," *Franciscan Alliance, Inc.*, 47 F.4th at 374–75 & n.29, and vacatur means the rule itself is rendered void, *see Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022).

EEOC tries to avoid this well-settled approach by arguing that *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023), recognized the possibility that "APA relief may operate only as to the parties," ECF No. 35 at 35. But the Fifth Circuit has already rejected that view of *Cargill*. In *Braidwood Mgmt, Inc. v. Becerra*, 104 F.4th 930 (5th Cir. 2024), HHS argued that *Cargill* "require[s] consideration of the various equities at stake before determining whether a party is entitled to vacatur," but *Braidwood* held that *Cargill* requires no such thing because only "a plurality of [*Cargill*] opted to remand the vacatur issue" and did so only because "the parties had not briefed the remedial-scope question." *Id.* at 952 & n.102. Rejecting HHS's view, *Braidwood* reconfirmed that "'vacatur of an agency action is the default rule in this Circuit,'" and even rejected the view (now raised by EEOC) that vacatur is analogous to remedies issued by "courts sitting in equity." *Id.* EEOC claims without explanation that *Braidwood*'s discussion was entirely "dicta," ECF No. 35 at 35, but *Braidwood*'s interpretation of *Cargill* and the APA was a necessary part of the Court's rejection of HHS's request for limited vacatur.

EEOC cites other cases discussing scope of relief, ECF No. 35 at 34–35, but almost all pertain to the scope of *injunctive* relief (addressed separately below), not APA vacatur. For example, *Gill v. Whitford* involved a request for an injunction against a state legislature for alleged federal constitutional violations. 585 U.S. 48, 52–54, 60 (2018). The opinion in *Hecht v. Bowles* addressed an injunction against enforcement of a statute, 321 U.S. 321, 329 (1944). And *Starbucks Corp. v. McKinney* considered a request for an injunction under the National Labor Relations Act. 144 S. Ct. 1570, 1574 (2024). These cases say nothing about the appropriate remedy under the APA's instruction that courts must "hold unlawful and set aside agency action" that is legally

flawed. 5 U.S.C. § 706(2). EEOC also relies on several concurrences about the scope of relief, ECF No. 35 at 35–36, but those separate opinions do not override the Fifth Circuit's precedent, and most of them do not even address the APA, *see Labrador v.* Poe, 144 S. Ct. 921, 921 (2024) (Gorsuch, J., concurring in the grant of stay) (injunction against a State's enforcement of a state statute); *Trump v. Hawaii*, 585 U.S. 667, 676 (2018) (injunction against executive order).

EEOC next argues that vacatur should be limited only to the particular portions of the 2024 Guidance that Plaintiffs challenge. *See* ECF. No. 35 at 37–38. In support, EEOC cites only one case, *Electric Power Co. v. EPA*, 920 F.3d 999, 1033 (5th Cir. 2019), which vacated portions of a multi-part EPA rule. ECF No. 35 at 38. But in that case the court appears to have simply granted the relief that the challengers themselves had requested: the petitioners asked for vacatur only of part of the rule because the EPA had severed the rule into multiple regulations and "announced it would reconsider" two parts that the petitioners did not challenge. *Elec. Power Co.*, 920 F.3d at 1013. By contrast, Plaintiffs here do ask for vacatur of the entire 2024 Guidance, and no portion of that rule is under agency reconsideration.

Moreover, EEOC never points to any severability clause in the 2024 Guidance, and the default practice is for courts to vacate the entire rule in the absence of such a clause. *See, e.g., Admin. Conf. of the U.S., Recommendation 2018-2, Severability in Agency Rulemaking*, 83 Fed. Reg. 30685 (June 29, 2018) ("If a court holds portions of a rule unlawful, and the agency has been silent about severability, then the default remedy is to vacate the entire rule, including those portions that the court did not hold unlawful."). And any argument for severability would be limited solely to the contrary-to-law claim concerning accommodations—if the Court finds that the 2024 Guidance was an unlawful substantive rule, or was required to be published in the Federal Register, or was arbitrary and capricious for failing to consider various factors, the entire 2024 Guidance would have to fall.

Regardless, EEOC has forfeited or waived any severability argument. In its brief, the agency punts to this Court to parse through the 189-page 2024 Guidance to determine what should be severed: "If the Court grants any relief, it should be limited in scope to any challenged statement

or example in the Guidance that the Court concludes is unlawful." ECF No. 35 at 38. The Fifth Circuit recently reaffirmed that such a cursory reference to severability forfeits that argument. *See Louisiana by and through Murrill v. U.S. Dep't. of Educ.*, 2024 WL 3452887, at *1 (5th Cir. July 17, 2024) (holding the Department of Education "forfeit[ed]" the argument that any interim relief should be limited because its brief stated only argued "in two conclusory sentences that the Rule's severability provision should enable the rest of the Rule to escape the preliminary injunction"); *see also Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016) (concluding an agency that made a "cursory" request that preliminary relief be "narrowly tailored" "waived any argument about the scope of the [relief]").

EEOC had the burden of establishing (1) that the 2024 Guidance would "function sensibly" and (2) that the agency "would have adopted the same disposition," even if all regulations incorporating or relying on the HHS's misinterpretation were stricken. *Texas v. United States*, 691 F. Supp. 3d 763, 788 (S.D. Tex. 2023) (Hanen, J.). It addressed neither factor.

There is "substantial doubt" that the agency would have adopted an emasculated form of the 2024 Guidance. *Balt. v. Azar*, 439 F. Supp. 3d 591, 615 (D. Md.), *aff'd*, 973 F.3d 258 (4th Cir. 2020). Erasing major provisions fatally undermines the rationale for the rule. *See Balt.*, 439 F. Supp. 3d at 615.

Hence, even if this Court wanted to engage in a severability analysis, EEOC's scant briefing on the issue puts the Court in the "untenable position" of having to "parse the [189] page Final Rule [itself] to determine the practicability and consequences of a limited stay." *Murrill* 2024 WL 3452887, at *2. That is not this Court's job. *See Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) ("[J]udges are not like pigs, hunting for truffles buried [in the record].") (citation omitted, alterations in original). EEOC's lack of briefing on this issue essentially calls this Court to engage in an unled, roving severability analysis of the 2024 Guidance. It should decline the offer.

### B.  Plaintiffs' requested injunction is already tailored.

Plaintiffs also requested permanent injunctive relief against Defendants' wrongful interpretation and application of Title VII, and Plaintiffs explained that the four traditional factors

support that relief. ECF No. 30 at 31–35. In response, EEOC argues only that any injunctive relief should be limited to Plaintiffs. ECF No. 35 at 34. But Plaintiffs' requested injunctive relief is *already* expressly tailored to cover only Plaintiffs. The draft order accompanying Plaintiffs' motion for summary judgment says—four times—that Defendants are enjoined from certain actions relating to "the State of Texas or The Heritage Foundation." ECF No. 30-1 at 2–3. The Court should grant that narrowly tailored relief.

Plaintiffs requested that injunctive relief apply to any future attempts by EEOC to interpret or enforce Title VII as including bathroom, pronoun, or dress code accommodations, and explained why this was proper. ECF No. 30 at 34–36. "Given that the [agency] has enacted similar guidance in the past and may attempt to do so again as an end-run to the Court's relief, a broader injunction is necessary to provide complete relief." *Texas v. Cardona*, 2024 WL 3658767, at *50; *see also Cath. Benefits Ass'n,* 2024 WL 4315021, at *11 (in challenge to the same 2024 Guidance challenged here, granting injunction against agency "interpreting or enforcing" Title VII as requiring pronoun or bathroom accommodations against certain employers).

EEOC also forfeits or waives any argument against this aspect of the scope of relief by inadequately briefing the issue of relief against "Title VII itself." ECF No. 35 at 37; *see Texas v. EPA*, 829 F.3d at 435 (concluding an agency that made a "cursory" request that preliminary relief be "narrowly tailored" "waived any argument about the scope of the [relief]").

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for summary judgment, deny Defendants' cross-motion for summary judgment, declare that the 2024 Guidance is unlawful, vacate it and set aside, and issue a permanent injunction against Defendants as described in the proposed order accompanying Plaintiffs' motion for summary judgment. ECF No. 30-1 at 2–3.

23

Dated: December 4, 2024

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

DANIEL D. MAULER
General Counsel of The Heritage Foundation

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Legal Strategy

*/s/ R. Trent McCotter*

R. TRENT MCCOTTER
ANDREW W. SMITH
Boyden Gray PLLC
801 17th St. NW, Suite 350
Washington, DC 20006
Telephone: (202) 706-5488
tmccotter@boydengray.com

*/s/Ryan D. Walters*

RYAN D. WALTERS
Chief, Special Litigation Division
Texas State Bar No. 24105085
Ryan.Walters@oag.texas.gov

KYLE S. TEBO
Special Counsel
Texas State Bar No. 24137691
kyle.tebo@oag.texas.gov

The Heritage Foundation
214 Massachusetts Ave. NE
Washington, DC 20002-4999
Telephone: (202) 617-6975

OFFICE OF THE TEXAS ATTORNEY GENERAL
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: 512-463-2100
Fax: 512-457-4410

COUNSEL FOR THE HERITAGE FOUNDATION

COUNSEL FOR STATE OF TEXAS

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2024, a true and correct copy of the above and foregoing document has been filed and served, *via* the CM/ECF system, to all counsel and parties of record.

*/s/Ryan D. Walters*
RYAN D. WALTERS