UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

|  |  |
|---|---|
| STATE OF TEXAS, *et al.*, | Case No. 2:24-cv-173 |
| Plaintiffs, | District Judge Matthew J. Kacsmaryk |
| v. |  |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *et al.*, |  |
| Defendants. |  |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.    Plaintiffs' Claims Are Not Justiciable ............................................................................... 2

    A.    Plaintiffs Lack Standing and Their Claims Are Unripe ......................................... 2

    B.    The 2024 Guidance Is Not Final Agency Action .................................................. 8

II.    The 2024 Guidance Does Not Violate the APA ............................................................... 12

    A.    The 2024 Guidance Is Not Contrary to Law ....................................................... 12

    B.    The EEOC Had Authority to Issue the 2024 Guidance ...................................... 16

    C.    Plaintiffs' Other APA Claims Also Fail .............................................................. 18

        1.    The Challenged Portion of the Guidance Is Neither Arbitrary Nor Capricious ........ 18

        2.    The Guidance Need Not Have Been Published in the Federal Register ................... 20

III.    The Court Should Reject Plaintiffs' Requests for Overbroad Relief .............................. 21

    A.    Any Relief Should Be Limited to Parties That Have Established Standing .......................... 21

    B.    Any Relief Should Be Limited to Any Invalid Portion of the Guidance ............................... 22

CONCLUSION ............................................................................................................................. 25

i

# TABLE OF AUTHORITIES

## Cases

*Apter v. Dep't of Health & Human Servs.*,
  80 F.4th 579 (5th Cir. 2023)................................................................................................9

*Arizona v. Biden*,
  40 F.4th 375 (6th Cir. 2022)..............................................................................................11

*Arthur Young & Co. v. Sutherland*,
  631 A.2d 354 (D.C. 1993) ..................................................................................................6

*Ass'n of Am. Railroads v. DOT*,
  896 F.3d 539 (D.C. Cir. 2018)...........................................................................................24

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  591 U.S. 610 (2020)...........................................................................................................23

*Bennett v. Spear*,
  520 U.S. 154 (1997)..............................................................................................................8

*Biden v. Texas*,
  597 U.S. 785 (2022)...........................................................................................................11

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) .......................................................................................................1, 16

*Braidwood Mgmt, Inc. v. EEOC*,
  70 F.4th 914 (5th Cir. 2023).........................................................................................3, 4, 7

*Braidwood Mgmt, Inc. v. Becerra*,
  104 F.4th 930 (5th Cir. 2024)............................................................................................22

*Cal. Cmtys. Against Toxics v. EPA*,
  934 F.3d 627 (D.C. Cir. 2019) ..........................................................................................17

*Cargill v. Garland*,
  57 F.4th 447 (5th Cir. 2023)..............................................................................................21

*Cargill v. Garland*,
  602 U.S. 406 (2024)...........................................................................................................21

*Catholic Benefits Ass'n v. Burrows*,
  732 F. Supp. 3d 1014 (D.N.D. 2024) ....................................................................3, 4, 10, 14

*Catskill Mountains Ch. of Trout Unlimited, Inc. v. EPA*,
  846 F.3d 492 (2d Cir. 2017) ........................................................................................19, 20

*Consumer Data Indus. Ass'n v. Texas*,
  No. 1:19-CV-00876-RP, 2020 WL 4208248 (W.D. Tex. July 22, 2020)...............................8

*Cunningham v. Burlington Coat Factory Warehouse Corp.*,
  No. 118CV11266NLHMJS, 2024 WL 863236 (D.N.J. Feb. 29, 2024) ..................................3

*EEOC v. Boh Bros. Constr. Co.,*
  731 F.3d 444 (5th Cir. 2013) ................................................................................................ 7, 10

*EEOC v. Catastrophe Mgmt.,*
  *Sols.,* 852 F.3d 1018 (11th Cir. 2016) ............................................................................14

*Electric Power Co. v. EPA,*
  920 F.3d 999 (5th Cir. 2019) ............................................................................................22

*Flight Training Int'l Inc. v. FAA,*
  58 F.4th 234 (5th Cir. 2023) ......................................................................................17, 18

*Florida v. HHS,*
  No. 8:24-CV-1080-WFJ-TGW, 2024 WL 3537510 (M.D. Fla. July 3, 2024) ....................7

*Florida v. Weinberger,*
  492 F.2d 488 (5th Cir. 1974) ..............................................................................................7

*Garrett v. Kohls Distrib. eFulfillment Ctr.,*
  No. 3:23-CV-2525, 2024 WL 3237184 (N.D. Tex. June 7, 2024) ....................................25

*Garrett. Kohls Distrib. eFulfillment Ctr.,*
  No. 3:23-CV-2525, 2024 WL 3240656 (N.D. Tex. June 28, 2024) ..................................25

*Gen. Elec. Co. v. Gilbert,*
  429 U.S. 125 (1976) ...........................................................................................................16

*Hollis v. Lynch,*
  827 F.3d 436 (5th Cir. 2016) ..............................................................................................6

*Huawei Tech. USA, Inc. v. FCC,*
  2 F.4th 421 (5th Cir. 2021) ...............................................................................................19

*Jefferson v. Sewon Am., Inc.,*
  891 F.3d 911 (11th Cir. 2018) ...........................................................................................15

*K Mart Corp. v. Cartier, Inc.,*
  486 U.S. 281 (1988) ...........................................................................................................23

*Khodara Environmental, Inc. v. Blakey,*
  376 F.3d 187 (3d Cir. 2004) ........................................................................................... 5, 6

*Knutzen v. Eben Ezer Lutheran Hous. Ctr.,*
  815 F.2d 1343 (10th Cir. 1987) .........................................................................................20

*Lange v. Houston County, Georgia,*
  101 F.4th 793 (11th Cir. 2024) .........................................................................................13

*Lange. Houston County, Georgia,*
  101 F.4th 1254 (11th Cir. 2024) .......................................................................................13

*Leal v. Becerra,*
  No. 21-10302, 2022 WL 2981427 (5th Cir. July 27, 2022) ................................................5

*Loper Bright Enters. v. Raimondo,*
  144 S. Ct. 2244 (2024) .......................................................................................................18

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ................................................................................................................7

*Mass. Mfg. Extension P'ship v. Locke*,
 723 F. Supp. 2d 27 (D.D.C. 2010) .......................................................................................21

*McConnell v. Federal Election Commission*,
 540 U.S. 93 (2003) .................................................................................................................5

*MeritorSavings Bank v. Vinson*,
 477 U.S. 57 (1986) ...............................................................................................................17

*Mock v. Garland*,
 75 F.4th 563 (5th Cir. 2023) ...........................................................................................18, 19

*Murrill v. U.S. Department of Education*,
 No. 24-30399, 2024 WL 3452887 (5th Cir. July 17, 2024) ...........................................24, 25

*Nasdaq Stock Mkt. LLC v. SEC*,
 38 F.4th 1126 (D.C. Cir. 2022) ............................................................................................24

*Oncale v. Sundowner Offshore Servs., Inc.*,
 523 U.S. 75 (1998) ..........................................................................................................3, 13

*Opulent Life Church v. City of Holly Springs*,
 697 F.3d 279 (5th Cir. 2012) .................................................................................................7

*Peoples Nat'l Bank v. Off. of Comptroller of Currency of the U.S.*,
 362 F.3d 333 (5th Cir. 2004) .................................................................................................8

*Perez v. Mortgage Bankers Ass'n*,
 575 U.S. 92 (2015) ..........................................................................................................18, 19

*Senior Unsecured Creditors' Comm. of First Republic Bank Corp. v. FDIC*,
 749 F. Supp. 758 (N.D. Tex. 1990)........................................................................................14

*Syncor Int'l Corp. v. Shalala*,
 127 F.3d 90 (D.C. Cir. 1997) ................................................................................................17

*Tennessee v. EEOC*,
 No. 2:24-CV-84-DPM, 2024 WL 3012823 (E.D. Ark. June 14, 2024) ...................................4

*Texas v. EEOC*,
 633 F. Supp. 3d 824 (N.D. Tex. 2022) ............................................................................14, 25

*Texas v. EEOC*,
 933 F.3d 433 (5th Cir. 2019) .................................................................................................9

*Texas v. EEOC*,
 No. 2:21-CV-194-Z, 2022 WL 22869778 (N.D. Tex. May 26, 2022)......................................4

*Texas v. EPA*,
 829 F.3d 405 (5th Cir. 2016) ................................................................................................24

*Truck Trailer Mfr. Ass'n, Inc v. EPA*,
 17 F.4th 1198 (D.C. Cir. 2021)..............................................................................................24

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016) ...................................................................................................... 7, 8, 9

*U.S. Telecom Ass'n v. FCC*,
    825 F.3d 674 (D.C. Cir. 2016) ........................................................................................ 7

*United States v. Johnson*,
    632 F.3d 912 (5th Cir. 2011) ...................................................................................... 20, 21

*United States v. Redd*,
    562 F.3d 309 (5th Cir. 2009) ........................................................................................ 22

*VanDerStok v. Garland*,
    No. 23-10718, 2023 WL 4945360 (5th Cir. July 24, 2023) ......................................... 23

*Yarls v. Bunton*,
    905 F.3d 905 (5th Cir. 2018) ........................................................................................ 25

**Statutes**

5 U.S.C. § 552(a) ............................................................................................................... 20

5 U.S.C. § 553(b)(A) ..................................................................................................... 18, 19

5 U.S.C. § 704 ................................................................................................................... 10

15 U.S.C. § 78u-5 ............................................................................................................... 8

42 U.S.C. § 2000e-2(a)(2) ................................................................................................. 15

**Regulations**

29 C.F.R. § 1695.2 ......................................................................................................... 11, 13

29 C.F.R. § 1695.6(d) ....................................................................................................... 18

Adoption of Recommendations, 83 Fed. Reg. 30,683 (June 29, 2018) ............................ 24

## INTRODUCTION

Defendants explained in their opening brief that the *Enforcement Guidance on Harassment in the Workplace* ("Guidance" or "2024 Guidance") is a general summary of how courts and the Equal Employment Opportunity Commission ("EEOC") analyze claims of harassment under federal equal opportunity laws. As such, it was not intended to—and does not—itself impose any new legal requirements on any regulated entity. Rather, it summarizes general principals supported by case law and illustrated with examples regarding the elements of a harassment case.

In Plaintiffs' telling, the 2024 Guidance is no different than the 2021 Technical Assistance document this Court considered in a prior case. To the contrary, the 2024 Guidance is significantly different in scope and substance than the prior document this Court considered for at least four reasons. First, while the prior document summarized the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020), and prior Commission decisions in federal sector cases, the 2024 Guidance cites the Title VII provision covering State and private employers and is a broad survey of topics that might arise in a harassment claim, whether based on sex or some other protected basis. Second, this Court determined that the prior Technical Assistance document imposed certain requirements on employers. In contrast, the 2024 Guidance is a resource that presents standards for harassment and employer liability. While the 2024 Guidance also provides examples of harassment distilled from judicial precedent, it offers that precedent as a guidepost only and does not mandate any actions as a result. Third, the 2024 Guidance cites cases applying Title VII against private employers, unlike the prior document which did not. And fourth, the 2024 Guidance nowhere says that the specific policies Plaintiffs assert they wish to maintain are unlawful; it says only what certain courts have concluded may be considered as evidence of whether an employee has faced sufficiently severe or pervasive sex-based harassment to meet one element of a hostile work environment claim. These differences call for a different result in this case.

Nothing in Plaintiffs' reply supports summary judgment in their favor. Plaintiffs lack standing under Article III. Plaintiffs continue to mischaracterize the Guidance as subjecting employers with

1

"sex-specific bathroom, dress, and pronoun policies . . . to liability." ECF No. 48 at 2. It does not. The Guidance nowhere says that employers with any such policies necessarily face liability under Title VII. The unquantified increased regulatory costs from reviewing and updating workplace compliance manuals Plaintiffs cite cannot serve as an Article III injury either. To the extent Plaintiffs face those costs, they flow from Title VII and the judicial opinions cited in the Guidance, not from a non-binding agency guidance document summarizing that case law.

For similar reasons, the Guidance is not a final agency action. It does not itself purport to impose any legal consequences. Defying the Guidance does not create liability and complying with it creates no affirmative defense to liability. Nor does the Guidance bind agency staff to any legal position in an investigation or subsequent enforcement action.

In any case, the Guidance correctly describes Title VII case law. Several courts have concluded that repeated misgendering, forced compliance with sex-based dress codes, and denial of access to bathroom facilities in alignment with gender identity can be evidence of sex-based harassment. While Plaintiffs obviously disagree with those courts' conclusions, they do not contest that those cases support the statements in the Guidance at issue here.

If the Court nevertheless disagrees, any remedy should be limited to address only Plaintiffs' alleged harms. Defendants have identified with precision their understanding of the scope of Plaintiffs' claims, which amount to challenging portions of a single paragraph and two examples in a 189-page document. Any remedy should target only that small portion. And any relief should not extend beyond any party that the Court concludes has established standing or to other jurisdictions.

## ARGUMENT

### I. Plaintiffs' Claims Are Not Justiciable

#### A. Plaintiffs Lack Standing and Their Claims Are Unripe

As Defendants have explained, Plaintiffs have not established Article III standing for two independent reasons: *first*, the 2024 Guidance does not compel or proscribe any conduct, and *second*, Plaintiffs do not establish any conflict between their employment policies and the potentially relevant

factors identified in case law summarized in the Guidance.  *See* ECF No. 35 at 7–13.  Plaintiffs'

counterarguments are unpersuasive.

Turning first to the 2024 Guidance itself, Plaintiffs dramatically mischaracterize the Guidance

in attempting to argue that it imposes legal obligations on employers.  For instance, Example 15 in

the 2024 Guidance provides in full:

> **Example 15: Harassment Based on Gender Identity.**  Chloe, a purchase
> order coordinator at a retail store warehouse, is approached by her supervisor, Alton,
> who asks whether she was "born a man" because he had heard a rumor that "there
> was a transvestite in the department."  Chloe disclosed to Alton that she is transgender
> and asked him to keep this information confidential.  After this conversation, Alton
> instructed Chloe to wear pants to work because a dress would be "inappropriate,"
> despite other purchase order coordinators being permitted to wear dresses and skirts.
> Alton also asks inappropriate questions about Chloe's anatomy and sexual
> relationships.  Further, whenever Alton is frustrated with Chloe, he misgenders her by
> using, with emphasis, "he/him" pronouns, sometimes in front of Chloe's coworkers.
> Based on these facts, Alton's harassing conduct toward Chloe is based on her gender
> identity.

App. 35–36 (emphasis added) (citing *Cunningham v. Burlington Coat Factory Warehouse Corp.*, No.

118CV11266NLHMJS, 2024 WL 863236 (D.N.J. Feb. 29, 2024)).  From this fact-intensive summary

of a relevant judicial decision, Plaintiffs claim that "the 2024 Guidance announces that telling an

employee to wear sex-specific clothes to work 'is' harassing conduct."  ECF No. 48 at 3.  But they

omit the Guidance's explanation that such conduct is not necessarily unlawful.  *See, e.g.,* App. 27; *see*

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998) (explaining that "severe or pervasive"

requirement ensures that "ordinary socializing in the workplace" such as "horseplay" or "flirtation"

do not violate Title VII).  The 2024 Guidance does not speak in the absolute, commanding terms

Plaintiffs' arguments suggest.  Rather, it summarizes relevant judicial decisions that themselves apply

a totality-of-the-circumstances analysis.  At bottom, Plaintiffs' quarrel is with those decisions of other

courts, which this Court lacks jurisdiction to review, not with the Guidance.

Plaintiffs' cited cases are inapposite.  Contrary to Plaintiffs' assertions, *Catholic Benefits Ass'n v.*

*Burrows*, 732 F. Supp. 3d 1014 (D.N.D. 2024) ("*CBA*"), and *Braidwood Management, Inc. v. EEOC*, 70

F.4th 914 (5th Cir. 2023), do not stand for the general principle that plaintiffs have broad standing to challenge an agency's case-by-case enforcement approach in all circumstances. *See* ECF No. 48 at 4. Rather, those cases critically focused on plaintiffs' First Amendment interests. Indeed, the court in *CBA* distinguished the standing analysis in *Tennessee v. EEOC*, No. 2:24-CV-84-DPM, 2024 WL 3012823 (E.D. Ark. June 14, 2024), on the ground that, "[i]n that case, Tennessee alleged sovereign and economic harms," whereas "religious harms under" the Religious Freedom Restoration Act ("RFRA") "fall into an entirely different category." *CBA*, 732 F. Supp. 3d at 1023 (citing *Braidwood*, 70 F.4th at 938). Likewise, in *Braidwood*, the Fifth Circuit found standing based on alleged "chilling" of the plaintiffs' religious rights. 70 F.4th at 938. Here, Plaintiffs do not allege that the 2024 Guidance chills religious free exercise.

Plaintiffs also repeatedly state that they must incur regulatory costs to update their workplace manuals to address the "bevy of examples" included in the Guidance. ECF No. 48 at 6; *see also id.* at 1–3, 5. As explained, these examples merely summarize existing case law. Accordingly, any regulatory burden associated with addressing them in Plaintiffs' workplace manuals does not flow from the Guidance. Stated differently, to the extent the cases cited in the 2024 Guidance call for changes to Plaintiffs' training materials or manuals, those cases existed before the EEOC promulgated the Guidance and thus any injury was not caused by the Guidance.

Turning next to the employment policies of the Plaintiffs, with respect to Texas, Plaintiffs attempt to rely on this Court's decision in *Texas v. EEOC*, No. 2:21-CV-194-Z, 2022 WL 22869778 (N.D. Tex. May 26, 2022), to argue that Texas has established standing based on its purported employment policies. *See* ECF No. 48 at 6. But as Defendants have explained, Plaintiffs bear a more demanding burden here, on cross-motions for summary judgment, than in the context of this Court's prior decision on the EEOC's motion to dismiss. *See* ECF No. 35 at 11 n.1. Plaintiffs fail to contend with this distinction. Here, at the summary judgment stage, Plaintiffs have failed to provide evidence that Texas's employment policies conflict even with Plaintiffs' mistaken understanding of the 2024 Guidance. Relatedly, Plaintiffs state incorrectly that Defendants omitted relevant portions of

Plaintiffs' declaration in which the declarant speculated as to how he "would" address particular requests from employees. ECF No. 48 at 5. To the contrary, Defendants' opening brief quoted these statements and explained that such speculation cannot overcome Texas's stated policy of applying "case-by-case" consideration to requests or complaints involving dress codes, bathroom access, or pronoun use. ECF No. 35 at 10–11. Plaintiffs offer no substantive response.

With respect to Heritage, Plaintiffs acknowledge for the first time in their reply brief that D.C. law—unlike the 2024 Guidance—categorically requires employers to provide employees access to restrooms and other facilities consistent with their gender identity or expression and to permit employees to dress and groom themselves in a manner not inconsistent with their gender identity or expression, and further provides that deliberate misgendering may constitute evidence of unlawful harassment and a hostile work environment. *Id.* at 12 (citing D.C. Mun. Regs. tit. 4, §§ 801.1(a), 804.1, 808.2(a)). This concession is fatal to Heritage's efforts to establish Article III standing; any alleged injury to Heritage as a result of the 2024 Guidance would not be redressed by a decision of this Court, because Heritage would remain subject to the requirements of the relevant D.C. regulations. This case is thus directly analogous to *McConnell v. Federal Election Commission*, in which the plaintiffs lacked standing because separate, unchallenged legal provisions meant that "[a] ruling in the . . . plaintiffs' favor . . . would not redress their alleged injury." 540 U.S. 93, 229 (2003), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010); *accord Leal v. Becerra*, No. 21-10302, 2022 WL 2981427, at *2 (5th Cir. July 27, 2022) ("Redressability is also a problem when declaring one law unenforceable may not provide relief because a different law independently causes the same injury."). Contrary to Plaintiffs' unsupported contention, nothing in *McConnell* turned on the legal relationship between the challenged and unchallenged provisions. *See* ECF No. 48 at 7.

Plaintiffs invoke *Khodara Environmental, Inc. v. Blakey*, 376 F.3d 187 (3d Cir. 2004), to suggest that Heritage has standing despite the relevant D.C. regulations. *See* ECF No. 48 at 6–7. But in that case, the Third Circuit addressed a plaintiff who "face[d] two, independent obstacles *that [we]re potentially removable* but that [could not] be challenged in a single litigation," and held that plaintiff had

5

standing "to challenge each obstacle separately" in either order. *Khodara*, 376 F.3d at 195 (emphasis added). That is, the plaintiff in *Khodara* established that it intended to challenge both independent legal obstacles, although it could not do so in a single proceeding. Here, by contrast, Heritage does not suggest that it has any intention, much less any plausible legal basis, to challenge D.C.'s regulations in a separate proceeding. Heritage also faces no bar to challenging the relevant D.C. regulations in a single action, which it could bring in the District Court for the District of Columbia. Accordingly, any relief this Court granted as to Heritage would lack meaningful, practical effect.

Nor are the "fates" of the validity of the 2024 Guidance and the D.C. regulations "intertwined," such that a decision of this Court regarding the validity of the Guidance would affect the validity of the D.C. regulations. *Hollis v. Lynch*, 827 F.3d 436, 442 (5th Cir. 2016), *abrogated on other grounds by United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024). That may be true, for example, where a plaintiff alleges that a federal law violates the U.S. Constitution, such that a decision in favor of the plaintiff would have the effect of invalidating a parallel state law. *See id.* But here, by contrast, a decision of this Court invalidating the 2024 Guidance based on any of the legal theories advanced by Plaintiffs would not affect the validity of D.C.'s relevant regulations. It is true that D.C. courts may look to Title VII case law for guidance interpreting parallel provisions of the D.C. Human Rights Law, pursuant to which the D.C. regulations were promulgated. *See* ECF No. 48 at 6. But it does not follow that a decision of this Court that the 2024 Guidance exceeded the scope of Title VII would alter the scope of D.C.'s distinct regulatory provisions. Indeed, *Arthur Young & Co. v. Sutherland*, 631 A.2d 354 (D.C. 1993), on which Plaintiffs rely, underscores that even the D.C. Human Rights Law (as distinct from the regulations promulgated thereunder) is not identical in scope to Title VII. There, the D.C. Court of Appeals held that the D.C. Human Rights Law provides for punitive damages although Title VII did not at the time, noting that "Title VII is not the only source of the [D.C. Human Rights Law]." *Id.* at 371. In sum, in light of the requirements and proscriptions of D.C. law that apply to Heritage independently of Title VII, Plaintiffs have not carried their burden to establish that it is "likely, as opposed to merely speculative," that any injury to Heritage resulting from the 2024

6

Guidance "will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and citations omitted).

For similar reasons, Plaintiffs' claims are not ripe for judicial review. As explained, because any sex-based harassment claim requires case-by-case consideration of the totality of the circumstances, the outcome of any enforcement action applying the principles summarized in the Guidance would depend on facts not before the Court. *See* ECF No. 35 at 13–14 (citing *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 460 (5th Cir. 2013) (en banc)). Plaintiffs cite no case in which a court held that an agency guidance document summarizing factors that courts have concluded may be relevant to a harassment claim, depending on the totality of the circumstances, gave rise to a ripe claim.

Indeed, Plaintiffs' cited cases are readily distinguishable. *See* ECF No. 48 at 7–8. *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674 (D.C. Cir. 2016), expressly addresses agency "rule[s]," not non-binding guidance. *Id.* at 739; *Florida v. HHS*, No. 8:24-CV-1080-WFJ-TGW, 2024 WL 3537510, at *1 (M.D. Fla. July 3, 2024) (addressing a binding agency rule); *Florida v. Weinberger*, 492 F.2d 488, 490 (5th Cir. 1974) (same); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 283 (5th Cir. 2012) (addressing a municipal zoning ordinance); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 595 (2016) (addressing a jurisdictional determination that the Court concluded bound the government for five years). By contrast, as explained, the 2024 Guidance has no such binding effect, and it does not impose any legal obligations or proscriptions on employers.

Moreover, in *Braidwood*, *U.S. Telecom Ass'n*, and *Opulent Life Church*, the courts' ripeness analyses with respect to the hardship the plaintiffs would face in the absence of judicial review turned significantly on the plaintiffs' allegations that their First Amendment rights were burdened. *Braidwood*, 70 F.4th at 931; *U.S. Telecom Ass'n*, 825 F.3d at 739; *Opulent Life Church*, 697 F.3d at 288. Meanwhile, the Court's discussion of "drop[ping] the hammer" in *Hawkes* referred to a statute that provided for criminal penalties, which likewise informed the Court's ripeness analysis. 578 U.S. at 600. Plaintiffs' attempt to "rel[y] on cases relating to criminal statutes and violations of the First Amendment, with a more lenient standard for standing and ripeness that allows for judicial intervention before

enforcement," is unavailing. *Consumer Data Indus. Ass'n v. Texas*, No. 1:19-CV-00876-RP, 2020 WL 4208248, at *4 (W.D. Tex. July 22, 2020). As noted, Plaintiffs do not allege that the 2024 Guidance chills any First Amendment-protected conduct, and Title VII does not provide for criminal liability against covered entities. Accordingly, Plaintiffs have not satisfied their burden either to establish Article III standing or to demonstrate that their claims are ripe for judicial review.

> **B.    The 2024 Guidance Is Not Final Agency Action**

The EEOC intended the Guidance to provide a survey of the "standards of harassment and employer liability applicable to claims of harassment under the equal opportunity . . . statutes enforced by the Commission." App. 25. It is designed as a reference resource for those seeking to understand how such claims are analyzed. *See id.* at 25–26. As such, the Guidance breaks no new ground. Each challenged statement is supported by citations to appropriate authority. *See Id.* at 35–36, 127–31. It is not a document "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (cleaned up); *see* ECF No. 35 at 14–22. This Court therefore lacks jurisdiction to review it. *Peoples Nat'l Bank v. Off. of Comptroller of Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004).

Plaintiffs resist this conclusion, but none of their arguments establish that the Guidance determines rights or obligations or creates legal consequences. The Guidance establishes no "norms or safe harbors" that impose legal consequences on employers. *See* ECF No. 35 at 20–21. A safe harbor is a "provision (as in a statute or regulation) that affords protection from liability or penalty." Black's Law Dictionary (12th ed. 2024). The typical safe harbor is "definitive" in that it provides a legally enforceable protection against liability. *Hawkes*, 578 U.S. at 599. In other words, if an enforcement agency attempted to enforce a statute or regulation, the defendant meeting the relevant criteria could point to the safe harbor as a defense to liability. *Cf.* 15 U.S.C. § 78u-5 (providing that issuers "shall not be liable with respect to any forward-looking statement" that meets certain criteria "in any private action arising under this chapter"). An agency action providing or denying such a safe harbor thus has legal consequences because the plaintiff either is afforded that binding protection or

denied it. *Hawkes*, 578 U.S. at 599; *see Texas v. EEOC*, 933 F.3d 433, 442 (5th Cir. 2019). Plaintiffs do not contend that the Guidance creates a legally enforceable right not to be sued or any other formal defense to liability. Nor do they argue that the Guidance itself creates liability separate from Title VII. Rather, Plaintiffs insufficiently contend only that the Guidance creates a safe harbor because employers may opt to rely on it "'to shape their actions.'" ECF No. 48 at 10 (quoting *Texas v. EEOC*, 933 F.3d at 444).

The finality doctrine is not so broad as to encompass every agency action that private parties may elect to rely on in ordering their affairs. To be sure, the Fifth Circuit's decision in *Texas v. EEOC* held that the agency document under review there was final agency action even though the safe harbors the court found were "not so definite" nor the penalties threatened "as severe" as those "threatened in *Hawkes*." 933 F.3d at 444. But that case "is not as broad as [Plaintiffs] contend." *See Apter v. Dep't of Health & Human Servs.*, 80 F.4th 579, 594 (5th Cir. 2023). Indeed, the Fifth Circuit has specifically rejected reading *Texas v. EEOC* as holding that a final agency action occurs whenever affected private parties feel pressure to conform to an agency statement. *Id.* The "practical binding effect" discussed in that case "is an effect on the agency—not the public." *Id.* Because the Guidance under review here has no legally binding effect on the public, it is not final agency action.

The Guidance also does not bind agency staff to a particular legal position, as Plaintiffs suggest. *See* ECF No. 35 at 19–20. Again, the differences between the Guidance at issue here and the one reviewed by the Fifth Circuit in *Texas v. EEOC* are instructive. The document there declared a specific employment policy—a categorical ban on hiring felons—"unlawful" without the need for further analysis. *Texas*, 933 F.3d at 443. The practical effect of the policy left "no room for EEOC staff *not* to issue referrals to the Attorney General when an employer" used such a ban. *Id.* at 443. The Guidance under review here, however, leaves agency staff free not to refer charges for further enforcement proceedings and does not limit staff discretion regarding the types of evidence that may be considered in the totality of the circumstances analysis of a harassment claim. ECF No. 35 at 20. The challenged portion of the Guidance says that some types of conduct might be harassing, but also

9

explains that "[n]ot all harassing conduct violates the law, even if it is because of a legally protected characteristic." App. 27. Even if an employer had the types of policies Plaintiffs describe, the Guidance does not mandate EEOC staff pursue civil enforcement litigation or referral to DOJ. Plaintiffs cite no language in the Guidance to the contrary. All the language Plaintiffs cite ironically shows the opposite: that the EEOC commits to evaluating charges based on the circumstances presented to determine whether an employer's workplace is so severely or pervasively harassing to affect a term or condition of employment. *See, e.g.*, ECF No. 48 at 8–9; App. 26 (explaining that the "contents of this document . . . do not obviate the need for the EEOC and its staff to consider the facts of each case and applicable legal principles when exercising their enforcement discretion); App. 27 (explaining that EEOC enforcement staff must make a case-specific assessment to determine "whether specific harassing conduct violates the law"). Plaintiffs dismiss this language as "boilerplate," ECF No. 48 at 9, but the very nature of harassment claims requires an assessment of "the totality of the circumstances" presented in a charge, *Boh Bros.*, 731 F.3d at 453. What Plaintiffs dismiss as "boilerplate" is a legal requirement for evaluating harassment claims.

As with standing, the preliminary injunction ruling in *CBA* has little application to the final agency action analysis. *Contra* ECF No. 48 at 11. The plaintiffs in that case challenged the Guidance only under RFRA. *See CBA*, 2024 WL 4315021, at *10 (declining to address other grounds). The court, therefore, did not have to determine as a threshold matter that the Guidance was a "final agency action," as is required to reach the merits of the APA claims at issue here. 5 U.S.C. § 704. To the extent that court nonetheless discussed the challenged portions of the Guidance, it appears to have equated the examples of harassing conduct included in the Guidance to "examples of gender identity discrimination" that are sufficient to constitute a violation of Title VII. *CBA*, 2024 WL 4315021, at *3. But, as Defendants have explained, the challenged portions of the Guidance do not conclude that those examples of harassing conduct, without more, create Title VII liability for a hostile work environment. *See* ECF No. 35 at 3, 16–19.

Plaintiffs also note that the Guidance replaces five prior guidance documents. *Id.* at 10. But the "same would be true for any nonbinding policy statement" that "brings an end to" former guidance. *Arizona v. Biden*, 40 F.4th 375, 388 (6th Cir. 2022). The fact that one agency document replaces another cannot on its own determine whether legal consequences flow from the later document, and Plaintiffs make no claim that the prior agency materials the Guidance replaced were themselves final agency actions under the APA. *Cf. Biden v. Texas*, 597 U.S. 785, 808–09 (2022) (concluding that an agency document that rescinded a prior memorandum was final agency action because the prior memorandum was, itself, final agency action). Similarly, the fact that the EEOC published the proposed Guidance for public comment pursuant to its internal regulations does not mean it has legal consequences. *See, e.g.* 29 C.F.R. § 1695.2 (b) (guidance documents "shall . . . avoid using mandatory language"); (c)(7)(i) (requiring language that states that the guidance document does not have the force of law and is not binding); *contra* ECF No. 48 at 11.

Finally, Plaintiffs claim that the EEOC's position is that the Guidance "does nothing." ECF No. 48 at 11. That is, of course, not the EEOC's position. The Guidance is a useful resource for those seeking to understand how equal employment opportunity statutes apply to claims of harassment in the workplace. But that does not mean that the Guidance has any effect on the underlying legal requirements of those laws. The operative legal rules flow not from the Guidance, but from Title VII and other anti-harassment laws themselves. If it states existing requirements, Plaintiffs ask, how could the Guidance not be binding? *Id.* But that argument conflates the statements in the Guidance with the underlying legal requirements themselves. It is the underlying federal statutes and the judicial opinions interpreting those provisions that are binding, not the Guidance document describing them.

Plaintiffs' position appears to be that an agency engages in reviewable final agency action any time it issues a document that does more than parrot the words of a statute or regulation. According to Plaintiffs, even a guidance document that contains examples drawn from relevant case law or guidelines to aid compliance creates legal consequences because the public might feel pressured to

11

comply with those statements. That approach is highly undesirable as a matter of public administration because it would broadly deter agencies from publishing guidance documents, leaving the public to undertake its own research, often at great expense, about how courts have interpreted agency-enforced laws. Because the Guidance here is not itself a source of law, it lacks legal consequences and is not final agency action.

## II.    The 2024 Guidance Does Not Violate the APA

### A.    The 2024 Guidance Is Not Contrary to Law

Plaintiffs' APA challenge primarily implicates two statements from the Guidance. First, the Guidance explains that because "[s]ex based discrimination under Title VII includes employment discrimination based on sexual orientation or gender identity," "sex-based harassment includes harassment based on sexual orientation or gender identity, including how that identity is expressed." App. 35. Second, the Guidance explains that "harassing conduct"—a term defined in the Guidance to "refer to conduct that can, but does not necessarily always, constitute or contribute to unlawful harassment"—includes "harassing conduct because an individual does not present in a manner that would stereotypically be associated with that person's sex; repeated and intentional use of a name or pronoun inconsistent with the individual's known gender identity (misgendering); or the denial of access to a bathroom or other sex segregated facility with the individual's gender identity." *Id.* at 27, 35 (footnotes omitted). Plaintiffs do not take issue with the general concept that, under *Bostock*, harassment targeting an employee's gender identity is actionable sex-based harassment when it meets the other elements of such a claim. Instead, Plaintiffs argue that demonstration of that concept through two examples (out of seventy-seven) described in the Guidance has the effect of necessarily imposing gender-identity accommodation requirements, and then insist that this "contravenes the text of Title VII." ECF No. 48 at 12.

Defendants have already explained why that is wrong. *See* ECF No. 35 at 25–26. The portion of the Guidance Plaintiffs challenge makes clear that its discussion of gender identity harassment

relates only to whether given harassing conduct is based on sex, not whether that harassment is ultimately unlawful. *See* App. 27 (explaining that this section "does not address whether such conduct reaches the point of creating a hostile work environment"). It also explains that "not all harassing conduct," including the examples cited in that section, "violates the law, even if it is because of a legally protected characteristic." *Id.* As such, the challenged portion of the Guidance provides examples of the "constellation of surrounding circumstances, expectations, and relationships" that courts analyze when considering hostile work environment claims. *Oncale*, 523 U.S. at 81–82; *see* ECF No. 35 at 25–28.

Plaintiffs respond that this argument fails for the same reasons supporting their standing and final agency action arguments, ECF No. 48 at 13, but they do not explain why that would be the case. As to jurisdiction, Plaintiffs argue that the "court is required to accept" their view of the merits of the case to determine whether they have established injury. *Id.* at 4. Whatever the accuracy of that argument as to jurisdiction, it cannot apply to Plaintiffs' merits arguments. On the merits, Plaintiffs make clear that their argument is that "Title VII *never* contemplates" what they term "gender-identity accommodation requirements." *Id.* Yet Plaintiffs acknowledge that several courts have concluded that the types of conduct described in the challenged portion of the Guidance can be evidence of a hostile work environment that exposes the employer to Title VII liability. *Id.* at 12–13.[1]

---

[1]      Plaintiffs fault the EEOC for omitting that the Eleventh Circuit recently granted *en banc* rehearing in *Lange v. Houston County, Georgia*, 101 F.4th 793 (11th Cir. 2024), *vacated*, 101 F.4th 1254 (11th Cir. 2024) (en banc). *See* ECF No. 46 at n.4. The *Lange* panel opinion held that an employer violated Title VII by excluding gender-affirming care from its employee health plan. *See* 101 F.4th at 798–99. The panel did not address any harassment claim. *Id.* The panel majority and dissent agreed that Title VII prohibits an employer-provided health insurance policy from denying "coverage 'to a transgender employee *because* the employee is transgender.'" *Id.* at 801 (Brasher, J., dissenting). Judge Brasher split from the panel majority because he found the employer's policy did not discriminate against people because they were transgender, rather it distinguished between different types of medical procedures and it did not otherwise rely on gender stereotyping. *See id.* at 803-04. Other than *Bostock* itself, neither the panel majority nor the dissent cited any case on which Defendants here rely. The fact that a court outside this Circuit vacated an opinion that addressed a medical procedure not at issue here, in the context of a type of Title VII claim that the Guidance does not address, has no bearing on the issues in this case.

13

In contrast, Plaintiffs have cited no case holding that the types of conduct described by the Guidance must be categorically excluded from a Title VII plaintiff's hostile work environment claim against a private or State employer regardless of the circumstances.[2]  And this Court has already rejected that view.  *See Texas v. EEOC*, 633 F. Supp. 3d 824, 835–36 (N.D. Tex. 2022) (explaining that "evidence of harassment arising out of a plaintiff's failure to conform to sex-stereotypes can certainly be *evidence* that gender played a part" (cleaned up)).  Yet that is precisely what Plaintiffs are seeking here.  Instead, Plaintiffs argue that this Court should ignore the authority EEOC cited to the contrary merely because they are "non-binding, out-of-circuit cases."  ECF No. 48 at 12.  But Plaintiffs, too, rely extensively on cases from outside the Fifth Circuit.  *See, e.g., id.* at 13–15.  And Plaintiffs seek to vacate the Guidance as contrary to law nationwide, including in jurisdictions where they concede the case law supports the challenged statements.  *See id.* at 19–20.  Even if the Court were inclined to simply ignore the cases cited in the Guidance and in Defendants' opening brief merely because they are non-binding, the challenged portions of the Guidance are fully consistent with Title VII principles and Supreme Court precedent.  *See* ECF No. 35 at 28–29.

Changing tactics, Plaintiffs' Reply sets forth an entirely new theory that the Guidance is contrary to law because it muddies the distinction between disparate treatment and disparate impact claims.  *See* ECF No. 48 at 13–15.  This theory appeared nowhere in Plaintiffs opening brief.  They have, therefore, forfeited the argument.  *See, e.g., Senior Unsecured Creditors' Comm. of First Republic Bank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990).  Plaintiffs observe that the primary case they cite to support this new argument quotes from a case Plaintiffs relied on in their opening brief.  *See* ECF No. 48 at 14.  But Plaintiffs cited that case for the unrelated proposition that courts have "'rejected the argument that Title VII protects hairstyles culturally associated with race.'"  ECF No. 30 at 18 (quoting *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1032 (11th Cir. 2016)).  It cannot

---

[2]    One case Plaintiffs cite concluded in the context of a preliminary injunction motion that an association of Catholic employers were likely to succeed in a challenge to the Guidance under RFRA because portions of it substantially burdened those employers' religious rights.  *See CBA*, 732 F. Supp. 3d at 1026.  Neither Plaintiff asserts such a claim here.

possibly be sufficient for a party to assert that a new argument is properly before the court based on its previous citation to a different case for a distinct legal proposition, just because that opinion happens to quote another case that Plaintiffs deem relevant to a completely new argument on reply.

Even assuming the argument is properly preserved, it is misplaced. As relevant here, all the Guidance says is that in certain circumstances "courts have considered evidence of intentional and repeated misgendering," denial of access to sex-segregated facilities consistent with an individual's gender identity, and harassment based on an individual not presenting in a manner stereotypically associated with that person's sex "as *potentially* supportive of a hostile work environment claim." App. 112 (emphasis added). The Guidance does not declare, as Plaintiffs suggest, that all sex-specific employment rules related to misgendering, sex-specific facilities, and dress codes are inherently unlawful. The Guidance simply reiterates that such policies cannot be applied in a harassing manner against an individual transgender employee such that they create a hostile work environment for that employee.

The Eleventh Circuit case on which Plaintiffs rely is consistent with this view. *See* ECF No. 48 at 13–15 (discussing *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 926 (11th Cir. 2018)). That court did not hold that generally applicable workplace policies could be challenged *only* under 42 U.S.C. § 2000e-2(a)(2). *See Jefferson*, 891 F.3d at 926–27. Rather, the court merely concluded that the basis the employee alleged for the termination—failure to follow the corporate chain of command—was neutral as to race and national origin. *Id.* at 927. The plaintiff also argued that she faced disparate treatment because she was punished more harshly for failing to respect the corporate hierarchy than Korean employees. *Id.* at 926. The court rejected that argument because the plaintiff had not provided evidence to support that claim, not because such a claim could be asserted only under a disparate-impact theory. *Id.* at 927 (citing the "vagueness of [the] accusations" presented in support of this claim).

Plaintiffs' disparate-impact argument repeats the same reasoning *Bostock* itself rejected. There, the Supreme Court explained that it is no defense to a Title VII claim "if the employer treated women

15

as a group the same when compared to men as a group." *Bostock*, 590 U.S. 659. So, the fact that an employer's misgendering, sex-separate facility usage, or sex-specific attire policies and practices are comparable between the sexes is no defense to a claim that an employer has applied those policies to an individual employee in a harassing manner. Such policies obviously distinguish between employees based on their sex. *See id.* at 658–59 (explaining that an employer who "fires a woman" because "she is insufficiently feminine and also fires a man" for "being insufficiently masculine may treat men and women as groups more or less equally" but "in *both* cases the employer fires an individual in part because of sex"). As such, their application to individual transgender employees may constitute harassing conduct depending on the specific circumstances presented in a charge. As the Guidance explains, whether such conduct can form the basis of a hostile work environment claim depends on whether those other circumstances are sufficiently severe or pervasive to establish liability. All of that inquiry is focused on "individuals, not groups." *Id.* at 658. It is, in fact, Plaintiffs' argument that workplace policies related to misgendering, attire, and sex-separate facilities are always lawful under Title VII—regardless of individual circumstances—because they treat women the same as men at the group level. *See* ECF No. 48 at 15. As *Bostock* establishes, such an argument would not be a defense if the supposedly nondiscriminatory workplace policy were applied to an individual employee in a harassing or discriminatory manner.

### B.    The EEOC Had Authority to Issue the 2024 Guidance

The 2024 Guidance is but a recent example of the EEOC's long history of issuing non-binding Guidance regarding Title VII and the other statutes it administers. As Defendants explained in their opening brief, the EEOC issues such documents to provide courts and the public with information about how these statutes are interpreted. ECF No. 35 at 32. "[I]nterpretative rulings such as" EEOC guidance documents lack the force of law, but they are nonetheless "entitled to consideration." *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141 (1976). Accordingly, courts sometimes consider EEOC guidance documents to the extent they are persuasive. To take just one example, the Supreme Court in *Meritor Savings Bank v. Vinson* held that a Title VII plaintiff may establish a violation "by proving that

16

discrimination based on sex has created a hostile or abusive work environment" and relied on EEOC "guidelines" as persuasive authority to do so.  477 U.S. 57, 66 (1986).

Because EEOC guidance documents do not bind courts or the public, the 2024 Guidance under review here was a permissible interpretive rule.  Plaintiffs do not contest that the EEOC has authority to issue interpretive rules, but they contend that the 2024 Guidance is substantive because it "changes" the text of Title VII to "create[]" law.  ECF No. 48 at 17.  In issuing the Guidance, however, the EEOC did "'not claim to be exercising authority to itself make positive law.'"  *Flight Training Int'l Inc. v. FAA*, 58 F.4th 234, 241 (5th Cir. 2023) (quoting *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997).  Even assuming it is a final agency action, the Guidance is not "binding on the rights and obligations of private persons."  *Id.* at 241 n.5.  The Guidance itself explains three times that it is not finally determinative of the correct interpretation of any statute.  *See* App. 20, 26, 110–11.  It is, therefore, a permissible interpretative rule within the EEOC's authority.

Plaintiffs argue that this Court rejected this argument as to the 2021 Technical Assistance Document, ECF No. 48 at 16, but that is not correct.  As a threshold matter, the Fifth Circuit's decision Defendants rely on here post-dates this Court's prior decision and therefore could not have been part of Defendants' argument in that case.  *Flight Training Int'l*, 58 F.4th 234.  More fundamentally, the argument Defendants press here is substantively distinct.  The EEOC in the prior case argued only that the 2021 Technical Assistance Document was not a legislative rule because it was not binding either on agency staff or the public.  *See Texas v. EEOC*, 2:21-cv-194, ECF No. 57 at 38–39 (arguing that an "agency's reference to its own 'legal positions' cannot inherently create a binding norm on agency employees, such that a legislative rule is created").  To be sure, the 2024 Guidance is not a final agency action because it does not bind agency staff to a position in analyzing any charge for the reasons explained above.  *See supra* Part I.B.  But even if the Court disagrees and concludes that the Guidance is a final agency action because it constrains analytical discretion by agency staff, that does not mean that the rule is automatically legislative or substantive in nature.  *See Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 634–35 (D.C. Cir. 2019).  As *Flight Training International* makes clear, such rules are

17

created "only when the agency seeks to make substantive law" and the resulting rule "is binding on the rights and obligations *of private persons.*" *Flight Training Int'l*, 58 F.4th at 241 n.5 (emphasis added).

The Guidance bears none of the hallmarks of a substantive, legislative rule. *See Mock v. Garland*, 75 F.4th 563, 580 (5th Cir. 2023) (listing factors to determine "when an agency is making substantive law"). As has already been explained, the "language actually used by the agency" does not indicate that the agency "intended to speak with the force of law." *Id.* at 580 (cleaned up). The EEOC did not publish the Guidance in the Code of Federal Regulations, did not invoke any "general legislative authority," and did not claim any interpretive deference. *Id.* The effect of the Guidance on private interests, moreover, is no different than the effect of the underlying statute and judicial precedent that the Guidance is summarizing. *See id.* All of these factors weigh against a finding that the Guidance is substantive.

The Guidance also permissibly relies on *Bostock* and other cases interpreting Title VII. Plaintiffs assert that interpretive rules are invalid if they extend beyond the agency's views on the meaning of a statute or regulation to advise the public about "judicial opinions of which it is aware." ECF No. 48 at 17. The EEOC's understanding of the meaning of a federal statute can hardly ignore relevant cases interpreting that provision, much less applicable Supreme Court precedent. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261–63 (2024).

## C.    Plaintiffs' Other APA Claims Also Fail

### 1.    The Challenged Portion of the Guidance is Neither Arbitrary Nor Capricious

Because the Guidance is not a legislative rule, the APA did not require the EEOC to engage in notice-and-comment procedures before issuing it. *See* 5 U.S.C. § 553(b)(A); *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96–97 (2015). The EEOC nevertheless submitted the proposed Guidance for comment pursuant to its internal regulations for guidance documents. *See* 29 C.F.R. § 1695.6(d). Plaintiffs claim that in this process the EEOC failed to consider Plaintiffs' safety, implementation, and federalism concerns. ECF No. 48 at 17–18. To the contrary, the EEOC explained exactly why it

issued the contested portion of the Guidance. *See* App. 110–112. The EEOC concluded that Title VII covers claims of sex-based gender identity harassment because "[a]ny other interpretation would be inconsistent with the statutory text and with *Bostock*." *Id.* at 111. As to claims that include harassing conduct because an individual does not present in a stereotypical manner, because of misgendering, or because of restrictions on bathroom access, the EEOC explained that "courts have considered evidence of" such conduct, "viewed in light of the totality of circumstances, as potentially supportive of a hostile work environment claim." *Id.* at 112; *see id.* at 130–131 (footnotes 41–43). The EEOC could not have accepted Plaintiffs' policy concerns to disagree with the case law cited in the Guidance. *See Huawei Tech. USA, Inc. v. FCC*, 2 F.4th 421, 450 (5th Cir. 2021) ("Comments are significant, and thus require response, only if they raise points which, if true and which, if adopted, would require a change in an agency's proposed rule." (cleaned up)). Plaintiffs' arbitrary-and-capricious claim therefore rises and falls with their claim that the Guidance is contrary to law. Because it is not, the Guidance survives review.

Plaintiffs argue that the APA requires an agency to "consider and respond to significant comments . . . even absent any notice-and-comment requirement." ECF No. 48 at 18. The APA requires notice-and-comment only for legislative rules. 5 U.S.C. § 553(b)(A) (explaining that APA requirement that agency provide notice and opportunity to comment "does not apply" to "interpretative rules" or "general statements of policy"). Neither of the cases Plaintiffs cite support the proposition that the APA requires an agency to respond to comments absent a legislative rule. *See* ECF No. 48 at 18 (citing *Mock*, 75 F.4th at 579 n.38 and *Catskill Mountains Ch. of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 522 (2d Cir. 2017). In *Mock*, the Fifth Circuit observed in dicta that an interpretive rule may be "tested for procedural regularity and challenged as arbitrary and capricious." 75 F.4th at 579 n.38. But that court did not hold that the APA requires agencies to respond to comments received to interpretive rules that are issued through voluntary notice and comment procedures. Rather, the Fifth Circuit noted that the plaintiffs had forfeited any arbitrary and capricious argument by failing to adequately brief the issue, and in any event concluded that the rule at issue was legislative. *Id.* The

19

cited Second Circuit opinion similarly did not address any notice-and-comment claim in the context of an interpretive rule. *Catskill Mountains*, 846 F.3d at 507 (applying now-overruled *Chevron* framework to review agency's interpretation of federal statute).

### 2.    The Guidance Need Not Have Been Published in the Federal Register

As explained in Defendants' opening brief, the Freedom of Information Act did not require the EEOC to publish the final version of the Guidance in the Federal Register. That is so because the challenged portions of the Guidance do not reflect a "change from the existing law, policy or practice." *Knutzen v. Eben Ezer Lutheran Hous. Ctr.*, 815 F.2d 1343, 1351 (10th Cir. 1987). Rather, the Guidance is merely a non-comprehensive resource that describes how courts have interpreted hostile work environment claims. And even if the EEOC were required to publish the Guidance, FOIA provides only that it must be published before any person may be "required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." 5 U.S.C. § 552(a). Any effect of the hostile work environment principles discussed in the Guidance flow not from the EEOC's publication but from Title VII and the courts interpreting that law.

Plaintiffs largely fail to respond to these arguments. ECF No. 48 at 18–19. They do not address Defendants' cases explaining that FOIA does not require Federal Register publication of even statements of general policy or interpretations of general applicability when those interpretations reflect no change from the existing law. *See* ECF No. 35 at 33–34.

Instead, Plaintiffs assert that FOIA's remedy for the lack of required publication—that no person shall be required to comply with the matter absent actual notice—does not preclude an APA challenge. ECF No. 48 at 19. Plaintiffs claim that the EEOC cited only "one case" that "said nothing about an APA challenge." *Id.* On the contrary, the EEOC cited an APA case in its opening brief, and that case clearly demonstrates the flaws in Plaintiffs' argument. *See* ECF No. 35 at 34 (citing *United States v. Johnson*, 632 F.3d 912 (5th Cir. 2011)). There, the Fifth Circuit rejected an APA challenge to an agency's regulation that was promulgated without notice-and-comment, in part because the challenging party had "constructive notice" of the agency's position prior to engaging in conduct that

allegedly violated the regulation. *Johnson*, 632 F.3d at 933. Here, both Plaintiffs had *actual* notice of the Guidance. And they still have not identified any harm stemming from the EEOC's non-publication. *See Mass. Mfg. Extension P'ship v. Locke*, 723 F. Supp. 2d 27, 41 (D.D.C. 2010) (concluding that to challenge an agency interpretation under FOIA a litigant must establish "that it has been 'adversely affected' by an unpublished policy that should have been published, and that the litigant did not have actual notice of the content of that policy"). Indeed, Plaintiffs make no claim that they would have done anything differently had the Guidance been published in the Federal Register. That alone dooms their FOIA challenge.[3]

## III.    The Court Should Reject Plaintiffs' Requests for Overbroad Relief

### A.    Any Relief Should Be Limited to Parties That Have Established Standing

As Defendants have explained, in an APA case—no less than any other case—any relief granted should be no more burdensome than necessary to remedy the injuries of any plaintiffs with standing. *See* ECF No. 35 at 34–37. Here, Plaintiffs have not established that relief extending beyond the parties is necessary to remedy any injury they allegedly face as a result of the 2024 Guidance. Plaintiffs' counterarguments are unpersuasive.

With respect to limiting any relief under the APA to the parties, Plaintiffs are mistaken that "vacatur under the APA is necessarily nationwide, not party-specific." ECF No. 48 at 19.[4] As explained in Defendants' opening brief, that contention cannot be reconciled with the Fifth Circuit's disposition of *Cargill v. Garland*, in which the *en banc* court of appeals held the challenged rule exceeded the scope of the agency's statutory authority and remanded to the district court to determine the appropriate scope of relief, including "a more limited remedy" than universal vacatur. 57 F.4th 447, 472 (5th Cir. 2023), *cert. granted*, 144 S. Ct. 374 (2023) (Mem.), *and aff'd*, 602 U.S. 406 (2024); *see* ECF

---

[3]    Even assuming the Guidance is invalid because it was not published in the Federal Register, that technical violation would be remedied by publishing it. That holding would not support a permanent injunction preventing implementation of the Guidance or any objectionable interpretation therein in perpetuity.

[4]    While Plaintiffs persist in their request for nationwide vacatur, they have separately confirmed that their request for injunctive relief does not extend beyond the parties. *See id.* at 23.

No. 35 at 35–36. Plaintiffs respond by contending that the Fifth Circuit's discussion of the scope of APA relief in *Braidwood* was not dicta but rather was "a necessary part of the Court's rejection of HHS's request for limited vacatur." ECF No. 48 at 20; *contra* ECF No. 35 at 35–36. Not so. In *Braidwood*, relief of any kind under the APA was unavailable for the threshold reason that the plaintiffs had not brought an APA claim. *See Braidwood Mgmt, Inc. v. Becerra*, 104 F.4th 930, 952 (5th Cir. 2024). Thus, the court's discussion of the scope of relief that may have been available had the Plaintiffs brought such a claim was not in any respect necessary to the disposition.

Plaintiffs thus fail to establish that universal vacatur is required under Fifth Circuit precedent. Defendants have already explained why, even to the extent it may be permissible under Fifth Circuit precedent, universal vacatur is not appropriate in this case. *See* ECF No. 35 at 36–37. In particular, comity principles strongly counsel against the entry of any relief here that would nullify other courts' decisions on the scope of Title VII in the context of sexual orientation and gender identity. *See id.* at 37. Plaintiffs do not argue otherwise, instead resting solely on their mistaken argument that this Court lacks authority to limit APA relief to the parties. Accordingly, the Court should limit any relief to any party that the Court concludes has established standing.

**B.    Any Relief Should Be Limited to Any Invalid Portion of the Guidance**

Additionally, as explained in Defendants' opening brief, any relief should be limited to any challenged portion of the 2024 Guidance that this Court concludes is invalid. *See* ECF No. 35 at 37–38. Contrary to Plaintiffs' mistaken contention that Defendants forfeited or waived this argument, Defendants adequately addressed the issue by identifying it in the introduction to Defendants' brief; devoting a subsection of Defendants' brief to the issue; and citing *Southwest Electric Power Co. v. EPA*, 920 F.3d 999 (5th Cir. 2019), in which the Fifth Circuit vacated only the portions of the challenged rule that it held invalid, without further analysis or discussion of severability. *Id.* at 1033; *see* ECF No. 35 at 3, 37–38. At a minimum, Defendants' briefing "was enough to put [Plaintiffs] on notice of the issue." *United States v. Redd*, 562 F.3d 309, 314 (5th Cir. 2009). In particular, Plaintiffs are incorrect that Defendants put the Court in the position of having to parse the Guidance to determine what

22

should survive. Defendants clearly identified the portion of the Guidance that Defendants understand to be the subject of Plaintiffs' claims. *See* ECF No. 35 at 38 (citing App. 35).

In any event, to the extent further discussion is warranted, the Fifth Circuit has confirmed that a district court errs by granting "overbroad" relief when it vacates an entire agency action based solely on legal defects identified in discrete portions of that action. *VanDerStok v. Garland*, No. 23-10718, 2023 WL 4945360, at *1 (5th Cir. July 24, 2023). In *VanDerStok*, the Fifth Circuit granted an emergency stay pending appeal as to portions of a final rule that the court had not concluded were invalid, instructing that "[w]here a court holds specific portions of a rule unlawful, severance is preferred when doing so 'will not impair the function of the [rule] as a whole, and there is no indication that the regulation would not have been passed but for its inclusion.'" *Id.* at *1 (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988)); *cf. Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 626 (2020) (noting that Supreme Court precedent reflects "a decisive preference for surgical severance rather than wholesale destruction, even in the absence of a severability clause").

It defies credulity to suggest that the EEOC would not have published the 189-page Guidance document—which addresses harassment based on race, color, religion, sex, national origin, age, disability, or genetic information—absent a brief and discrete discussion of harassment based on sexual orientation or gender identity. *See* App. 35–36; *contra* ECF No. 48 at 22. And Plaintiffs do not argue—nor could they—that any other portion of the Guidance, including the sections discussing forms of harassment unrelated to sex, depends on the inclusion of the challenged discussion to function sensibly.

Additionally, it is unsurprising that the EEOC did not include a severability clause in the 2024 Guidance, because the agency correctly understood the Guidance to be non-binding and thus not subject to judicial review. *See supra* Part I.B. Even if this Court concludes otherwise, the absence of a severability clause in this context does not suggest that the EEOC would not have promulgated the Guidance but for the inclusion of the challenged subsection. *Contra* ECF No. 48 at 21.

23

Plaintiffs' only cited authority on this point is a 2018 recommendation of the Administrative Conference of the United States ("ACUS"), in which ACUS stated—without citation to a single case—that "[i]f a court holds portions of a rule unlawful, and the agency has been silent about severability, then the default remedy is to vacate the entire rule, including those portions that the court did not hold unlawful." Adoption of Recommendations, 83 Fed. Reg. 30,683, 30,685 (June 29, 2018). But it is clear that "silen[ce]" in this context does not refer solely to the absence of a severability clause, as Plaintiffs suggest. To the contrary, the ACUS recommendation goes on to lament the consequences of this purported default practice, which "can impose unnecessary costs on the agency, if it chooses to re-promulgate the portions of the rule that the court did not hold unlawful but nonetheless set aside, and on the public, which would forgo any benefits that would have accrued under those portions of the rule." *Id.* Accordingly, the recommendation concludes by suggesting that, "[w]hen severability becomes an issue on judicial review, and it has not been previously briefed, courts should solicit the parties' views on severability," instead of reflexively concluding that any relief should operate as to the agency action in its entirety. *Id.* at 30,686. The parties have provided those views here.

Furthermore, since ACUS made its recommendation, courts have recognized that in the context of an agency action, as in the context of a statute, "[t]he absence of a severability clause cuts neither against nor in favor of severance; the presumption of severability remains intact." *Truck Trailer Mfr. Ass'n, Inc v. EPA*, 17 F.4th 1198, 1223 (D.C. Cir. 2021) (Millett, J., concurring in part) (quoting *Ass'n of Am. Railroads v. DOT*, 896 F.3d 539, 549 (D.C. Cir. 2018)); *see also Nasdaq Stock Mkt. LLC v. SEC*, 38 F.4th 1126, 1145 (D.C. Cir. 2022) ("[T]he ultimate determination of severability will rarely turn on the presence or absence of a severability clause." (cleaned up)).

Plaintiffs' cited cases do not support their request to vacate the many parts of the 2024 Guidance that they do not even challenge, much less those as to which this Court identifies no legal deficiencies. *See* ECF No. 48 at 21. In both *Louisiana by & through Murrill v. U.S. Department of Education*, No. 24-30399, 2024 WL 3452887 (5th Cir. July 17, 2024), and *Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016), the Fifth Circuit addressed the proper scope of *temporary* relief (a preliminary injunction, in

24

*Murrill*, and a stay pending appeal, in *Texas v. EPA*). As the court of appeals reasoned in *Murrill*, a court "will not abuse its discretion if its temporary order is broader than final relief." 2024 WL 3452887, at *2. *VanDerStok* confirms that final relief, by contrast, must be tailored to any portions of an agency action that a district court holds invalid.

Finally, any injunctive relief should be appropriately limited to the Guidance itself. Plaintiffs' counterargument rests on the mistaken proposition that the 2024 Guidance constitutes an effort to circumvent this Court's ruling in *Texas v. EEOC*, 633 F. Supp. 3d 824, as to the Technical Assistance document. As Defendants have explained, the 2024 Guidance is markedly different from the Technical Assistance document that this Court concluded was unlawful. Even in the event the Court concludes that the 2024 Guidance is unlawful, Plaintiffs offer no basis to conclude that Defendants intended to defy this Court's prior ruling in enacting the Guidance. *See, e.g., Yarls v. Bunton*, 905 F.3d 905, 910–11 (5th Cir. 2018) ("Government officials in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties." (cleaned up)). As explained in Defendant's opening brief, a district court within Texas already has held that evidence of intentional misgendering may support a Title VII harassment claim. *See* ECF No. 35 at 37 (citing *Garrett v. Kohls Distrib. eFulfillment Ctr.*, No. 3:23-CV-2525, 2024 WL 3237184, at *4, *6 (N.D. Tex. June 7, 2024), *report & recommendation adopted*, 2024 WL 3240656 (N.D. Tex. June 28, 2024)). Even to the extent this Court enjoins Defendants from consulting the challenged portions of the Guidance if a charge is filed against any Plaintiff with Article III standing, it should not foreclose other courts' consideration of the issues raised by the Plaintiffs based on a properly developed factual record.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be denied, and Defendants' Cross-Motion for Summary Judgment should be granted.

Dated: January 10, 2025

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*/s/ Jacob S. Siler*
JACOB S. SILER (DC Bar No. 1003383)
TAISA M. GOODNATURE (NY Bar No. 5859137)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, D.C. 20005
Telephone: (202) 343-4556
Facsimile: (202) 616-8460
E-mail: Jacob.S.Siler@usdoj.gov

*Counsel for Defendants*

26