UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS and<br>THE HERITAGE FOUNDATION,<br>    *Plaintiffs*,<br><br>v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY<br>COMMISSION, *et al.*,<br>    *Defendants*. | Case No. 2:24-cv-173-Z |

**JOINT BRIEF ON EFFECT OF RECENT EXECUTIVE ORDER**

The Parties submit this joint brief pursuant to the Court's Order of January 27, 2025. ECF No. 52.

**Plaintiffs' Position:**

On January 20, 2025, President Trump issued an executive order that directed "[e]ach agency head [to] promptly rescind" a number of "guidance documents," including "the Equal Employment Commission's 'Enforcement Guidance on Harassment in the Workplace' (April 29, 2024)." *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, WHITE HOUSE (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/defending-women-from-gender-ideology-extremism-and-restoring-biological-truth-to-the-federal-government/. That document is the agency action that is the subject of this lawsuit. However, the *Defending Women* executive order does not affect this case and the Court should rule on the pending cross-motions for summary judgment.

The document challenged in this case now has a note appended to it that it "was approved by the Commission on April 29, 2024, by a 3-2 vote" and "[a]ny modification must be approved by a majority vote of the Commission." *See Enforcement Guidance on Harassment in the Workplace*,

U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace. Such a vote is not currently possible.

EEOC has published a post-*Defending Women* explainer on its website. *See The State of the EEOC: Frequently Asked Questions*, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/wysk/state-eeoc-frequently-asked-questions. *The State of the EEOC* explains that "Title VII provides that the EEOC's Commission leadership panel is comprised of five Commissioners, one of whom is designated by the President as Chair or Acting Chair [and] also states that three Commissioners constitute a quorum at the agency," but "[a]s of January 28, 2025, the Commission has two Commissioners and thus no longer has a quorum." *The State of the EEOC* at Answer to Question No. 3. Answering whether "the EEOC need[s] a quorum to vote on rulemaking, issue new policies, or rescind guidance documents," the Commission responds: "Yes." *The State of the EEOC* at Answer to Question No. 12.

Thus, the agency action challenged in this case remains in place and is unlikely to be rescinded any time soon, as no replacement Commissioners have even been announced, let alone nominated and confirmed.

But doesn't the loss of a quorum eliminate the harms of potential enforcement to Plaintiffs? No, because "[i]n the absence of a quorum of Commissioners, the EEOC remains open for business" and "continues to enforce federal antidiscrimination laws." *Id.* at Answer to Question No. 4. Answering whether "EEOC [can] file lawsuits without a quorum," the Commission responds "Yes" and explains that "in the case of a loss of quorum, [existing policy] provides limited authority for the filing of lawsuits by the EEOC General Counsel, after providing five days' notice to Commissioners before filing suit." *Id.* at Answer to Question No. 10. Also, "[t]he EEOC's field offices have authority to issue subpoenas." *Id.* at Answer to Question No. 11.

As explained by Plaintiffs, EEOC has authority to bring enforcement actions against private employers (such as Plaintiff The Heritage Foundation) and against state employers for certain employees under the Government Employee Rights Act of 1991 (GERA) and can refer additional matters to the Department of Justice for litigation against States and localities. *See* ECF No. 30 at

2

12–13.* Plaintiffs therefore face the same injury as before issuance of the *Defending Women* executive order.

Even if there were no longer a threat of enforcement by Defendants in this case, imminent injury for standing would be satisfied because "[t]he existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed.*" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (emphasis in original; citation omitted); *Carr v. Alta Verde Indus., Inc.,* 931 F.2d 1055, 1061 (5th Cir. 1991) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction.").

"While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation omitted); *see also Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019) ("'In identifying an injury that confers standing, courts look exclusively to the time of filing.'") (citing *Loa-Herrera v. Trominksi*, 231 F.3d 984, 987 (5th Cir. 2000); *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000) ("[A fact concerning injury in existence] at the time of trial, however, implicates mootness; it has no bearing on the particular litigant's standing at the time the suit was filed."). No facts after the date of the filing of the Complaint can serve to defeat standing retroactively. *See GLO v. Biden*, 71 F.4th 264, 272 n.12 (5th Cir. 2023) ("As this action was filed in October 2021, developments since then, such as the issuance of DHS's June 2022 border wall plan, will not be considered" in evaluating standing).

But what about mootness? "[T]he burden of proving mootness is higher than simply showing a lack of standing." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 377 n.40 (5th Cir. 2022). A case is moot if "it is *impossible* for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (emphasis added;

---

* Page number references to docket materials refer to the number appearing at the bottom of the page, not the ECF-stamped PageID number at the top.

quotation omitted). "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Railway Clerks,* 466 U.S. 435, 442 (1984). And even where wrongful behavior has ceased entirely, a defendant asserting mootness must demonstrate it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). This standard applies equally to government defendants. *See Texas v. EEOC*, 933 F.3d at 449 (quoting and applying the "absolutely clear" standard to federal government); *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011) (applying standard to defendant State of Texas). The only "lighter burden" enjoyed by sovereign governments in the Fifth Circuit is that they are afforded a "presumption of good faith" when they have *actually repealed* a challenged policy. *Stauffer v. Gearhart*, 741 F.3d 574, 581-82 (5th Cir. 2014) (challenged rule already "replaced" that all agreed did not "violate [Plaintiff's]—or anyone else's—rights") (citations omitted).

  The Fifth Circuit has also extended this presumption to a government defendant's new conclusion that a challenged rule "does not apply to Plaintiff's desired activity" once the activity was "explicitly spelled out." *Moore*, 868 F.3d at 407. But mootness was found in *Moore* because the government "made clear that its public event rule does not apply to Plaintiff's desired activity" once the desired activity was "explicitly spelled out" and the government "had the opportunity to determine whether that speech actually violated the public event rule." *Id*. (emphasis added). Here, by contrast, there is no question that the challenged agency action here applies to the conduct Plaintiffs seek to engage in. A case is not moot where the "authority to enforce" a challenged rule remains despite a "change of position" as to the propriety of enforcement, and that the harm of looming enforcement authority "would be redressed" by an injunction. *Texas v. EEOC*, 933 F.3d at 450. The Fifth Circuit has found that a challenge from a State to EEOC guidance was not moot even where "current DOJ policy bar[red] it from enforcing the Guidance" against the State. *Id*. at 448–49.

  Finally, the relief sought by Plaintiffs extends beyond the particular agency action taken in *Enforcement Guidance on Harassment in the Workplace*, as explained in the summary-judgment

4

briefing. *See* ECF No. 30 at 34–36; ECF No. 48 at 23. The Court should order the declaratory and injunctive relief set forth in Plaintiffs' proposed order, which properly extends beyond the particular document regardless of whether it is ever rescinded pursuant to the implementation of the *Defending Women* executive order. *See* Proposed Order, ECF No. 30-1.

Even a repeal of the *Enforcement Guidance on Harassment in the Workplace* would not prevent EEOC from attempting to enforce Title VII in this way in the future. The Fifth Circuit has termed a "false dichotomy" the notion that "a lawsuit challenging a regulation and a lawsuit challenging the underlying statute are different." *Franciscan All., Inc.*, 47 F.4th at 378. This is because "a challenge to an agency regulation is necessarily a challenge to the underlying statute as well[] … because an agency literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *Id.* (internal quotations omitted). As a result, any argument against this relief "rests on the faulty premise that [Plaintiffs were] 'suing' a regulation" as opposed to "the right way to view [this] suit [] as challenging '*one* Government action that causes their harm: the [EEOC's] threatened enforcement of [Title VII], *through* its implementing regulation.'" *Id.* (emphasis in original) (quoting *FEC v. Cruz*, 142 S. Ct. 1638, 1650 (2022)). "Since injunctive relief looks to the future," *Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965), a plaintiff seeking prospective relief need only show that future injury is "fairly likely" at the time the suit was commenced. *Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 376 (5th Cir. 2021).

No action regarding the guidance challenged in this case affects that likelihood. "Given that the [agency] has enacted similar guidance in the past and may attempt to do so again as an end-run to the Court's relief, a broader injunction is necessary to provide complete relief." *Texas v. Cardona*, No. 4:23-CV-604-O, 2024 WL 3658767, at *50 (N.D. Tex. Aug. 5, 2024) (O'Connor. J.); *see also Cath. Benefits Ass'n v. Burrows*, No. 1:24-CV-142, 2024 WL 4315021, at *11 (D.N.D. Sept. 23, 2024) (in challenge to the same 2024 Guidance challenged here, granting injunction against agency "interpreting or enforcing" Title VII as requiring pronoun or bathroom accommodations against certain employers). Thus, the availability of future injunctive relief

5

remains even if Defendants rescind the agency action challenged in this case (which is not likely to happen any time soon), and Defendants cannot meet their burden to show that "it is *impossible* for a court to grant any effectual relief whatever to the prevailing party." *Knox*, 567 U.S. at 307.

**Defendants' Position:**[1]

On January 20, 2025, President Donald J. Trump issued an executive order, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government." Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025). The position stated in the President's executive order is the position of the United States, notwithstanding any prior position taken by the Defendants in this case. Among other items, Executive Order 14,168 directs the EEOC to rescind the Guidance document Plaintiffs here challenge or such portions of it that are inconsistent with the interpretation expressed in the executive order. *See* Exec. Order 14,168 § 7(c)(iv).[2]

On the same day that he issued Executive Order 14,168, the President designated a new Acting Chair of the EEOC, Andrea Lucas. *See* President Trump Designates Chairmen and Acting Chairmen (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/designation-of-chairmen-and-acting-chairmen/. In addition, on January 27, 2025, President Trump fired two EEOC Commissioners who had voted in favor of the Guidance. *See* Alexandra Olson & Claire Savage, *Trump Fires Two Democratic Commissioners of Agency That Enforces Civil Rights Laws in The Workplace*, AP, (Jan. 29, 2025), https://apnews.com/article/trump-eeoc-commissioners-firings-crackdown-civil-rights-c48b973cb32bad97e9da9e354ba627db. Those terminations left the EEOC with only two Commissioners. *See id.* The EEOC thus currently lacks

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the official capacity Defendants who no longer hold office have been automatically substituted by their successors.

[2] Section 7(c)(iv) provides "[e]ach agency head shall promptly rescind all guidance documents inconsistent with the requirements of this order or the Attorney General's guidance issued pursuant to this order, or rescind such parts of such documents that are inconsistent in such manner. Such documents include, but are not limited to . . . (iv) the Equal Employment Opportunity Commission's 'Enforcement Guidance on Harassment in the Workplace' (April 29, 2024)."

a quorum. *See* 42 U.S.C. § 2000e-4(c) (providing that "three members" of the Commission "shall constitute a quorum").

On January 28, 2025, Acting Chair Lucas announced a series of actions she had taken pursuant to Executive Order 14,168. Removing Gender Ideology and Restoring the EEOC's Role of Protecting Women in the Workplace (Jan. 28, 2025), https://www.eeoc.gov/newsroom/removing-gender-ideology-and-restoring-eeocs-role-protecting-women-workplace. Acting Chair Lucas explained her continued opposition to the portions of the Guidance that Plaintiffs here challenge. She acknowledged, however, that because the "Commission acts by majority vote" when issuing or revising certain documents, "[b]ased on her existing authority, [she] cannot unilaterally remove or modify certain 'gender-identity'-related documents subject to the President's directives in the executive order . . . includ[ing] the Commission's Enforcement Guidance on Harassment in the Workplace (issued by a 3-2 vote in 2024)" and "the EEOC Strategic Enforcement Plan Fiscal Years 2024-2028 (issued by a 3-2 vote in 2023)," which sets out the Commission's official enforcement priorities. *Id.*; *see* 29 C.F.R. § 1695.2(d) (requiring Commission to approve any significant guidance document by majority vote); *see also* EEOC, The State of the EEOC: Frequently Asked Questions, Question 12, https://www.eeoc.gov/wysk/state-eeoc-frequently-asked-questions (reiterating that the "EEOC need[s] a quorum to . . . rescind guidance documents"). The Acting Chair has indicated that she intends the Commission to reconsider the portions of the Guidance at issue in this case once a quorum is established, although it is uncertain when a quorum will be established. To rescind or revise portions of the Guidance, the Commission will have to follow the notice and comment procedures for significant guidance documents set forth in 29 C.F.R. § 1695.6 which, except in limited circumstances, requires the Commission to put the document out for a period of notice and public comment of at least 30 days and to prepare and post a public response to any major concerns raised in the comments received.

Pursuant to Title VII, the EEOC is obligated to accept, and serve to the relevant employer, all charges of discrimination, including any charges that might be brought against plaintiff State of Texas and plaintiff Heritage that might contain allegations implicating the challenged portions of

7

the Guidance. *See* 42 U.S.C. § 2000e–5(b). Title VII also requires the EEOC to issue notices of right to sue to charging parties. 42 U.S.C. § 2000e-5(f)(1). The requirement to accept and serve charges, and issue notices of right to sue, applies even to charges which the Commission determines fail to state a claim. *See, e.g.*, 29 C.F.R. § 1601.18(a).

In light of Executive Order 14,168 and her inability to rescind the Guidance at this time due to the lack of a quorum at the EEOC, Acting Chair Lucas has directed that all charges that implicate Executive Order 14,168 be elevated for review at EEOC headquarters to determine how to comply with the executive order prior to the recission or revision of the Harassment Guidance. As noted, pursuant to Title VII, all charges continue to be accepted for filing and service. To the extent that a charging party requests a notice of right to sue for one of those charges, EEOC will issue that notice of right to sue, as statutorily required.

On February 4, 2025, President Trump appointed Andrew Rogers as the acting general counsel of the EEOC. *See* Andrew Rogers Named Acting EEOC General Counsel (Feb. 4, 2025), https://www.eeoc.gov/newsroom/andrew-rogers-named-acting-eeoc-general-counsel.

The Department of Justice similarly has new leadership. Attorney General Pamela Bondi was confirmed on February 4, 2025. The Department of Justice intends to fully comply with Executive Order 14,168. *See* Memorandum from the Acting Attorney General, Compliance with Executive Order on Defending Women Message for All Department of Justice Employees (Jan. 31, 2025) (attached as Ex. 1).

The Court may rule on the pending cross-motions for summary judgment based on the arguments made in the papers previously submitted in this case. *See* ECF No. 35 at 7–22; ECF No. 51 at 2–12. For the reasons explained in Defendants' prior briefing, this Court lacks jurisdiction over Plaintiffs' claims and therefore Plaintiffs' motion for summary judgment should be denied and Defendants' cross-motion for summary judgment should be granted.

The subsequent events listed above are fully consistent with—and, indeed, bolster— Defendants' jurisdictional arguments. As noted above, under Title VII, the EEOC is obligated to accept and serve charges against Defendants. However, even assuming Plaintiffs had previously

faced any threat of litigation from Defendants based on the challenged statements in the Guidance, that threat is now eliminated. With respect to the plaintiff State of Texas, the Department of Justice is the only federal agency with authority to bring a Title VII enforcement civil action against the State of Texas or its political subdivisions. *See* 42 U.S.C. § 2000e-5(f)(1) (providing that if the Commission is unable to obtain a conciliation agreement with a government, governmental agency, or political subdivision, "the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court"). The executive order—and DOJ's intention to fully comply with it—ensures no action in alignment with the challenged Guidance statements will be filed, notwithstanding any vestigial contrary statement in the Guidance. *See* Ex. 1.

As to plaintiff Heritage, the EEOC itself determines whether to bring a civil action against private employers. *See* 42 U.S.C. § 2000e-5(f)(1). Plaintiffs argue that existing policy provides limited authority for the filing of lawsuits by the EEOC General Counsel during periods in which the EEOC itself lacks a quorum. But that limited authority does not extend to "cases that implicate areas of the law that are not settled and cases that are likely to generate public controversy." EEOC, *Resolution Concerning the Commission's Authority to Commence or Intervene in Litigation and the Commission's Interest in Information Concerning Appeals* ¶¶ 1(e), 4 (Jan. 13, 2021), https://www.eeoc.gov/resolution-concerning-commissions-authority-commence-or-intervene-litigation-and-commissions-0. Plaintiffs also claim that EEOC has authority under GERA to bring an action against Texas; that is incorrect. ECF No. 35 at 16 n.3. Especially given those explicit limitations on the EEOC's authority to act in the absence of a quorum, Plaintiffs identify no basis to conclude that the EEOC would file a lawsuit based on the challenged Guidance statements. And Plaintiffs do not otherwise establish that the new EEOC leadership is likely to file a lawsuit against them based on Title VII interpretations to which they would object. In light of these circumstances, Plaintiffs do not meet their burden of demonstrating they face an enforcement threat. *See Neese v. Becerra*, 123 F.4th 751, 754 (5th Cir. 2024) (vacating district court judgment because plaintiffs had failed to show "that they face a credible threat of enforcement"). The possibility that a private

9

party might bring a lawsuit against Texas or Heritage also cannot create jurisdiction. *Joint Heirs Fellowship Church v. Akin*, 629 F. App'x 627, 631 (5th Cir. 2015) ("The possibility of private litigation does not constitute a credible threat of enforcement by the Commission.").

Finally, Plaintiffs are mistaken in asserting that their claims do not depend on the existence of the Guidance. "The APA allows judicial review only of a 'final agency action[.]'" *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019) (citing 5 U.S.C. § 704); *see also* ECF No. 35 at 14–22. Plaintiffs have identified no purported final agency action other than the Guidance that could be the basis for jurisdiction under the APA. And for the reasons stated in Defendants' summary judgment papers, any relief in this case must be limited to the portions of the Guidance found to be unlawful. *See* ECF No. 35 at 37–38; ECF No. 51 at 24–25.

Dated: February 10, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Legal Strategy

/s/Ryan D. Walters
RYAN D. WALTERS
Associate Deputy Attorney General
for Civil Litigation
Texas State Bar No. 24105085
Ryan.Walters@oag.texas.gov

KYLE S. TEBO
Special Counsel
Texas State Bar No. 24137691
kyle.tebo@oag.texas.gov

OFFICE OF THE TEXAS ATTORNEY GENERAL
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: 512-463-2100
Fax: 512-457-4410

COUNSEL FOR STATE OF TEXAS

Respectfully submitted.

DANIEL D. MAULER
General Counsel of The Heritage Foundation

/s/ R. Trent McCotter
R. TRENT MCCOTTER
ANDREW W. SMITH
Boyden Gray PLLC
801 17th St. NW, Suite 350
Washington, DC 20006
Telephone: (202) 706-5488
tmccotter@boydengray.com

THE HERITAGE FOUNDATION
214 Massachusetts Ave. NE
Washington, DC 20002-4999
Telephone: (202) 617-6975

COUNSEL FOR THE HERITAGE FOUNDATION

MICHAEL D. GRANSTON
Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

/s/ Jacob S. Siler
JACOB S. SILER (DC Bar No. 1003383)
TAISA M. GOODNATURE (NY Bar No. 5859137)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, D.C. 20005
Telephone: (202) 353-4556
Facsimile: (202) 616-8460
E-mail: Jacob S. Siler@usdoj.gov

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

  I hereby certify that on February 10, 2025, a true and correct copy of the above and foregoing document has been filed and served, *via* the CM/ECF system, to all counsel and parties of record.

*/s/Ryan D. Walters*
RYAN D. WALTERS
